**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**

Case No. _____

OKLAHOMA POLICE PENSION AND
RETIREMENT SYSTEM, Individually and on
Behalf of All Others Similarly Situated,

               Plaintiff,

v.

STERLING BANCORP, INC.; GARY JUDD,
THOMAS LOPP; MICHAEL MONTEMAYOR;
BARRY ALLEN; JON FOX; SETH MELTZER;
SANDRA SELIGMAN; PETER SINATRA;
BENJAMIN WINEMAN; LYLE WOLBERG;
PIPER SANDLER COMPANIES AND
AMERICAN CAPITAL PARTNERS, LLC

               Defendants.

**CLASS ACTION COMPLAINT
FOR VIOLATIONS OF THE
<u>FEDERAL SECURITIES LAWS</u>**

**<u>JURY TRIAL DEMANDED</u>**

**<u>INTRODUCTION</u>**

       Plaintiff Oklahoma Police Pension and Retirement System ("Plaintiff"), by its undersigned

attorneys, alleges upon personal knowledge as to itself and its own acts, and upon information and

belief as to all other matters, based on the investigation conducted by and through Plaintiff's

attorneys, which included, among other things, a review of the public documents and

announcements issued by Sterling Bancorp, Inc. ("Sterling" or the "Company"), filings with the

U.S. Securities and Exchange Commission ("SEC"), wire and press releases published by and

regarding the Company, securities analysts' reports and advisories about the Company, and other

publicly available information.

1

## NATURE OF THE ACTION

1.     This is a federal class action brought individually and on behalf of all other persons and entities who purchased or otherwise acquired Sterling common stock from November 17, 2017 through and including December 8, 2019, (the "Class Period"), seeking to recover damages pursuant to § 10(b) and § 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder (the "Class").

2.     This action also alleges claims under §§ 11, 12(a)(2) and 15 of the Securities Act of 1933 (the "Securities Act") on behalf of members of the Class that purchased or otherwise acquired Sterling common stock in or traceable to the Company's initial public offering, which commenced on or about November 17, 2017 (the "IPO" or "Offering"). Under the Securities Act, defendants are strictly liable for the material misstatements in the Registration Statement and Prospectus (defined below) and these claims specifically exclude any allegations of knowledge or scienter. The Securities Act claims also expressly exclude and disclaim any allegation that could be construed as alleging fraud or intentional or reckless misconduct.

3.     Sterling is the unitary thrift holding company of Sterling Bank and Trust, founded in 1984. The Company is headquartered in Southfield, Michigan with its primary branch operations in the San Francisco Bay Area and Greater Los Angeles. The Company specializes in residential mortgages but offers a broad suite of products. The vast majority of the Company's loans are to customers in California.

4.     Throughout the Class Period, the Company's largest lending product was its Advantage Loan Program. As of September 2019, the Advantage Loan Program constituted more than four-fifths of its residential loan portfolio, and two-thirds of total loans. The Advantage Loan Program is a lower-documentation, higher-down-payment mortgage.

2

5.      On October 19, 2017, Sterling filed its initial registration statement on Form S-1 with the SEC attempting to register its shares for its IPO.  The Company ultimately filed three amendments to its Registration Statement, the last one being on November 13, 2017.  Sterling filed its prospectus with the SEC on Form 424B4 ("Prospectus") on November 17, 2017.  These documents are collectively referred to herein as the "Registration Statement."

6.      On Friday, November 17, 2017 the Company commenced its IPO through which fifteen million shares of common stock were offered at a price of $12.00 per share, including 7,692,308 shares of common stock sold by the Company and 7,307,692 shares sold by selling shareholders.  The underwriters exercised their overallotment option of an additional 2,250,000 shares from the selling shareholders, the sales of which were completed on December 4, 2017.  The total IPO size, including the overallotment, was 17,250,000 shares for total proceeds of $207 million, including 9,557,692 shares sold by the selling shareholders for proceeds of $114,692,304.  The selling shareholders are members of the family who founded the Bank (the "Founding Family"), who held the shares individually or through trusts.  Sandler O'Neill & Partners, L.P., the predecessor to Piper Sandler Companies, acted as the lead underwriter.  American Capital Partners, LLC also acted as an underwriter

7.      During the Class Period and in connection with the Company's IPO, the Defendants made untrue statements of material fact and omitted other facts necessary to make the statements not misleading and failed to disclose material facts concerning, *inter alia*, the Company's loan underwriting, risk management and internal controls, including repeatedly touting its strict underwriting, asset quality and the Advantage Loan Program.

8.      Then, on June 21, 2019, after the market closed, Sterling filed a Form 8-K revealing that it had entered into an agreement with the Office of the Comptroller of the Currency ("OCC")

to enhance its anti-money laundering and Bank Secrecy Act compliance.  Specifically, the 8-K disclosed:

> On June 18, 2019, Sterling Bank and Trust, FSB, Southfield, Michigan (the "Bank"), a wholly-owned subsidiary of Sterling Bancorp, Inc. (the "Company") and the Office of the Comptroller of the Currency (the "OCC") entered into a formal agreement (the "Agreement") relating primarily to certain aspects of the Bank's Bank Secrecy Act/Anti-Money Laundering ("BSA/AML") compliance program.
>
> The Agreement generally requires that the Bank enhance its policies and procedures to ensure compliance with BSA/AML laws and regulations. The Bank will establish a Compliance Committee to monitor and assure compliance with the Agreement, oversee the completion of an independent review of account and transaction activity to be conducted by a third party vendor, and engage a third party to conduct a model validation for its BSA/AML monitoring software.

9.      However, the Company attempted to temper this news, stating that, *inter alia*, it did not believe that the agreement would have any material impact on its performance metrics.

10.     Also after the market closed on June 21, 2019, the Company filed another 8-K announcing that director Jon Fox ("Fox") was resigning from the Board of Directors (the "Board"). Fox had served as a Director for the Company since 1997 and was a member of the Audit and Risk Management Committee.  Again, the Company attempted to temper the news, stating, that Fox's retirement and resignation was not due to any disagreement on any matter relating to the Company's operations, policies or practices.

