# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| OKLAHOMA POLICE PENSION AND RETIREMENT SYSTEM, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> STERLING BANCORP, INC., et al., <br><br> Defendants. | Case No. 5:20-cv-10490-JEL-EAS <br><br> Hon. Judith E. Levy <br> CLASS ACTION |

==========================================================

## DEFENDANT SCOTT SELIGMAN'S MOTION TO DISMISS
## THE AMENDED CLASS ACTION COMPLAINT

==========================================================

ClarkHill\27472\410667\260867064.v1-9/22/20

Defendant Scott Seligman ("Seligman") moves to dismiss Counts II, III and VI of Plaintiff Oklahoma Police Pension and Retirement System's ("Plaintiff") Amended Complaint (Dkt. No. 36) pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b). Pursuant to this Court's September 10, 2020 Order (Dkt. No. 46), Seligman adopts the Motion and Memorandum of Law submitted by Sterling Bancorp, Inc. ("Sterling") and addresses herein the causes of action directed against Seligman individually, as follows:

1. On February 26, 2020, Plaintiff filed a putative class action complaint against Sterling Bancorp, Inc. ("Sterling"), certain of its current and former officers and directors, and Sterling Bank and Trust's (the "Bank") underwriters.  Dkt. No. 1.

2. On May 18, 2020, the Court entered an Order allowing Plaintiff to file an amended complaint by July 2, 2020. Dkt. No. 20.

3. On July 2, Plaintiff filed an Amended Complaint, which added claims against Scott Seligman ("Seligman") and named him as a defendant (the "Complaint"). Dkt. No. 36.

4. In the Complaint, Plaintiff attempts to assert that Seligman violated Section 15 of the Securities Act of 1933 ("Securities Act") (Count II) and Section 20(a) of the Securities Exchange Act of 1934 ("Exchange Act") (Count VI) by acting as a "control person" over Sterling in relation to Sterling's allegedly false public

filings. Plaintiff also asserts Seligman engaged in certain insider trading in violation of Section 20A of the Exchange Act (Count III). Dkt. No. 36.

5.     Plaintiff's Complaint fails to allege any cause of action against Seligman.

6.     First, the claims against Seligman are predicated on pleading an underlying securities law violation against Sterling. As explained in Sterling's Motion to Dismiss and Memorandum of Law in support thereof (which Seligman adopts and incorporates by reference here), Plaintiff fails to plead any predicate securities law violations. As a result, Counts II, III and VI fail as a matter of law.

7.     Second, Counts II and VI, alleging control person liability against Seligman, must be dismissed because Plaintiff pleads only conclusory allegations about Seligman's "positions in the bank" or ownership of stock held in various trusts, which is inadequate under the applicable standards.

8.     In order to prevail under Sections 15 and 20(a), Plaintiff must plead facts demonstrating that Seligman (1) "actually participated in [i.e. exercised control over] the operations" of Sterling; (2) "possessed the power to control the specific transaction or activity upon which the primary violation is predicated" (*USM Holdings, Inc. v. Simon*, No. 15-14251, 2016 WL 4396061, * 13 (E.D. Mich. Aug. 18, 2016)); and (3) "culpably participated" in the fraud by encouraging and permitting the issuance of statements he knew were false. *Yadlosky v. Thornton*, 120

3

F. Supp. 2d 622, 631 (E.D. Mich. 2000). Merely pleading a person's title or pleading the conclusion that one "culpably participated" in misconduct does not meet the pleading standards for pleading "controlling person" liability. *See Bomarko, Inc. v. Hemodynamics, Inc.*, 848 F. Supp. 1335, 1339 (W.D. Mich. 1993).

9.      Accordingly, Counts II and VI must be dismissed for Plaintiff's failure to adequately plead the claims.

10.      Finally, Count III also must be dismissed as deficiently pled. To state a claim for a violation of Section 20A, Plaintiff must allege (1) a predicate violation of the Exchange Act; (2) that the insider was in possession of material nonpublic information; and (3) that the plaintiff traded contemporaneously with the alleged insider. *In re Schering-Plough Corp./Enhance Sec. Litig.*, 2009 WL 2855457, at *3 (D. N.J. 2009).

11.      Plaintiff fails to plead a violation of Section 20A against Seligman because (1) several of the challenged trades were made during the IPO by Seligman family trusts, not Seligman himself, (2) Seligman did not sell shares in Sterling contemporaneously with Plaintiff purchasing shares in Sterling, and (3) because Plaintiff fails to allege with the specificity required under Federal Rule of Civil Procedure 9(b) what material information Seligman allegedly possessed that was not publicly available at the time of the trust's trade.

12.     Because Plaintiff fails to satisfy the well-established pleading standards to bring a claim under Section 20A of the Exchange Act, Count III also must be dismissed.

**WHEREFORE**, for the reasons set forth above and in the Memorandum in Support of his Motion to Dismiss filed contemporaneously herewith and Sterling's Motion and Memorandum in Support thereof and adopted herein, Defendant Scott Seligman respectfully requests that the Court enter an order (1) granting his Motion to Dismiss and (2) granting such other relief as the Court deems just and appropriate.

