# EXHIBIT J



Office of the
Comptroller of the Currency

**Policies and
Procedures Manual**

**PPM 5310-3**

Section:  **Bank Supervision**

Subject:  **Bank Enforcement Actions
and Related Matters**

**To:** Deputy Comptrollers, Department and Division Heads, District Counsel, and All
Examining Personnel

**Purpose and Scope**

This *Policies and Procedures Manual* (PPM) issuance revises PPM 5310-3, "Bank Enforcement
Actions and Related Matters," dated October 31, 2017, which establishes general policies and
procedures for Office of the Comptroller of the Currency (OCC) staff when the OCC takes
enforcement actions against banks in response to violations of laws, regulations, final agency
orders, conditions imposed in writing, or written agreements (collectively, violations), or
deficient practices, including those that are unsafe or unsound. This PPM provides guidance in
selecting the actions best suited to resolve a bank's deficiencies and promotes consistency while
preserving flexibility for individual circumstances.

This PPM applies to the supervision of all banks examined by the OCC. National banks, federal
savings associations, and federal branches and agencies are collectively referred to as "banks"
in this PPM. When necessary, types of banks are specifically distinguished or excepted.[1]

This PPM does not address enforcement actions against institution-affiliated parties or other
individuals, civil money penalty (CMP) actions, or actions to enforce securities laws and
regulations.[2] This PPM also does not address conditions imposed in writing or operating
agreements issued in the context of a bank's licensing filing.[3]

This PPM provides internal OCC guidance and does not create substantive or procedural rights
enforceable at law or in any administrative proceeding. This PPM also does not supersede or
limit the applicability of any other OCC policy that may provide more explicit guidance or

---

[1] The principles in this PPM may be considered in taking an enforcement action against a third-party service
provider. Examiners should consult with the appropriate OCC legal staff in the appropriate District Counsel's
office or the Enforcement and Compliance Division on these matters.

[2] Refer to PPM 5310-13, "Institution-Affiliated Party Enforcement Actions and Related Matters"; PPM 5310-8,
"Fast Track Enforcement Program"; PPM 5000-7, "Civil Money Penalties"; and PPM 5310-5, "Securities
Activities Enforcement Policy."

[3] For the purposes of this PPM, a "licensing filing" means an application, notice, or other request submitted to the
OCC under 12 CFR 5.

---

establish supplemental procedures applicable to bank enforcement actions or treatment of supervisory or licensing issues arising from the various specialty areas (for example, consumer protection, Bank Secrecy Act (BSA)/anti-money laundering (AML), asset management, or information technology).

## Contents

| | | |
|---|---|---|
| **I.** | **Introduction** | **3** |
| **II.** | **Types of Bank Enforcement Actions** | **4** |
| | Informal Bank Enforcement Actions | 4 |
| | Formal Bank Enforcement Actions | 5 |
| **III.** | **Determining the Appropriate Supervisory or Enforcement Response** | **6** |
| | 1- and 2-Rated Banks | 7 |
| | 3-Rated Banks | 7 |
| | 4- and 5-Rated Banks | 8 |
| | Resolution | 8 |
| **IV.** | **Decision Authority and OCC Legal Staff Responsibilities** | **8** |
| | Supervision Review Committees | 8 |
| | OCC Legal Staff Responsibilities | 9 |
| **V.** | **Formal Investigations** | **9** |
| **VI.** | **Content of Bank Enforcement Actions** | **10** |
| **VII.** | **Timeliness of Bank Enforcement Actions** | **11** |
| **VIII.** | **Follow-Up Activities** | **11** |
| **IX.** | **Assessing Compliance With Bank Enforcement Actions** | **12** |
| **X.** | **Communicating Bank Enforcement Action Compliance** | **13** |
| | Bank Submissions and Requests | 13 |
| **XI.** | **Terminating a Bank Enforcement Action** | **14** |
| **XII.** | **Documentation in OCC Supervisory Information Systems** | **15** |
| **XIII.** | **Public Disclosure of Bank Enforcement Actions** | **16** |
| | Disclosures by Banks | 16 |

**Appendix A: Informal Enforcement Actions Against Banks** ..................................................**18**
**Appendix B: Formal Enforcement Actions Against Banks** ......................................................**20**
**Appendix C: Bank Enforcement Action Processes and Time Frames** ....................................**25**
**Appendix D: Mandatory and Discretionary Provisions Under PCA** ......................................**28**
**Appendix E: Resolution** .............................................................................................................**29**
**Appendix F: Compliance With Enforcement Actions Page Template** ....................................**31**
**Appendix G: Sample Write-Ups for Compliance With Enforcement Actions Section**
  **of a Formal Written Communication** ...........................................................................**33**
**Appendix H: Abbreviations** .......................................................................................................**35**
**Appendix I: References** ..............................................................................................................**36**

## I.  Introduction

The OCC uses enforcement actions against banks to require a bank's board of directors (board)[4] and management to take timely actions to correct a bank's deficient practices[5] or violations (collectively, deficiencies). Enforcement actions against banks are more severe than matters requiring attention (MRA). Violations, concerns in MRAs, or unsafe or unsound practices *may* serve as the basis for an enforcement action against a bank.