11.     Upon this news, including the attempts to minimize it, Sterling's stock price dropped $0.16, or 1.59%, from a close of $10.06 on Friday, June 21, 2019 to a close of $9.90 on Monday, June 24, 2019.

12.     Thereafter, on December 9, 2019, Sterling filed a Form 8-K revealing it was suspending its Advantage Loan Program due to an internal review of documentation on past loans. Specifically, the Company disclosed:

> On December 9, 2019, Sterling Bank and Trust, FSB, Southfield, Michigan a
> wholly-owned subsidiary of Sterling voluntarily and temporarily suspended its
> Advantage Loan program in connection with an ongoing internal review of the
> program's documentation procedures. Management believes it is prudent to
> temporarily halt the program as it continues to audit documentation on past loans
> and puts in place additional systems and controls to ensure the Bank's policies and
> procedures are followed on loans originated under the program. It is the Company's
> intention to resume the Advantage Loan Program as soon as management is
> confident its stated policies and procedures are being followed. However, it is
> presently difficult to estimate how long this suspension might last. The Advantage
> Loan Program is a material component of the Bank's total loan originations.

13.     Upon this news, Sterling shares fell from a close of $9.45 on Friday December 6, 2019 to a close of $7.29 on Monday December 9, 2019, a decline of $2.16 or 22.86%, on heavy volume.

14.     Facts detailing the circumstances concerning Defendants' untrue statements and omissions are detailed herein.

## JURISDICTION AND VENUE

15.     The claims alleged herein arise under §§ 10(b) and 20(a) of the Exchange Act, 15 U.S.C. § 78j(b) and 78t(a), and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5), and arise under §§ 11, 12(a)(2) and 15 of the Securities Act, 15 U.S.C. §§ 77k, 77l(a)(2) and 77o, and the rules and regulations of the SEC promulgated thereunder.

16.     This Court has jurisdiction over the subject matter of this action pursuant to § 27 of the Exchange Act, 15 U.S.C. § 78aa, § 22(a) of the Securities Act, 15 U.S.C. § 77v(a), and 28 U.S.C. § 1331.

17.     Venue is proper in this District pursuant to § 27 of the Exchange Act, 15 U.S.C. § 78aa, § 22(a) of the Securities Act, 15 U.S.C. § 77v(a), and 28 U.S.C. § 1391(b), as a substantial part of the acts events or omissions giving rise to the claims pleaded herein occurred in this District and Sterling maintains its principal places of business in this District.

18.     In connection with the acts alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the United States mails, interstate telephone communications and the facilities of the NASDAQ.

## PARTIES

19.     Plaintiff Oklahoma Police Pension and Retirement System purchased shares of Sterling common stock, both in the IPO and thereafter, as set forth in the accompanying certification, which is incorporated by reference herein, and has been damaged thereby.

20.     Defendant Sterling is headquartered in Southfield, Michigan with its primary branch operations in the San Francisco Bay Area and Greater Los Angeles with an emerging presence in New York and Seattle. The Company specializes in residential mortgages but offers a broad suite of products and services to individuals, professionals, businesses and commercial customers. The vast majority of the Company's loans are to individuals and businesses in California. Sterling stock trades under the symbol "SBT" on the NASDAQ.

### Officer Defendants

21.     Defendant Gary Judd ("Judd") served as the Chairman of the Company's Board and Chief Executive Officer from August 2008 to October 17, 2019. Judd signed the Company's Registration Statement, Annual Report on Form 10-K for the full year ending December 31, 2017 and filed on March 28, 2018 ("2017 10-K") and the Annual Report on Form 10-K for the full year ending December 31, 2018 and filed on March 18, 2019 ("2018 10-K").

22.     Defendant Thomas Lopp ("Lopp") is the Chairman of the Company's Board, Chief Executive Officer, and President. Lopp was appointed Chairman of the Board and Chief Executive Officer in November 2019, succeeding Defendant Judd in those roles when Judd resigned. Lopp has served as President since December 2016, served as Chief Operating Officer from

6

September 2009 to November 2019, and served as Chief Financial Officer and Treasurer from 2002 to November 2019.  Lopp has served the Company since 1997.  In 2015, Lopp assumed additional responsibility as the executive in charge of the Bank's Southern California expansion. Lopp signed the Company's Registration Statement, 2017 10-K, Quarterly Report on Form 10-Q for the period ending March 31, 2018 (the first quarter of 2018 or "1Q 2018") and filed on May 14, 2018 ("1Q 2018 10-Q"), Quarterly Report on Form 10-Q for the period ending June 30, 2018 (the second quarter of 2018 or "2Q 2018") and filed on August 13, 2018 ("2Q 2018 10-Q"), Quarterly Report on Form 10-Q for the period ending September 30, 2018 (the third quarter of 2018 or "3Q 2018") and filed on November 13, 2018 ("3Q 2018 10-Q"), 2018 10-K, Quarter Report on Form 10-Q for the period ending March 31, 2019 (the first quarter of 2019 or "1Q 2019") and filed on May 9, 2019 ("1Q 2019 10-Q"), Quarter Report on Form 10-Q for the period ending June 30, 2019 (the second quarter of 2019 or "2Q 2019") and filed on August 9, 2019 ("2Q 2019 10-Q"), Quarter Report on Form 10-Q for the period ending September 30 2019 (the third quarter of 2019 or "3Q 2019") and filed on November 8, 2019 ("3Q 2019 10-Q").

23.    Defendant Michael Montemayor ("Montemayor") has served as the President of Retail and Commercial Banking and the Chief Lending Officer since 2006.

24.    Defendants Judd, Lopp and Montemayor are collectively referred herein as "Officer Defendants."

25.    The Officer Defendants, because of their positions with the Company, controlled and/or possessed the authority to control the contents of its reports, press releases and presentations to securities analysts and through them, to the investing public.  By reason of their management positions and their ability to make public statements in the name of Sterling, the Officer Defendants

were and are controlling persons, and had the power and influence to cause (and did cause) Sterling to engage in the conduct complained of herein.

**Director Defendants**

26.     Defendant Barry Allen ("Allen") is a Director of the Company's Board.  Allen was appointed Director in January 1998.  Allen signed the Company's Registration Statement.

27.     Defendant Jon Fox ("Fox") is a Director of the Company's Board.  Fox was appointed Director in 1997 and resigned on June 21, 2019.  Fox signed the Company's Registration Statement.