Respectfully submitted,

SCOTT SELIGMAN, Defendant

CLARK HILL PLC

*s/Daniel T. Graham*
Russell D. Duncan
Alexander R. Green
1001 Pennsylvania Ave. NW, # 1300
Washington, DC 20004
(t) 202-772-0909
(f) 202-772-0919
rduncan@clarkhill.com
(Requests for admission to be filed)

Daniel T. Graham (admitted)
Giel Stein (admitted)
Maureen J. Moody (admitted)
130 E. Randolph St., Suite 3900
Chicago, IL 60601
(t) 312-0985-5900
(f) 312-985-5999
dgraham@clarkhill.com

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| OKLAHOMA POLICE PENSION AND RETIREMENT SYSTEM, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>STERLING BANCORP, INC., et al.,<br><br>Defendants. | Case No. 5:20-cv-10490-JEL-EAS<br><br>Hon. Judith E. Levy<br>CLASS ACTION |

========================================================

# MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT
# SCOTT SELIGMAN'S MOTION TO DISMISS
# THE AMENDED CLASS ACTION COMPLAINT

========================================================

## **TABLE OF CONTENTS**

INTRODUCTION ..............................................................................................1

BRIEF FACTUAL BACKGROUND ....................................................................2

ARGUMENT .....................................................................................................5

    I.     Counts II and VI, Alleging Control Person Liability, must be Dismissed because Plaintiff has Failed to Plead both an Underlying Securities Violation, and the Elements of Section 20(a) and Section 15 Violations. ..............................................5

          A.     Plaintiff Fails to Plead a Primary Securities Law Violation.......................................................................................5

          B.     Plaintiff Fails to Plead Facts that Seligman Actually Controlled Sterling or Culpably Participated in any Alleged Misconduct. ...................................................6

    II.    The Complaint Fails to State a Section 20A Claim for Insider Trading Against Seligman......................................................12

          A.     Seligman Did Not Sell Shares in Sterling Contemporaneously with a Purchase by Plaintiff....................13

          B.     Plaintiff Fails to Plead a Predicate Violation of the Exchange Act. .........................................................................16

          C.     Plaintiff Does Not Plead Particularized Facts that Seligman Possessed Material Nonpublic Information about Sterling.......................................................17

CONCLUSION .................................................................................................19

ClarkHill\27472\410667\260866101.v1-9/22/20

# TABLE OF AUTHORITIES

## CASES

*Adams v. Kinder-Morgan, Inc.*,
   340 F. 3d 1083 (10th Cir. 2003) ....................................................................8

*Banks v. Northern Trust Corp.*,
   929 F. 3d 1046 (9th Cir. 2019) ......................................................................9

*Berger, v. Ludwick*,
   2000 WL 1262646 (N.D. Cal. 2000) ............................................................18

*Bomarko, Inc. v. Hemodynamics, Inc.*,
   848 F. Supp. 1335 (W.D. Mich. 1993)................................................ 6, 8, 12

*Bovee v. Coopers & Lybrand C.P.A.*,
   272 F.3d 356 (6th Cir. 2001) .......................................................................13

*Chanoff v. U.S. Surgical Corp.*,
   857 F.Supp. 1011 (D. Conn.), *aff'd* 31 F.3d 66 (2d Cir. 1994)....................13

*City of Edinburgh Council v. Pfizer, Inc.*,
   754 F.3d 159 (3d Cir. 2014) .........................................................................16

*City of Omaha Police & Fire Ret. Sys. v. Evoqua Water Techs. Corp.*,
   2020 WL 1529371 (S.D.N.Y. 2020) .............................................................16

*D.E. &J. Limited Partnership v. Conway*,
   284 F. Supp. 2d 719 (E.D. Mich. 2003) (dismissing Section 20(a)
   claim where underlying 10(b) claim failed), *aff'd*, 133 Fed.
   App'x 994 (6th Cir. 2005) .........................................................................5, 6

*In re 3Com Corp.*,
   1999 WL 1039715 (N.D. Cal. 1999) ............................................................17

*In re AFC Enters. Sec. Litig.*,
   348 F. Supp. 2d 1363, 1373 (N.D. Ga. 2004), *aff'd sub
   nom., Exec. Risk Indem., Inc. v. AFC Enters.*, 279 F. App'x 793
   (11th Cir. 2008) ............................................................................................16

*In re Countrywide Fin. Corp. Sec. Litig.*,
   588 F. Supp. 2d 1132 (C.D. Cal. 2008).........................................................14

ii

*In re Enron Corp.*,
    2016 WL 4095973 (S.D. Tex. 2016) ............................................................18

*In re Fed. Nat'l Mortg. Ass'n Sec., Derivative, & "ERISA" Litig.*,
    503 F. Supp. 2d 25 (D. D.C. 2007)................................................................14

*In re MicroStrategy, Inc. Sec. Litig.*,
    115 F. Supp. 2d 620 (E.D. Va. 2000) ..................................................... 13, 14

*In re Oak Technology Securities Litigation*,
    1997 WL 448168 (N.D. Cal. 1997) ..............................................................19

*In re Schering-Plough Corp./Enhance Sec. Litig.*,
    2009 WL 2855457 (D. N.J. 2009) ................................................................13

*In re Take-Two Interactive Sec. Litig.*,
    551 F. Supp. 2d 247 (S.D. N.Y. 2008) .........................................................17

*J & R Marketing, SEP v. General Motors Corp.*,
    549 F.3d 384 (6th Cir. 2008) ..........................................................................5

*Picard Chemical Inc. Profit Sharing Plan v. Perrigo Co.*,
    940 F. Supp. 1101 (W.D. Mich. 1996)............................................... 6, 9, 13