Deficient practices are practices or lack of practices that[6]

- deviate from sound governance, internal control, or risk management principles and have the potential to adversely affect the bank's condition, including financial performance or risk profile, if not addressed, or
- result in substantive noncompliance with laws or regulations, enforcement actions, or conditions imposed in writing in connection with the approval of any applications or other requests by banks.

Clear communication between the OCC and a bank's board and management is critical. The OCC uses formal written communications, including reports of examination (ROE) and supervisory letters, to document and communicate the OCC's findings and conclusions from its supervisory review of a bank. Formal written communications may contain concerns in MRAs or citations of violations requiring corrective action. The actions that the board and management take or agree to take in response to violations and concerns in MRAs are factors in the OCC's decision to pursue a bank enforcement action and the severity of that action. In some cases, it may be appropriate for the OCC to pursue an enforcement action against a bank before the issuance of an examination's formal written communication to require correction of significant deficiencies as quickly as possible.

A bank's board and management must correct deficiencies in a timely manner. The OCC expects a bank's board to ensure compliance with bank enforcement actions within required time frames by

- holding management accountable for the bank's deficiencies.
- directing management to develop and implement corrective actions.
- approving necessary changes to the bank's policies, processes, procedures, and controls.
- establishing processes to monitor progress and verify and validate the effectiveness of management's corrective actions.

The OCC's policy is to identify deficient practices and violations in a timely manner and initiate bank enforcement actions to require corrective action well before deficiencies affect a bank's

---

[4] In the case of federal branches and agencies, the use of "board of directors and management" refers to federal branch or agency management.

[5] Practices include a bank's policies, procedures, processes, and controls.

[6] Refer to the "Bank Supervision Process" booklet of the *Comptroller's Handbook*.

financial condition or viability. The OCC's short- and long-term strategy for a bank with deficiencies is an important factor in determining the type of bank enforcement action(s) to use. The strategy considers the immediate actions needed to address the bank's deficiencies and what actions might be needed in the future if the deficiencies develop into more serious concerns (for example, deficiencies threatening the bank's viability). Although the primary objective of bank enforcement actions is remediation of a bank's deficiencies, bank enforcement actions also can enhance the OCC's position for timely and orderly resolution or receivership to protect the Deposit Insurance Fund. The documentation of bank enforcement actions, a bank's failure to comply with those actions, and the consequences of that failure are important components of the supervisory record to support more severe subsequent bank enforcement actions when necessary.

## II.      Types of Bank Enforcement Actions

Enforcement actions against banks can be either formal or informal. Enforcement actions against banks do not include restrictions imposed by the OCC in response to a bank's licensing filing or by operation of law (for example, mandatory restrictions pursuant to prompt corrective action (PCA) or consequences of being in "troubled condition" under 12 CFR 5).

### Informal Bank Enforcement Actions

The OCC typically first cites a violation or documents a concern in an MRA in a formal written communication to address a bank's deficiencies.[7] Examiners should consider an informal bank enforcement action when a bank's condition is sound but deficiencies have not been corrected in a timely manner or escalation beyond the OCC's citation of a violation or documentation of a concern in an MRA is otherwise warranted. The board's agreement or acceptance of an informal bank enforcement action can be indicative of its commitment to correct identified deficiencies before they adversely affect the bank's condition. Informal bank enforcement actions are typically not published or made available to the public.

Informal bank enforcement actions include

- all nonpublic bank enforcement actions:
    - Commitment letters.
    - Memorandums of understanding (MOU).
    - Individual minimum capital ratios (IMCR).
    - Notices of deficiency issued under 12 CFR 30.
- operating agreements.[8]

---

[7] Refer to the "Bank Supervision Process" booklet of the *Comptroller's Handbook* for more information.

[8] An operating agreement is a "written agreement" within the meaning of 12 USC 1818, which means that it is enforceable under 12 USC 1818. Only those operating agreements that do not relate to a bank's licensing filing are bank enforcement actions. Operating agreements that are associated with or result from a bank's licensing filing, while enforceable under 12 USC 1818, are not, however, bank enforcement actions for the purposes of this PPM.