28.     Defendant Seth Meltzer ("Meltzer") is a Director of the Company's Board.  Meltzer was appointed Director in January 2000.  Meltzer signed the Company's Registration Statement.

29.     Defendant Sandra Seligman ("Seligman") is a Director of the Company's Board.  Seligman was appointed Director in January 1984.  Seligman signed the Company's Registration Statement.

30.     Defendant Peter Sinatra ("Sinatra") is a Director of the Company's Board.  Sinatra was appointed Director in January 2008.  Sinatra signed the Company's Registration Statement.

31.     Defendant Benjamin Wineman ("Wineman") is a Director of the Company's Board.  Wineman was appointed Director in January 2013.  Wineman signed the Company's Registration Statement.

32.     Defendant Lyle Wolberg ("Wolberg") is a Director of the Company's Board.  Wolberg was appointed Director in August 2017.  Wolberg signed the Company's Registration Statement.

33.     Defendants Allen, Fox, Meltzer, Seligman, Sinatra, Wineman and Wolberg are collectively referred to herein as the "Director Defendants."

**Underwriter Defendants**

34.     Sandler O'Neill & Partners, L.P., the predecessor to Defendant Piper Sandler Companies ("Sandler"), was the lead book-running manager and underwriter of the Company's IPO.  Sandler assisted in the preparation and dissemination of the Registration Statement.  As an underwriter of the Offering, Sandler was responsible for ensuring the truthfulness and accuracy of the various statements contained in or incorporated by reference into the Registration Statement. Sandler maintains its headquarters in Minneapolis, Minnesota.

35.     Defendant American Capital Partners, LLC ("American Capital") also served as an underwriter. As an underwriter of the Offering, American Capital was responsible for ensuring the truthfulness and accuracy of the various statements contained in or incorporated by reference into the Registration Statement American Capital maintains its headquarters in Hauppauge, New York.

36.     Defendants Sandler and American Capital are collectively referred to herein as the "Underwriter Defendants."

37.     The Officer Defendants, the Director Defendants and the Underwriter Defendants, are collectively referred to herein as "Defendants."

## CLASS ACTION ALLEGATIONS

38.     Plaintiff brings this action as a class action pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3) on behalf of all those who purchased or otherwise acquired Sterling common stock from November 17, 2017 through and including December 8, 2019.  This action also alleges claims on behalf of members of the Class that purchased or otherwise acquired Sterling common stock in or traceable to the Company's IPO.  Excluded from the Class are Defendants herein, members of the immediate family of each of the Defendants, any person, firm, trust, corporation, officer, director or other individual or entity in which any Defendant has a controlling

interest or which is related to or affiliated with any of the Defendants, including trusts associated with members of the Founding Family, including the selling shareholders, and the legal representatives, agents, affiliates, heirs, successors-in-interest or assigns of any such excluded party.

39.     The members of the Class are located in geographically diverse areas and are so numerous that joinder of all members is impracticable.  17,250,000 shares of Sterling common stock were sold in the IPO.  Throughout the Class Period, Sterling securities were actively traded on NASDAQ.  Although the exact number of Class members is unknown at this time and can only be ascertained through appropriate discovery, Plaintiff believes there are thousands of members of the Class who traded the Company's common stock during the Class Period.

40.     Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting solely individual members of the Class.  Among the questions of law and fact common to the Class are:

(a)     Whether Defendants violated federal securities laws;

(b)     Whether the Registration Statement issued by Defendants in connection with the IPO omitted or misrepresented material facts;

(c)     Whether statements made by Defendants to the investing public during the Class Period misrepresented material facts;

(d)     Whether Sterling and the Officer Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

(e)     Whether the prices of Sterling securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

(f)      Whether the members of the Class have sustained damages and, if so, the proper measure of damages.

41.     Plaintiff's claims are typical of the claims of the members of the Class as Plaintiff and members of the Class sustained damages arising out of Defendants' wrongful conduct in violation of federal laws as complained of herein.

42.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.  Plaintiff has no interests antagonistic to, or in conflict with, those of the Class.

43.     A class action is superior to alternative methods for the fair and efficient adjudication of this controversy since joinder of all members of this Class is impracticable. Furthermore, because the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for the Class members individually to redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

44.     Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

(a)      Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

(b)      The omissions and misrepresentations were material;

(c)      Sterling securities are traded in an efficient market;

(d)      The Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

(e)      The Company traded on NASDAQ and was covered by multiple analysts;

(f)     The misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

(g)     Plaintiff and members of the Class purchased, acquired and/or sold Sterling securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

45.     Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

## FACTUAL ALLEGATIONS

**Background**

46.     Sterling is the unitary thrift holding company of Sterling Bank and Trust, founded in 1984. The Company is headquartered in Southfield, Michigan with its primary branch operations in the San Francisco Bay Area and Greater Los Angeles with an emerging presence in New York and Seattle.  The Company specializes in residential mortgages but offers a broad suite of products and services to individuals, professionals, businesses and commercial customers.

47.     During the Class Period, the Advantage Loan Program was the Company's largest lending product.  As of September, 2019 the Advantage Loan Program constituted more than four-fifths of its residential loan portfolio, and two-thirds of total loans.  The Advantage Loan Program is a lower-documentation, higher-down-payment mortgage which allows applicants to use nonstandard forms of documentation, such as a letter from an employer or a monthly bank statement.

12

**The Initial Public Offering**

48.     On October 19, 2017, Sterling filed a Registration Statement on Form S-1. Sandler was identified as the underwriter of the IPO.

49.     On October 31, 2017, Sterling filed Amendment No. 1 to Form S-1 with the SEC. Sandler was identified as the underwriter of the IPO.

50.     On November 7, 2017, Sterling filed Amendment No. 2 to Form S-1 with the SEC. Sandler was identified as the underwriter of the IPO.

51.     On November 13, 2017, Sterling filed Amendment No. 3 to Form S-1 with the SEC. Sandler was identified as underwriter of the IPO.

52.     On November 16, 2017, the Registration Statement was declared effective by the SEC.

53.     On November 17, 2017, Sterling filed the Prospectus Form 424b4 (the "Prospectus"), which is part of the Registration Statement, with the SEC. American Capital was identified as an additional underwriter of the IPO.