*Rich v. Maidstone Fin., Inc.*,
    2001 WL 286757 (S.D.N.Y. 2001) ..............................................................11

*S.E.C. v. Wyly*,
    56 F. Supp. 3d 394 (S.D.N.Y. 2014) ..............................................................9

*Sumpter v. United States*,
    302 F. Supp. 2d 707 (E.D. Mich. 2004) .......................................................15

*Thomas v. Magnachip Semiconductor Corp.*,
    167 F. Supp. 3d 1029 (N.D. Cal. 2016).........................................................14

*USM Holdings, Inc. v. Simon*,
    2016 WL 4396061 (E.D. Mich. 2016) .......................................... 6, 9, 10, 11

*Yadlosky v. Thornton*,
    120 F. Supp. 2d 622 (E.D. Mich. 2000) ....................................................6, 11

iii

*Youngers v. Virtus Investment Partners, Inc.*,
195 F. Supp. 3d 499 (S.D.N.Y 2016) ............................................................8

## **STATUTES**

15 U.S.C. § 78t-1(a) ........................................................... 12, 14

Fed. R. Civ. P. 9(b) ................................................................13

## **OTHER AUTHORITIES**

H.R. Conf. Rep. No. 104-369, 37, reprinted in 1995 U.S.C.C.A.N. 730,
736 ...............................................................................18

iv

Defendant Scott Seligman ("Seligman") respectfully submits this memorandum in support of his Motion to Dismiss Counts II, III and VI of the Amended Complaint (Dkt. No. 36) (the "Complaint") filed by Plaintiff Oklahoma Police Pension and Retirement System ("Plaintiff"). Pursuant to this Court's September 10, 2020 Order (Dkt. No. 46), Seligman adopts the Motion and Memorandum of Law submitted by Sterling Bancorp, Inc. ("Sterling") and addresses herein the causes of action directed against Seligman individually.

## **INTRODUCTION**

Plaintiff attempts to plead causes of action against Seligman based entirely on the conclusory allegations that "due to his positions" at Sterling Bancorp, Inc., the holding company ("Sterling"), and Sterling Bank and Trust (the "Bank"), he *must have* controlled the content of Sterling's public filings, and *must have* possessed material, non-public information about Sterling on which certain trades were made. (C ¶ 40.) As explained in detail in Sterling's Motion, Plaintiff fails to plead any underlying securities violations, and without predicate claims, Counts II, III and VI fail. Moreover, courts are clear that pleading titles and functions alone do not establish "control person" status. In order to state a claim under Section 15 of the Securities Act and Section 20(a) of the Exchange Act, Plaintiff must plead *facts* demonstrating that Seligman was engaged in the Bank's day-to-day operations, controlled Sterling's public filings containing purportedly false information, and

1

facts to support a claim that he "culpably participated" in the alleged misconduct. The Complaint is devoid of such factual allegations. Because control person liability cannot be established on conclusory allegations about Seligman's "positions" or ownership of stock held in various trusts, Counts II and VI must be dismissed.

As to Count III, alleging insider trading in violation of Section 20A of the Exchange Act, the Court should dismiss this claim with prejudice. First, the majority of the challenged trades were made by several Seligman family trusts, not Seligman himself. Further, by failing to allege with specificity what material information Seligman allegedly possessed that was not publicly available at the time of the trust's trades, Plaintiff also fails to satisfy the well-established pleading standards to bring such claims. As a result, the allegations in Count III are insufficient to bring a claim against Seligman and the Complaint must be dismissed.

## **BRIEF FACTUAL BACKGROUND**

Seligman founded the Bank in 1984. (C ¶ 64.) The Bank is the wholly-owned subsidiary of Sterling, a unitary thrift holding company. (*Id.*) On November 17, 2017, Sterling became a public company through an IPO of common stock. (C ¶ 3.) As alleged, Plaintiff purchased Sterling stock on three occasions following the IPO – on November 17, 2017, on November 21, 2017, and on December 9, 2019 (C ¶ 32) – but seeks to certify a class of persons that purchased Sterling's stock for the entire period spanning from the IPO through March 17, 2020 (the "Class Period"),

2

purportedly based on Sterling's representations and omissions relating to the Bank's Advantage Loan Program ("ALP"). (C ¶ 53.)

The ALP provided residential loans to "underserved home buyers," often "foreign nationals and recent immigrants" seeking timely approval for mortgages. (C ¶¶ 84-85.) Because the program sought to serve those "who have good credit, but may have limited credit history," ALP mortgages carried a high "minimum 35% down payment requirement." (*Id.*) Sterling disclosed in its offering materials that its business strategy was to "focus on nontraditional loan products" rather than "traditional conforming, fixed-rate mortgages," and that a "majority of [its] residential mortgage loans [were] not 'qualified mortgages,'" meaning that its "underwriting process [did] not strictly follow applicable regulatory guidance required for such qualification," including in the areas of "verify[ing] and document[ing] the income and financial resources relied upon to qualify a borrower for [a] loan." (S-1 at 3-4, 17.)