54.     On Friday, November 17, 2017, Sterling commenced its IPO of 15,000,000 shares of common stock at a price of $12.00 per share, including 7,692,308 shares of common stock sold by the Company and 7,307,692 shares sold by selling shareholders. The underwriters exercised their overallotment option of an additional 2,250,000 shares from the selling shareholders, the sales of which were completed on December 4, 2017. The total offering size, including the overallotment, was 17,250,000 shares for proceeds of $207 million.

55.     The selling shareholders include director Meltzer who is a member of the Founding Family. The remaining selling shareholders are trusts related to directors Meltzer and Seligman (who is also a member of the Founding Family) and other members of the Founding Family. In

13

total, these selling shareholders sold 9,557,692 shares for proceeds of $114,692,304 through the IPO.

### FALSE AND MISLEADING STATEMENTS DURING THE CLASS PERIOD

56.     The Registration Statement, including the November 17, 2017 Prospectus, signed by Judd, Lopp and the Director Defendants stated:

> We have a large and growing portfolio of adjustable rate residential mortgage loans. We manage residential credit risks through a financial documentation process and programs with low loan to value ratios, which averaged 62% across our residential portfolio as of September 30, 2017. Our risk management includes disciplined documentation of ability to repay, liquidity analysis and face-to-face customer interaction.

> ***

> We believe growth should not come at the expense of asset quality. We have historically been able to focus on long-term returns and remain committed to responsible growth. We also believe our strong sales team, disciplined underwriting and culture of cost management have driven consistent earnings and exemplary net interest margins, efficiency metrics and shareholder returns.

> ***

> We have established a culture that places credit responsibility with individual loan officers and management and does not rely solely on a loan committee and institutional experience to remain disciplined in our underwriting.

> ***

> We believe the success of our products is the result of our focus on the markets we serve, our understanding of customer needs, our management of product criteria, and our disciplined underwriting of the type of loans we make.

57.     On March 28, 2018, Sterling filed its 2017 10-K which stated:

> We have a large and growing portfolio of adjustable rate residential mortgage loans. In our key residential loan program, we manage residential credit risks through a financial documentation process and programs with low loan to value ratios. Our risk management includes disciplined documentation of ability to repay, liquidity analysis and face-to-face customer interaction.

> ***

14

Among our significant products is our Advantage Loan program, which consists of one, three, five, or seven-year adjustable rate mortgages with a minimum 35% down payment requirement. We offer this product to underserved home buyers who have good credit, but may have limited credit history. Our Advantage Loan program constituted 77% of our residential loan portfolio as of December 31, 2017.

\*\*\*

We have a loan approval process through which we require not only financial and other information from our borrowers, but our loan officers are required to meet face-to-face with each of our borrowers in our Advantage program and produce a narrative documentation recommending the loan.

\*\*\*

Our board of directors and management team have created a risk-conscious culture that is focused on quality growth, which includes infrastructure capable of addressing the evolving risks we face, as well as the changing regulatory and compliance landscape. Our risk management approach employs comprehensive policies and processes to establish robust governance and emphasizes personal ownership and accountability for risk with our employees. We believe a disciplined and conservative underwriting approach has been the key to our strong asset quality.

\*\*\*

We believe our significant growth has not come at the expense of asset quality. We have historically been able to focus on long-term returns and remain committed to responsible growth. We also believe our strong sales team, disciplined underwriting and culture of cost management have driven consistent earnings and exemplary net interest margins, efficiency metrics and shareholder.

58.     On July 30, 2018, the Company held its 2Q 2018 Earnings Call.  During call, Judd stated:

Sterling remains committed to executing on our strategy to expand our franchise through high touch customer relationships that results in strong loan production and a high percentage of core deposits combined with our strong credit culture and highly efficient back office operations. This should continue to drive exceptional returns for our shareholders.

59.     On October 29, 2018 the Company conducted its 3Q 2018 Earnings Call.  During the call, Lopp stated, "We delivered another strong quarter, driven by continued loan growth, a stable net interest margin, excellent credit quality and disciplined expense management."

15

60.     During the 3Q 2018 Earnings Call, Montemayor stated, "We have a highly responsive and efficient underwriting process for residential mortgages, which often enables us to close loans in half the time it takes our competition."

61.     On March 18, 2019, the Company filed its 2018 10-K.  The 2018 10-K stated:

We have a large and growing portfolio of adjustable rate residential mortgage loans. In our key residential loan program, we manage residential credit risks through a financial documentation process and programs with low loan to value ratios. Our risk management includes disciplined documentation of ability to repay, liquidity analysis and face-to-face customer interaction.

***

We believe growth should not come at the expense of asset quality. We have historically been able to focus on long-term returns and remain committed to responsible growth. We also believe our strong sales team, disciplined underwriting and culture of cost management have driven consistent earnings and exemplary net interest margins, efficiency metrics and shareholder returns.

***

Among our significant products is our Advantage Loan program, which consists of one, three, five, or seven-year adjustable rate mortgages with a minimum 35% down payment requirement. We offer this product to underserved home buyers who have good credit, but may have limited credit history. Our Advantage Loan program constituted 80% of our residential loan portfolio as of December 31, 2018.

***

We have a loan approval process through which we require not only financial and other information from our borrowers, but our loan officers are required to meet face-to-face with each of our borrowers in our Advantage program and produce a narrative documentation recommending the loan.

***

Our board of directors and management team have created a risk-conscious culture that is focused on quality growth, which includes infrastructure capable of addressing the evolving risks we face, as well as the changing regulatory and compliance landscape. Our risk management approach employs comprehensive policies and processes to establish robust governance and emphasizes personal ownership and accountability for risk with our employees. We believe a disciplined and conservative underwriting approach has been the key to our strong asset quality.

62.     On April 29, 2019, the Company held its 1Q 2019 Earnings Call.  During the call, Lopp stated, "We have an excellent credit history. In fact, the last residential mortgage charge-off on a non-legacy loan we originated was in January of '12 and the last commercial charge-off was in December of that year."