Despite these express disclosures relating to underwriting and the ALP program, Plaintiff asserts that Sterling and its officers, directors, and underwriters (not Seligman) misrepresented that the ALP was compliant with federal law by

3

describing the Bank's underwriting and controls programs as "disciplined," "conservative," and "risk-conscious" in public filings.[1]

Of the Complaint's four hundred and seventy-nine (479) paragraphs, Seligman is mentioned in a mere twenty-five. Plaintiff alleges that Seligman, solely "due to his position" as a Vice President of Sterling and as an "advisor" to the Bank's Board of Directors, had the ability to control the content and dissemination of Sterling's public filings. (C ¶¶ 418, 420, 474.) Although the Complaint fails to allege facts to support the conclusion that Seligman exercised that control or facts identifying which public filings he controlled or how or when he influenced the content of those filings, Plaintiff asserts that Seligman is liable for Sterling's misrepresentations under theories of "control person" liability. (C ¶¶ 417-423 (Count II – Section 20(a) of the Exchange Act); ¶¶ 472-479 (Count VI – Section 15 of the Securities Act).) Plaintiff further alleges that Seligman violated Section 20A of the Exchange Act (Count III) by using material, non-public information to sell Sterling stock contemporaneously with Plaintiff's purchase of such stock. (C ¶¶ 424-431.)

---

[1]   *See* C ¶¶ 7, 103, 111, 161, 163-165, 166, 166(a), 166(b), 167, 238, 240-42, 244, 244(a), 244(b), 245, 301, 303-04, 306-07, 308, 308(a), 308(b), 309, 326, 328, 336, 446, 448-49, 450, 450(a), 450(b), 451 (alleging *ad nauseum* that the Bank's underwriting and controls programs were "neither disciplined nor conservative").

## ARGUMENT

I.    **Counts II and VI, Alleging Control Person Liability, must be Dismissed because Plaintiff has Failed to Plead both an Underlying Securities Violation, and the Elements of Section 20(a) and Section 15 Violations.**

   A.    *Plaintiff Fails to Plead a Primary Securities Law Violation.*

   In order to allege a claim of "control person" liability under Section 20(a) of the Exchange Act, the plaintiff must first plead a primary violation of Section 10(b).[2] *See D.E.&J. Limited Partnership v. Conway*, 284 F. Supp. 2d 719, 750 (E.D. Mich. 2003) (dismissing Section 20(a) claim where underlying 10(b) claim failed), *aff'd*, 133 Fed. App'x 994, 1001 (6th Cir. 2005). Likewise, in order to plead a control person claim under Section 15 of the Securities Act, the plaintiff must first plead a predicate violation of Section 11 or 12 of the Securities Act. *See J & R Marketing, SEP v. General Motors Corp.*, 549 F.3d 384, 398 (6th Cir. 2008) (affirming dismissal of Section 15 claim where no predicate violation was pled). As set forth in Sterling's Motion to Dismiss, Plaintiff failed to state a claim under § 10(b), § 11, and § 12(a)(2) (Counts I, IV, and V, respectively). Accordingly, Plaintiff's Section 15 and 20(a) claims against Seligman fail as a matter of law and should be dismissed. *Conway*, 284 F. Supp. 2d at 750; *General Motors Corp.*, 549 F.3d at 398.

---

[2]    For the sake of brevity, Seligman will not repeat here the "Legal Standard" section of Sterling's Brief setting forth the various pleading standards that Plaintiff must satisfy in order to avoid dismissal of its Complaint under Rule 12(b)(6).

ClarkHill\27472\410667\260866101.v1-9/22/20

**B.**   ***Plaintiff Fails to Plead Facts that Seligman Actually Controlled Sterling or Culpably Participated in any Alleged Misconduct.***

Counts II and VI against Seligman are also subject to dismissal because Plaintiff failed to sufficiently plead facts to support the elements of a control liability claim. In order to prevail under Sections 15 and 20(a), Plaintiff must plead facts demonstrating that Seligman (1) "actually participated in [i.e. exercised control over] the operations" of Sterling; and (2) "possessed the power to control the specific transaction or activity upon which the primary violation is predicated." *See USM Holdings, Inc. v. Simon*, 2016 WL 4396061, * 13 (E.D. Mich. 2016).[3] In addition, Plaintiff must plead facts that Seligman "culpably participated" in the alleged fraud by encouraging and permitting the issuance of statements he knew were false. *Yadlosky v. Thornton*, 120 F. Supp. 2d 622, 631 (E.D. Mich. 2000); *Conway*, 284 F. Supp. 2d at 750 ("[t]o plead a Section 20(a) violation, a complaint must allege facts establishing that the defendant controlled another person who committed an underlying violation of the Act, *and* that the defendant culpably participated in that underlying violation.") (emphasis original); *Bomarko, Inc. v. Hemodynamics, Inc.*, 848 F. Supp. 1335, 1339 (W.D. Mich. 1993) ("This culpable participation standard

---

[3]   The elements of a control person claim under Section 15 and Section 20(a) are the same. *See Picard Chemical Inc. Profit Sharing Plan v. Perrigo Co.*, 940 F. Supp. 1101, 1133-36 (W.D. Mich. 1996).

6

is met . . . by evidence that the 'controlling persons' encouraged and permitted the issuance of statements they knew were false.").