## THE TRUTH BEGINS TO EMERGE AS
## DEFENDANTS CONTINUE TO MISLEAD THE MARKET

63.     On June 21, 2019, after the market closed, Sterling filed a Form 8-K signed by Lopp disclosing that it had entered into an agreement with the OCC to enhance its anti-money laundering and Bank Secrecy Act compliance.  Specifically, the Form 8-K disclosed:

> On June 18, 2019, Sterling Bank and Trust, FSB, Southfield, Michigan (the "Bank"), a wholly-owned subsidiary of Sterling Bancorp, Inc. (the "Company") and the Office of the Comptroller of the Currency (the "OCC") entered into a formal agreement (the "Agreement") relating primarily to certain aspects of the Bank's Bank Secrecy Act/Anti-Money Laundering ("BSA/AML") compliance program.

> The Agreement generally requires that the Bank enhance its policies and procedures to ensure compliance with BSA/AML laws and regulations. The Bank will establish a Compliance Committee to monitor and assure compliance with the Agreement, oversee the completion of an independent review of account and transaction activity to be conducted by a third party vendor, and engage a third party to conduct a model validation for its BSA/AML monitoring software.

64.     In this June 21, 2019 8-K, the Company attempted to temper this news, stating that the "Bank does not believe that the Agreement will have any material impact on its performance metrics, the payment of dividends, or the current share repurchase program."

65.     Also on June 21, 2019, after the market closed, Sterling filed a second Form 8-K signed by Lopp which disclosed that director Fox, who served on the Audit and Risk Management Committee, had resigned from Sterling's Board, effective immediately.  He was replaced by Tom Minielly, who would also serve on the Audit and Risk Management Committee (only to resign six

months later on December 19, 2019).  Again, the Company tried to temper the news, further stating

in the 8-K, "Mr. Fox's retirement and resignation was not due to any disagreement on any matter

relating to the Company's operations, policies or practices."

66.     Upon this news, including the attempts to minimize it, the Company's stock price

dropped $0.16, or 1.59%, from a close of $10.06 on Friday, June 21, 2019 to a close of $9.90 on

Monday, June 24, 2019.

67.     On October 17, 2019, after the market closed, the Company issued a press release

announcing that CEO Judd was retiring after over eleven years of service with the Company.

68.     On October 28, 2019, the Company held its 3Q 2019 Earnings Call.  During the

call, Judd stated:

> We remain optimistic in our outlook as we end the year. We are focused on
> converting our healthy loan pipeline into closed loans, while maintaining solid
> credit quality and reducing deposit costs. During the fourth quarter, we expect to
> resume our loan growth and achieved NIM stability, which should translate into
> continued strong returns for our shareholders.

69.     Then, on December 9, 2019, the Company filed a Form 8-K disclosing that it was

suspending its Advantage Loan Program due to an internal review of documentation on past loans.

Specifically, the Form 8-K disclosed:

> On December 9, 2019, Sterling Bank and Trust, FSB, Southfield, Michigan (the
> "Bank"), a wholly-owned subsidiary of Sterling Bancorp, Inc. (the "Company")
> voluntarily and temporarily suspended its Advantage Loan program in connection
> with an ongoing internal review of the program's documentation procedures.
> Management believes it is prudent to temporarily halt the program as it continues
> to audit documentation on past loans and puts in place additional systems and
> controls to ensure the Bank's policies and procedures are followed on loans
> originated under the program. It is the Company's intention to resume the Loan
> Program as soon as management is confident its stated policies and procedures are
> being followed. However, it is presently difficult to estimate how long this
> suspension might last.
>
> The Advantage Loan Program is a material component of the Bank's total loan
> originations. While it is difficult to quantify the financial impact of the program's

18

temporary suspension, management anticipates a reduced level of near-term loan originations, slower overall loan portfolio growth, and less loan sales.

* * *

It is too early to assess the level of success that the Company will have in replacing the lost loan production volume from the Advantage Loan program's temporary suspension. If the Company is unable to replace the lost production in a timely matter, or if a decision is made to alter the program, the Company's results of operations could be materially and adversely affected.

70.     Upon this news, Sterling shares fell from a close of $9.45 on Friday December 6, 2019 to a close of $7.29 on Monday December 9, 2019, a decline of $2.16 or 22.86%, on heavy volume.

71.     Analyst and industry observers expressed surprise at the news.  For example, a December 9, 2019 Sandler O'Neill & Partners, L.P. report stated:

The fact Sterling has now suspended the origination of Advantage Loans suggests potentially broader issues with internal controls, which could include faulty documentation, appraisal issues or other problems (management did not disclose any such details).  As such, we think it heightens the risk of potential regulatory restrictions (product offerings, branch expansion, etc.) as well as put-backs of previously sold mortgages or other adverse events….given the relative contribution of the Advantage Loan program to overall loan volumes, we believe the expansion of other categories is unlikely to be a meaningful offset in the near term.

We believe the suspension of the Advantage Loan program will cause a material reduction to loan growth and gains on loan sales, partly offset by lower loan loss provisions and lower compensation costs.  Since Advantage Loans also have higher yields relative to many other loan types, the suspension may also result in a thinner net interest margin.

**ADDITIONAL SCIENTER ALLEGATIONS**

72.     Sterling and the Officer Defendants knew and/or recklessly disregarded the falsity and misleading nature of the information that they caused to be disseminated to the investing public.  The ongoing fraudulent scheme described herein could not have been perpetrated over a substantial period of time without the knowledge and complicity of the personnel at the highest

19

level of the Company, including the Officer Defendants.  These defendants were motivated to materially misrepresent the true nature of the Company's business, operations, and financial affairs to the public and regulators in order to keep the Company's share price artificially high.

## LOSS CAUSATION / ECONOMIC LOSS

73.     During the Class Period, as detailed herein, Sterling and the Officer Defendants engaged in a scheme to deceive the market and a course of conduct that artificially inflated the Company's common stock price and operated as a fraud or deceit on acquirers of the Company's common stock.  As detailed above, when the truth about, *inter alia*, the Company's underwriting, risk management and internal controls was revealed, the Company's common stock declined as the prior artificial inflation came out of its common stock price.  That decline in Sterling's common stock price was a direct result of the nature and extent of the fraud finally being revealed to investors and the market.  The timing and magnitude of the common stock price decline negates any inference that the loss suffered by Plaintiff and other members of the Class was caused by changed market conditions, macroeconomic or industry factors or Company-specific facts unrelated to the fraudulent conduct.  The economic loss, *i.e.*, damages, suffered by the Plaintiff and other Class members was a direct result of the fraudulent scheme to artificially inflate the Company's common stock price and the subsequent significant decline in the value of the Company's common stock when the prior misrepresentations and other fraudulent conduct were revealed.