Rather than plead facts demonstrating that Seligman "actually participated" and exercised control over Sterling, or "possessed the power" to control Sterling's press releases, statements, and other public filings,[4] Plaintiff repeats the bare conclusion that Seligman, "due to his positions" with Sterling, had such control. (*See* C ¶¶ 40, 420, 423, 474, 477.) Plaintiff makes no allegation describing Seligman's active participation or control of Sterling, beyond reciting the following language from the 2017 prospectus issued in connection with Sterling's IPO:

> The Seligman family, through the family's trustee and the Bank's founder and the Company's [Sterling] Vice President, Scott Seligman, will have the ability to influence Company operations and control the outcome of matters submitted for shareholder approval and may have interests that differ from those of our other shareholders.
>
> . . . Seligman, the founder of the Bank, Vice President of the Company [Sterling] and consultant to the Bank's board of directors, represents the interests of the family and ***continues to serve in an advisory capacity to the Company and the Bank, including through attendance at board meetings and frequent consultation with senior management***. Therefore, Mr. Seligman will continue to have access and influence with respect to Company operations and the Seligman family trustee will continue to have effective

---

[4]     The predicate conduct for Plaintiff's Section 20(a) claim is that, during the Class Period, Sterling and the Officer Defendants allegedly made untrue statements of material fact in various public disclosures, which Plaintiff relied upon to purchase Sterling's stock (C ¶¶ 409-416) (Count I). The underlying conduct on which Plaintiff's Section 15 claim is predicated is that Sterling, the Underwriter Defendants, and others allegedly included misleading statements of material fact, or omitted material facts, from the Bank's Registration Statement and IPO Prospectus. (*See* C ¶¶ 452-461 (Count IV); ¶¶ 462-471 (Count V).)

control over the outcome of votes on all matters requiring approval by shareholders after the offering….

(C ¶ 382 (emphasis in original).)

Such conclusory allegations do not sufficiently state a claim for controlling person liability. First, it is fundamental that "titles and functions alone do not establish 'controlling person' status." *See Bomarko*, 848 F. Supp. at 1339 (directors of company, who also comprised audit committee, were not *per se* control persons). Here, Plaintiff pleads no facts showing that Seligman exercised any "actual control" over Sterling. While the 2017 prospectus states that "[t]he Seligman family, through the family's trustee and… Scott Seligman, will have *the ability to* influence Company operations and control the outcome of matters submitted for shareholder approval" (C ¶ 382 (emphasis added)), merely pleading *ability* to control "without any allegation that the person individually exerted control or influence over the day-to-day operations of the company, does not suffice to support an allegation that the person is a control person within the meaning of the Exchange Act." *Adams v. Kinder-Morgan, Inc.*, 340 F. 3d 1083, 1108 (10th Cir. 2003); *see also Bomarko*, 848 F. Supp. at 1340 (directors and members of audit committee were not control persons where it appeared the audit committee "played no significant role in the management of the corporation"); *Youngers v. Virtus Investment Partners, Inc.*, 195 F. Supp. 3d 499, 524-25 (S.D.N.Y 2016) ("The mere exercise of influence is not sufficient to establish control… [and] allegations of advice, feedback, and guidance fail to raise

8

a reasonable inference that defendants had the power to <u>direct</u>, rather than merely inform, the primary violator's ultimate structuring decisions" (emphasis original).[5] Thus, Plaintiff's bare allegation regarding Seligman's ability to influence Sterling's operations, without pleading any facts showing Seligman's actual involvement in the company's day-to-day operations that violated the securities laws, is insufficient to establish the first element of a control liability claim.

Second, Plaintiff does not plead any facts that establish that Seligman exercised any power to control the alleged misconduct (i.e. the contents of Sterling's Registration Statement, IPO Prospectus, and other public filings). In *USM Holdings*, the plaintiff sued former officers, directors, and shareholders of USM alleging that

---

[5]     While the 2017 prospectus indicates that the "Seligman family trustee" may have "effective control" over matters that are put to shareholder votes, Seligman is *not* the trustee of the Seligman family trusts holding a majority interest in Sterling. Rather, as Plaintiff pled in its Complaint: "Erwin A. Rubenstein, trustee to the Seligman family, holds sole voting and dispositive power over shares held by" the Seligman family trusts holding a majority interest in Sterling (C ¶ 380 n. 20), meaning that Rubenstein has "effective control" over the outcome of votes on matters requiring shareholder approval (C ¶ 382). As a matter of law, settlors and beneficiaries of a trust are legally distinct from its trustees. *See S.E.C. v. Wyly*, 56 F. Supp. 3d 394, 408 (S.D.N.Y. 2014) ("[A] grantor is not treated as owning the trust property when his beneficial enjoyment of the trust corpus or income is subject to the control of an independent trustee."); *Banks v. Northern Trust Corp.*, 929 F. 3d 1046, 1054 (9th Cir. 2019), *cert. denied* 140 S. Ct. 1243 (2020) (same). With respect to the Scott J. Seligman Revocable Living Trust, over which Seligman does act as trustee, the Eastern District of Michigan has made clear that "a minority stock interest, without more, is insufficient to base an allegation of control." *USM Holdings, Inc. v. Simon*, 2016 WL 4396061, *2 (E.D. Mich. 2016) (quoting *Picard*, 940 F. Supp. at 1136).

9

a merger agreement contained various misrepresentations and misleading omissions. *USM Holdings*, 2016 WL 4396061, at * 1. The plaintiff attempted to have directors and shareholders held liable as control persons for the conduct of USM's CEO and CFO by pleading that the control persons reviewed and approved the merger agreement, "supervised [the control persons] in connection with financial reporting generally and the transaction with Plaintiff specifically," received regular reports and updates from the CEO and CFO, provided the CEO and CFO with instructions and general direction, and had "ultimate authority at USM." *Id.,* at *13-14 (vague allegations of control required dismissal).