74.     At all times relevant, Sterling and the Officer Defendants' materially false and misleading statements or omissions alleged herein directly or proximately caused the damages suffered by the Plaintiff and other Class members.  Those statements were materially false and misleading because they failed to disclose a true and accurate picture of Sterling's business,

operations and financial condition, as alleged herein.  Throughout the Class Period, these defendants publicly issued materially false and misleading statements and omitted material facts necessary to make the statements not false or misleading, causing Sterling's common stock price to be artificially inflated.  Plaintiff and other Class members purchased Sterling's common stock at those artificially inflated prices, causing them to suffer the damages complained of herein.

## NO SAFE HARBOR

75.     The statutory safe harbor under the Private Securities Litigation Reform Act of 1995, which applies to forward-looking statements under certain circumstances, does not apply to any of the allegedly false and misleading statements pled in this complaint.  The statements alleged to be false and misleading herein all relate to then-existing facts and conditions.  In addition, to the extent certain of the statements alleged to be false may be characterized as forward-looking, they were not adequately identified as "forward-looking statements" when made, and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements.  Alternatively, to the extent that the statutory safe harbor is intended to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because, at the time each of those forward-looking statements was made, the particular speaker had actual knowledge that the particular forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized and/or approved by an executive officer of Sterling who knew that those statements were false, misleading or omitted necessary information when they were made.

<u>COUNT I</u>
**Violations of Section 10(b) of the Exchange Act And Rule 10b-5 Promulgated Thereunder**
**(Against Sterling and the Officer Defendants)**

76.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

77.     This Count is asserted against Sterling and the Officer Defendants and is based upon § 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

78.     Pursuant to the above plan, scheme, conspiracy and course of conduct, each of these defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for the Company's securities.  Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about the Company's finances and business prospects.

79.     By virtue of their positions at the Company, the Officer Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, these defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to these defendants.  Said acts and omissions of these defendants were committed willfully or with reckless disregard for the truth.  In addition, each defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

80.     Information showing that these defendants acted knowingly or with reckless disregard for the truth is within these defendants' knowledge and control.  As the senior managers and/or directors of the Company, the Officer Defendants each had knowledge of the details of the Company's internal affairs.

81.     The Officer Defendants are liable both directly and indirectly for the wrongs complained of herein.  Because of their positions of control and authority, the Officer Defendants were able to and did, directly or indirectly, control the content of the statements of the Company.  As officers and/or directors of a publicly-held company, the Officer Defendants had a duty to disseminate timely, accurate and truthful information with respect to the Company's businesses, operations, future financial condition and future prospects.  As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of the Company's securities was artificially inflated throughout the Class Period.  In ignorance of the adverse facts concerning the Company's business and financial condition which were concealed by these defendants, Plaintiff and the other members of the Class purchased or otherwise acquired the Company's securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by these defendants, and were damaged thereby.

82.     During the Class Period, the Company's securities were traded on an active and efficient market.  Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which these defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of the Company's securities at prices artificially inflated by these defendants' wrongful conduct.  Had Plaintiff and the other members of the Class known the truth, they would not have purchased

or otherwise acquired said securities or would not have purchased or otherwise acquired them at the inflated prices that were paid.  At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of the Company's securities was substantially lower than the prices paid by Plaintiff and the other members of the Class.  The market price of the Company's securities declined upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

83.    By reason of the foregoing, Sterling and the Officer Defendants knowingly or recklessly, directly or indirectly violated § 10(b) of the Exchange Act and SEC Rule 10b-5 promulgated thereunder in that they: (a) employed devices, schemes and artifices to defraud; (b) failed to disclose material information; or (c) engaged in acts, practices and a course of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class in connection with their purchases of Sterling common stock during the Class Period.

84.    As a direct and proximate result of Sterling and the Officer Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II
### Violations of Section 20(a) of the Exchange Act
### (Against the Officer Defendants)

85.    Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

86.    This count is asserted against the Officer Defendants and is based upon § 20(a) of the Exchange Act, 15 U.S.C. §78t(a).

87.     During the Class Period, the Officer Defendants participated in the operation and management of the Company, and conducted and participated, directly and indirectly, in the conduct of the Company's business affairs.  Because of their senior positions, they knew the adverse non-public information about the Company's misstatement of income and expenses and false financial statements.

88.     As officers and/or directors of a publicly owned company, the Officer Defendants had a duty to disseminate accurate and truthful information with respect to the Company's financial condition and results of operations, and to correct promptly any public statements issued by the Company which had become materially false or misleading.

89.     Because of their positions of control and authority as senior officers, the Officer Defendants were able to, and did, control the contents of the various reports, press releases and public filings which the Company disseminated in the marketplace during the Class Period concerning the Company's results of operations.  Throughout the Class Period, the Officer Defendants exercised their power and authority to cause the Company to engage in the wrongful acts complained of herein.  The Officer Defendants, therefore, were "controlling persons" of the Company within the meaning of § 20(a) of the Exchange Act.  In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of the Company securities.

90.     By reason of the above conduct, the Officer Defendants are liable pursuant to § 20(a) of the Exchange Act for the violations committed by the Company.

## COUNT III
### Violations of Section 11 of the Securities Act
### (Against Sterling, Judd, Lopp, the Director Defendants
### and the Underwriter Defendants)

91.     Plaintiff repeats and re-alleges each and every allegation contained in each of the foregoing paragraphs as if set forth fully herein.

92.     This Count is asserted against Sterling, Judd, Lopp, the Director Defendants and the Underwriter Defendants for violations of § 11 of the Securities Act, 15 U.S.C. § 77k, on behalf of all members of the Class who purchased or otherwise acquired Sterling shares issued in or traceable to the IPO.

93.     The Registration Statement for the IPO contained untrue statements of material fact and omitted other facts necessary to make the statements not misleading.