Plaintiff's allegations here fall short of the rejected "vague allegations" of control as pled in *USM Holdings*. Indeed, rather than pleading any facts connecting Seligman to the review, approval, or supervision of Sterling's Registration Statement, IPO Prospectus and other public filings, Plaintiff merely concludes that Seligman "had the power and influence to cause (and did cause) Sterling to engage in the conduct complained of" (C ¶ 40.) Such allegations, "largely legal conclusions cloaked as fact," are insufficient to state a claim for control person liability. *Id.*, at *14 (internal citation omitted). Moreover, by conditioning allegations of Seligman's purported control with "and/or" clauses, and grouping him together with all of the Officer Defendants, Plaintiff fails to allege what *Seligman* received, read, knew or

10

did in relation to any of the alleged misrepresentations or omissions. Instead, Plaintiff merely alleges:

> By virtue of their high-level positions, agency, and their ownership and contractual rights, participation in ***and/or*** awareness of Sterling's operations, ***and/or*** intimate knowledge of the false financial statements filed by Sterling with the SEC and disseminated to the investing public, ***the Officer Defendants and Scott Seligman*** had the power to influence and control, and did influence and control, directly or indirectly, the decision-making of Sterling, including the content and dissemination of the various statements that Lead Plaintiff contends are false and misleading. ***The Officer Defendants and Scott Seligman*** were provided with ***or*** had unlimited access to copies of Sterling's reports, press releases, public filings, and other statements alleged by Lead Plaintiff to have been misleading prior to ***and/or*** shortly after these statements were issued and had the ability to prevent the issuance of the statements or to cause the statements to be corrected.

(C ¶ 418 (emphasis added)). Courts routinely reject such "collective" and alternative pleading to avoid pleading the necessary allegations of fact with specificity. *USM Holdings*, 2016 WL 4396061, at *14 (noting that it was "insufficient as a matter of law" to plead that the controlling directors and shareholder *collectively* had the power of control); *Rich v. Maidstone Fin., Inc.*, 2001 WL 286757, at * 6 (S.D.N.Y. 2001) ("A complaint may not simply clump[] defendants together in vague allegations.") (internal citation omitted).

Finally, Counts II and VI must be dismissed because Plaintiff has failed to plead, even in conclusory fashion, any facts to support that Seligman "encouraged and permitted the issuance of statements [he] knew were false," thereby culpably participating in the fraud. *See Yadlosky*, 120 F. Supp. 2d at 631; *Bomarko*, 848 F.

11

Supp. at 1339 (defendants' "regular attendance at board meetings" was insufficient to establish "that they culpably participated in the issuance of false statements").

## II. The Complaint Fails to State a Section 20A Claim for Insider Trading Against Seligman.

Plaintiff fails to sufficiently plead a violation of Section 20A of the Exchange Act (Count III) against Seligman. Specifically, Plaintiff alleges that it "purchased at least one share of Sterling common stock contemporaneously with sales of Sterling common stock by defendant Scott Seligman" and alleges that, "contemporaneously with [Mr. Seligman's] sale of Sterling common stock," he possessed "material, adverse, non-public information about Sterling" merely "[b]y virtue of his position at Sterling and the specific facts alleged herein." (C ¶¶ 426, 427) Count III cannot proceed on such vague, conclusory, and sparse allegations.

Section 20A of the Exchange Act, sometimes referred to as the "insider trading" provision, states that:

> Any person who violates any provision of this chapter or the rules or regulations thereunder by purchasing or selling a security while in possession of material, nonpublic information shall be liable in an action in any court of competent jurisdiction to any person who, contemporaneously with the purchase or sale of securities that is the subject of such violation, has purchased (where such violation is based on a sale of securities) or sold (where such violation is based on a purchase of securities) securities of the same class.

15 U.S.C. § 78t-1(a). "[T]he contemporaneity requirement serves as a substitute for the traditional requirement that only those clearly ascertainable individuals who stand to be exploited by the insider trading . . . can be said to have individual interests

12

that are directly implicated by the insider trading for which they may seek direct redress." *In re MicroStrategy, Inc. Sec. Litig.*, 115 F. Supp. 2d 620, 662 (E.D. Va. 2000) (citing *Chanoff v. U.S. Surgical Corp.,* 857 F.Supp. 1011, 1021 (D. Conn.), *aff'd* 31 F.3d 66 (2d Cir. 1994)).

To state a claim for a violation of Section 20A, Plaintiff must allege (1) a predicate violation of the Exchange Act; (2) that the insider was in possession of material nonpublic information; and (3) that the plaintiff traded contemporaneously with the alleged insider. *In re Schering-Plough Corp./Enhance Sec. Litig.*, 2009 WL 2855457, at *3 (D. N.J. 2009). Section 20A claims "sound in fraud" and must be pled with particularity under Fed. R. Civ. P. 9(b). *See Picard Chem. Inc. Profit Sharing Plan v. Perrigo Co.*, 940 F. Supp. 1101, 1130 (W.D. Mich. 1996). "Generalized and conclusory allegations that the Defendants' conduct was fraudulent do not satisfy Rule 9(b)." *Bovee v. Coopers & Lybrand C.P.A.,* 272 F.3d 356, 361 (6th Cir. 2001). Count III relies solely on generalized and conclusory allegations and as such, Plaintiff fails to sufficiently plead any of the elements for a Section 20A violation.