94.     Judd, Lopp, and the Director Defendants signed the Registration Statement and were officers and/or directors when the Registration Statement became effective and are liable pursuant to 15 U.S.C. § 77k(a)(1)(2) and (3).  The Underwriter Defendants were underwriters of the IPO Offering and are liable pursuant to 15 U.S.C. § 77k(a)(5).  This Count is not based on and does not sound in fraud. Any allegations of fraud or fraudulent conduct and/or motive are specifically excluded from this Count.  For purposes of asserting this claim under the Securities Act, Plaintiff does not allege that Sterling, Judd, Lopp, the Director Defendants and the Underwriter Defendants acted with scienter or fraudulent intent, which are not elements of a § 11 claim.

95.     Sterling was the Registrant for the IPO and Judd, Lopp and the Director Defendants signed the Registration Statement and were executive officers and representatives of the Company who were responsible for the contents and dissemination of the Registration Statement. Consequently.  As such, said defendants issued, caused to be issued, and participated in the

issuance of the Registration Statement and are subject to liability for violations of § 11 of the Securities Act.

96.     The Underwriter Defendants were the underwriters of the IPO.  The Underwriter Defendants acted negligently and are liable to members of the Class who purchased or otherwise acquired Sterling securities issued in the IPO.

97.     None of these defendants made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Registration Statement and the Prospectus were true and without omissions of any material facts and were not misleading.

98.     Plaintiff and other members of the Class who acquired the securities in the IPO pursuant to the Registration Statement did not know of the misrepresentations alleged herein or of the facts concerning the untrue statements of material fact and omissions alleged herein, and could not have reasonably discovered such facts or conduct.

99.     Less than one year elapsed from the time that Plaintiff discovered or reasonably could have discovered the facts upon which this complaint is based to the time that the first complaint was filed asserting claims arising out of the falsity of the Registration Statement.  Less than three years elapsed from the time that the securities upon which this Count is brought were bona fide offered to the public to the time that the first complaint was filed asserting claims arising out of the falsity of the Registration Statement.

100.     Plaintiff and the other members of the Class have sustained damages.  The value of Sterling's shares sold in the IPO has declined substantially subsequent to and due to Sterling, Judd, Lopp, the Director Defendants and the Underwriter Defendants' violations of § 11 of the Securities Act.

101.    By reason of the foregoing, the defendants named in this Count are liable for violations of § 11 of the Securities Act to Plaintiff and the other members of the Class who purchased or otherwise acquired Sterling shares in or traceable to the IPO pursuant to the Registration Statement.

**COUNT IV**
**Violations of Section 12(a)(2) of the Securities Act**
**(Against Sterling and the Underwriter Defendants)**

102.    Plaintiff repeats and re-alleges each of the allegations set forth above as if fully set forth herein.

103.    This Count is asserted against the Sterling and the Underwriter Defendants for violations of § 12(a)(2) of the Securities Act, 15 U.S.C. § 77l(a)(2), on behalf of all members of the Class who purchased or otherwise acquired Sterling shares issued in the IPO.

104.    Sterling and the Underwriter Defendants were sellers, offerors, and/or solicitors of sales of securities offered pursuant to the Prospectus.

105.    The Prospectus contained untrue statements of material fact and omitted other facts necessary to make the statements not misleading, and failed to disclose material facts, as set forth above.

106.    Sterling and the Underwriter Defendants owed to the purchasers of Sterling common stock, including Plaintiff and the other Class members, the duty to make a reasonable and diligent investigation of the statements contained in the Prospectus to ensure that such statements were accurate and that they did not contain any misstatement or omission of material fact.  Sterling and the Underwriter Defendants, in the exercise of reasonable care, should have known that the Prospectus contained misstatements and omissions of material fact.

107.    Sterling and the Underwriter Defendants did not make a reasonable investigation or possess reasonable grounds to believe that the statements contained in the Prospectus were true and without omissions of any material facts and were not misleading.  By virtue of the conduct alleged herein, the Defendant Sterling and the Underwriter Defendants violated § 12(a)(2) of the Securities Act.

108.    Plaintiff and other members of the Class who purchased or otherwise acquired securities in the IPO pursuant to the materially untrue and misleading Prospectus did not know or, in the exercise of reasonable diligence could not have known, of the untruths and omissions contained in the Prospectus.

109.    Plaintiff, individually and on behalf of the Class, hereby offers to tender to Sterling and the Underwriter Defendants those shares of common stock that Plaintiff and the other Class members continue to own, in return for the consideration paid for those shares together with interest thereon.  Class members who have sold their shares are entitled to rescissory damages.

110.    By virtue of the conduct alleged herein, Sterling and the Underwriter Defendants violated § 12(a)(2) of the Securities Act

### COUNT V
### Violations of Section 15 of the Securities Act
### (Against the Officer Defendants and the Director Defendants)

111.    Plaintiff repeats and re-alleges each of the allegations set forth above as if fully set forth herein.

112.    This Count is asserted against the Officer Defendants and the Director Defendants for violations of Section 15 of the Securities Act, 15 U.S.C. § 77o, on behalf of Plaintiff and the other members of the Class who purchased or otherwise acquired Company shares in or traceable to the IPO.

113.    At all relevant times, the Officer Defendants and the Director Defendants were controlling persons of the Company within the meaning of § 15 of the Securities Act.  Each of the Officer Defendants and the Director Defendants served as an executive officer or director of Company prior to and at the time of the IPO.  At all relevant times these defendants participated in the operation and management of the Company, and conducted and participated, directly and indirectly, in the conduct of the Company's business affairs.  As officers and directors of a publicly owned company, they each had a duty to disseminate accurate and truthful information with respect to the Company's financial condition and results of operations.