## A.   *Seligman Did Not Sell Shares in Sterling Contemporaneously with a Purchase by Plaintiff.*

The Section 20A claim must be dismissed because Plaintiff concedes that Seligman did not sell shares in Sterling contemporaneously with Plaintiff purchasing shares in Sterling. Because the statute acts as a substitute for being in privity with an

13

insider, it requires that the plaintiff purchased a security while the insider contemporaneously sold a security, or vice versa. *See* 15 U.S.C. § 78t-1(a) (providing that an insider trader is liable to a person "that purchased (where such violation is based on a sale of securities) or sold (where such violation is based on a purchase of securities) securities of the same class").[6] Although the statute does not define the term "contemporaneously," the majority of federal courts have determined that Section 20A requires that the trades occur on the same day[7] or the next.[8]

Here, under Count III, Plaintiff complains about purchasing stock in Sterling "contemporaneously" with Seligman selling stock in Sterling. (*See* C ¶¶ 426-27.)

---

[6]     Although Plaintiff does complain of one of the Seligman family trusts selling Sterling stock on December 4, 2019, Plaintiff does not allege that it made a corresponding, contemporaneous *purchase* of Sterling stock.

[7]     *See, e.g., In re Fed. Nat'l Mortg. Ass'n Sec., Derivative, & "ERISA" Litig.*, 503 F. Supp. 2d 25, 47 (D. D.C. 2007) ("[T]he Court is satisfied that this same day standard strikes a fair and 'feasible' balance–'making it possible for . . . persons to bring suit' while 'preserv[ing] the notion that only plaintiffs who were harmed by the insider' have a claim. And, more specifically, its application makes eminent sense in this case.") (citations omitted); *In re MicroStrategy,* 115 F. Supp. 2d at 663 ("[T]he modern realities of the securities markets support an increasingly strict application of contemporaneity in order at once to satisfy the requirement's privity-substitute function and to guard against 'making the insider liable to all the world.'").

[8]     *See, e.g., Thomas v. Magnachip Semiconductor Corp.*, 167 F. Supp. 3d 1029, 1049 (N.D. Cal. 2016) (finding that a purchase of shares on the day after was sufficient); *In re Countrywide Fin. Corp. Sec. Litig.*, 588 F. Supp. 2d 1132, 1204-05 (C.D. Cal. 2008) (trading on the same-day or the day after is "contemporaneous").

ClarkHill\27472\410667\260866101.v1-9/22/20

Plaintiff claims to have purchased Sterling stock on November 17, 2017, November 21, 2017, and October 22, 2019. (*See id.* at Ex. A.) However, the only purchase within a day or two of any sales of Sterling stock occurred on November 21, 2017. Although unspecified in the Complaint, Sterling's public filings identify the following relevant sales of Sterling Stock near the IPO:

| Date of Sale: | Seller: | Amount of Sterling Stock Sold: |
|---|---|---|
| 11/21/2017 | K.I.S.S. Dynasty Trust No. 5 | 1,543,459 |
| 11/21/2017 | K.I.S.S. Dynasty Trust No. 9 | 2,571,513 |
| 11/21/2017 | Scott J. Seligman Revocable Living Trust | 758,929 |
| 11/21/2017 | Scott J. Seligman 1993 Long Term Irrevocable Dynasty Trust | 1,180,845 |

Attached as Exhibits 1-A, 1-B, 1-C, and 1-D are the publicly recorded SEC Form 4s showing the above transactions.

The vast majority of the challenged sales were made by several trusts which, although bearing Seligman's name (as he was the settlor of these trusts), are separate legal entities.[9] All but one trust are irrevocable trusts for which Seligman does not act as trustee. (*See* C ¶ 379, 380, 380 n. 20.) Moreover, the Seligman family trusts traded in Sterling stock in connection with an IPO. "[It] is not uncommon or otherwise suspicious to sell stock in association with a public offering; indeed, the

---

[9]     *See generally Sumpter v. United States*, 302 F. Supp. 2d 707, 722 (E.D. Mich. 2004) (in considering a tax dispute, finding that trust created by taxpayers for benefit of their children was legal entity separate and apart from taxpayers, rather than nominee or alter ego of settlor, for purposes of determining whether United States could enforce tax lien against real estate held by trust); *see also supra* at n. 3.

sale of stock is often the point of the offering." *See In re AFC Enters. Sec. Litig.*, 348 F. Supp. 2d 1363, 1373 (N.D. Ga. 2004), *aff'd sub nom., Exec. Risk Indem., Inc. v. AFC Enters.*, 279 F. App'x 793 (11th Cir. 2008).

In addition to the other pleading deficiencies facing the Section 20A claim discussed above, Plaintiff cannot assert such a claim against an individual that did not trade in Sterling stock. Accordingly, the Court should dismiss Count III (Violation of Section 20A) against Seligman with prejudice.