114.    By reason of the aforementioned conduct, each of the Officer Defendants and the Director Defendants were culpable participant in the violation of § 11 of the Securities Act alleged in Count III above by virtue of signing the Registration Statement and having otherwise participated in the process which allowed the IPO to be successfully completed.  Thus, the Officer Defendants and the Director Defendants are liable under § 15 of the Securities Act, jointly and severally with, and to the same extent as the Company is liable under § 11 and 12(a)(2) of the Securities Act, to Plaintiff and the other members of the Class who purchased securities in the IPO.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on its own behalf and on behalf of the Class, prays for judgment as follows:

(a)     Determining this action to be a proper class action and certifying Plaintiff as class representative under Rule 23 of the Federal Rules of Civil Procedure;

(b)     Awarding compensatory damages in favor of Plaintiff and the other members of the Class against all defendants, jointly and severally, for the damages sustained as a result of the wrongdoings of defendants, together with interest thereon;

30

(c)     Awarding Plaintiff the fees and expenses incurred in this action including reasonable allowance of fees for Plaintiff's attorneys and experts;

(d)     Granting extraordinary equitable and/or injunctive relief as permitted by law, equity and federal and state statutory provisions sued on hereunder;

(e)     Awarding rescission damages as to claims under the Securities Act; and

(f)     Granting such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury of all claims and issues in this Complaint that are so triable.

DATED:  February 26, 2020               **WEITZ & LUXENBERG**

                                        */s/ Paul F. Novak*
                                        Paul F. Novak
                                        Fisher Building
                                        3011 West Grand Blvd., Suite 2150
                                        Detroit, MI 48202
                                        Telephone: (313) 800-4170
                                        Facsimile: (646) 293-7992
                                        Email: *pnovak@weitzlux.com*

                                        **BERMAN TABACCO**
                                        Kristin J. Moody (*Pro Hac Vice* to be submitted)
                                        Chowning Poppler (*Pro Hac Vice* to be submitted)
                                        44 Montgomery Street, Suite 650
                                        San Francisco, CA  94104
                                        Telephone: (415) 433-3200
                                        Facsimile: (415) 433-6382
                                        Email:  kmoody@bermantabacco.com
                                                cpoppler@bermantabacco.com

                                                -and-

31

**BERMAN TABACCO**
Patrick T. Egan (*Pro Hac Vice* to be submitted)
Nicole Maruzzi (*Pro Hac Vice* to be submitted)
One Liberty Square
Boston, MA 02109
Telephone: (617) 542-8300
Facsimile: (617) 542-1194
Email:   pegan@bermantabacco.com
          nmaruzzi@bermantabacco.com

*Counsel for Oklahoma Police Pension and Retirement System*

## CERTIFICATION OF OKLAHOMA POLICE PENSION AND RETIREMENT SYSTEM PURSUANT TO FEDERAL SECURITIES LAW

I, Ginger Sigler, on behalf of Oklahoma Police Pension and Retirement System ("Oklahoma Police"), hereby certify that the following is true and correct to the best of my knowledge, information, and belief:

1.      I am the Executive Director of Oklahoma Police and am authorized to make this certification on behalf of Oklahoma Police.

2.      I have reviewed the complaint in this matter and have authorized Berman Tabacco to file the class action complaint on behalf of Oklahoma Police.

3.      Oklahoma Police did not engage in transactions in the securities that are the subject of this action at the direction of counsel or in order to participate in this or any other litigation under the federal securities laws.

4.      Oklahoma Police is willing to serve as a representative party on behalf of the class, including providing testimony at deposition or trial, as necessary.

5.      Oklahoma Police's transactions in the securities that are the subject of this action are set forth in Exhibit 1 appended to this certification.  Other than those transactions set forth in Exhibit 1, Oklahoma Police has engaged in no transactions during the class period in the securities that are the subject of this action.

6.      During the three-year period preceding the date of this certification, Oklahoma Police has sought to serve and was appointed lead plaintiff or a representative party on behalf of a class under the federal securities laws in the following matters:

- *In re Tempur Sealy Int'l, Inc. Sec. Litig.*, No. 17-cv-02169 (S.D.N.Y.)
- *Milbeck v. TrueCar, Inc.*, No. 2:18-cv-02612 (C.D. Cal.)
- *Oklahoma Police Pension & Retirement System. v. Nevro Corp.*, No. 18-cv-05181 (N.D. Cal.)
- *Ronge v. Camping World Holdings Inc.*, No. 18-cv-07030 (N.D. Ill.)
- *Mo-Kan Iron Workers Pension Fund v. Teligent Inc.*, No. 19-cv-03354 (S.D.N.Y.)
- *Plymouth County Retirement System v. Evolent Health Inc.*, No. 19-cv-01031 (E.D. Va.)
- *Logan v. ProPetro Holding Corp.*, No. 19-cv-00217 (W.D. Tex.)

7.      Oklahoma Police has sought to serve as a lead plaintiff and representative party on behalf of a class in the following actions under the federal securities laws filed during the three year period preceding the date of this Certification, but either did not file a lead plaintiff motion, withdrew its motion for lead plaintiff, was not appointed lead plaintiff or the lead plaintiff decision is still pending:

- *McKenna v. Dick's Sporting Goods Inc.*, No. 17-cv-03680 (S.D.N.Y)
- *Hessefort v. Super Micro Computer Inc.*, No. 18-cv-00838 (N.D. Cal.)

- *City of Birmingham Firemen's and Policemen's Supplemental Pension System v. Pluralsight Inc.*, No. 19-cv-07563 (S.D.N.Y.)

8.     Oklahoma Police will not accept any payment for serving as representative party on behalf of the class beyond Oklahoma Police's *pro rata* share of any recovery, except for any award, as ordered or approved by the Court in compliance with federal law, directly relating to the representation of the class.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on February 20, 2020.

Ginger Sigler
Executive Director
Oklahoma Police Pension and Retirement System

**Sterling Bancorp, Inc.**
**Common Stock (CUSIP 85917W102)**
**Exhibit 1**

Class Period: 11/17/17 - 12/08/19

Oklahoma Police Pension and Retirement System

| Trade Date | Transaction | Shares Bought | Shares Sold | Trade Price |
|---|---|---|---|---|
| Beginning Holdings | | 0 | | |
| | | | | |
| 11/17/17 | PURCHASES | 30,626 | | $12.0000 |
| 11/21/17 | PURCHASES | 7,351 | | $12.6232 |
| 12/17/18 | SALES | | (4,105) | $8.4113 |
| 08/19/19 | SALES | | (4,766) | $9.6103 |
| 10/22/19 | PURCHASES | 6,571 | | $10.0000 |