### B. *Plaintiff Fails to Plead a Predicate Violation of the Exchange Act.*

"Section 20A, which provides an express private cause of action for insider trading against contemporaneous traders, requires the alleged insider trader to have committed an independent violation of the Exchange Act or SEC rules and regulations promulgated under that law." *City of Edinburgh Council v. Pfizer, Inc.*, 754 F.3d 159, 175 (3d Cir. 2014). Here, Plaintiff alleges in Count II that Seligman violated Section 20(a) of the Exchange Act, which assigns liability vicariously to "controlling persons." However, as explained above, Plaintiff has failed to sufficiently plead that Seligman is a "controlling person" as a matter of law. Plaintiff's failure to plead a predicate violation of the Exchange Act requires the Court to dismiss Count III. *See City of Omaha Police & Fire Ret. Sys. v. Evoqua Water Techs. Corp.*, 2020 WL 1529371, at *33 (S.D.N.Y. 2020).

16

**C.** *Plaintiff Does Not Plead Particularized Facts that Seligman Possessed Material Nonpublic Information about Sterling.*

Nowhere in the Complaint does Plaintiff identify – with any specificity – what material nonpublic information Seligman possessed when certain family trusts sold shares in connection with Sterling's IPO. Instead, Plaintiff asserts one vague, conclusory allegation that "[b]y virtue of his position at Sterling and the specific facts alleged herein, Scott Seligman was in possession of material, adverse, non-public information about Sterling contemporaneously with his sale of Sterling common stock." (C ¶ 427.) Such conclusory pleading is insufficient.

To assert a claim for violation of Section 20A of the Exchange Act, Plaintiff must plead specific facts that Seligman possessed material nonpublic information at the time of the challenged trades. *See In re 3Com Corp.*, 1999 WL 1039715, at \*8 (N.D. Cal. 1999) (dismissing Section 20A claim where "complaint allege[d] only that the individual defendants had the 'material adverse non-public information . . . complained of herein when they sold their shares of stock'" as "too conclusory" because plaintiffs "ha[d] not sufficiently pled with particularity non-public material information that the individual defendants possessed at the time they made their sales"); *In re Take-Two Interactive Sec. Litig.*, 551 F. Supp. 2d 247, 311 (S.D. N.Y. 2008) (dismissing Section 20A claims against trading insiders for failure to plead knowing possession where only non-conclusory allegations related to other defendants). Plaintiff simply fails to meet this standard.

17

In short, Plaintiff must identify *what* material nonpublic information Seligman possessed. *See In re Enron Corp.*, 2016 WL 4095973, at \*29 (S.D. Tex. 2016) ("Moreover Plaintiffs fail to allege fact[s] as to when and what [defendants] allegedly 'knew'; thus, it is impossible to determine whether any information remained nonpublic or material[.]"). This is particularly true under the PSLRA's and Rule 9(b)'s heightened pleading standards that are designed to prevent a plaintiff from unlocking the doors of discovery on a complaint that fails to give fair notice of the insider information that the defendant allegedly possessed. *See generally* H.R. Conf. Rep. No. 104-369, 37, reprinted in 1995 U.S.C.C.A.N. 730, 736 (observing, before passing the PSLRA, that "[t]he cost of discovery often forces innocent parties to settle frivolous securities class actions").

Here, Plaintiff fails to plead specific allegations of contemporaneous facts or information showing that Seligman knew any adverse, material nonpublic information. Rather, Plaintiff merely claims that Seligman must have possessed some material, adverse, non-public information about Sterling merely "[b]y virtue of his position at Sterling and the specific facts alleged." (C ¶ 427) Plaintiff cannot leave Seligman and the Court guessing as to what information Seligman allegedly knew, how he knew it, and whether he knew the information at the time of the challenged trade. *See Berger, v. Ludwick*, 2000 WL 1262646, at \*10 (N.D. Cal. 2000) (dismissing Section 20A claims where plaintiffs merely alleged that the

defendants "had unlimited access to material non-public information" about a company "because of their positions," and thus "knew the adverse, non-public information about [the company's] business, finances, products, markets and present and future business prospects"); *In re Oak Technology Securities Litigation*, 1997 WL 448168, at *12 (N.D. Cal. 1997) (explaining that by "fail[ing] to specify what material information [the defendants] possessed" when they traded, the complaint fell short of Rule 9(b)'s and the PSLRA's requirements). Accordingly, Plaintiff's deficient pleading requires the Court to dismiss Count III as well.

## <u>CONCLUSION</u>

For the reasons set forth above, Defendant Scott Seligman respectfully requests that the Court grant his Motion to Dismiss with prejudice and grant such other relief as the Court deems appropriate.

ClarkHill\27472\410667\260866101.v1-9/22/20

Respectfully submitted,

SCOTT SELIGMAN, Defendant

CLARK HILL PLC

s/*Daniel T. Graham*

Russell D. Duncan
Alexander R. Green
1001 Pennsylvania Avenue NW
#1300
Washington, DC 20004
(t) 202-772-0909
(f) 202-772-0919
rduncan@clarkhill.com
(Admission requests being sought)

And

Daniel T. Graham (admitted)
Giel Stein (admitted)
Maureen J. Moody (admitted)
130 E. Randolph St.
Suite 3900
Chicago, IL 60601
(t) 312-0985-5900
(f) 312-985-5999
dgraham@clarkhill.com

*Attorneys for Scott Seligman*

20

## CERTIFICATE OF SERVICE

Alyssa Theisen states that on September 22, 2020, she caused to be served the foregoing document and this Certificate of Service via the court's electronic filing system which will send notification of such filing to all attorneys on record.

I declare that the above statement is true to the best of my knowledge, information and belief.


By: s/Alyssa Theisen
Alyssa Theisen

Dated:  September 22, 2020

21