## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| OKLAHOMA POLICE PENSION AND RETIREMENT SYSTEM, Individually and on Behalf of All Others Similarly Situated,<br><br>    Plaintiff,<br><br>v.<br><br>STERLING BANCORP, INC.; GARY JUDD; THOMAS LOPP; MICHAEL MONTEMAYOR; SCOTT SELIGMAN; BARRY ALLEN; JON FOX; SETH MELTZER; SANDRA SELIGMAN; PETER SINATRA; BENJAMIN WINEMAN; LYLE WOLBERG; PIPER SANDLER COMPANIES; AND AMERICAN CAPITAL PARTNERS, LLC,<br><br>    Defendants. | Case 5:20-cv-10490-JEL-EAS<br><br>Hon. Judith E. Levy<br>Hon. Mag. Judge Elizabeth A. Stafford<br><br>**CLASS ACTION** |

## LEAD PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT

Court-appointed Lead Plaintiff Oklahoma Police Pension and Retirement System, through its undersigned counsel, respectfully moves for: (a) preliminary approval of the terms of the Settlement,[1] including the Plan of Allocation and Claim Form; (b) certification of a Settlement Class for purposes of implementing the proposed Settlement; (c) appointment of Lead Plaintiff as Class Representative; (d) appointment of Interim Lead Counsel as Lead Counsel and Class Counsel; (e) approval of the Notice of the proposed Settlement to be mailed to Settlement Class Members and the notice of the proposed settlement to be published ("Summary Notice"); (f) approval of A.B. Data as the Claims Administrator; and (g) entry of the [Proposed] Order Preliminarily Approving Settlement and Providing for Notice ("Preliminary Approval Order"), submitted herewith, setting a Final Approval Hearing and directing the giving of Notice.  Defendants do not oppose Plaintiff's request for entry of the Preliminary Approval Order.  In support, Lead Plaintiff relies upon the accompanying memorandum of law, declaration and exhibits, and such other and further material as the Court may request and consider.

///

///

---

[1] All defined terms not otherwise defined herein shall have the same meaning as set forth in the Stipulation of Settlement, dated April 16, 2021 (the "Stipulation"), and attachments thereto, filed herewith.

Dated:  April 16, 2021                      Respectfully submitted,


                                            */s/ Kristin J. Moody*
                                            Kristin J. Moody
                                            **BERMAN TABACCO**
                                            44 Montgomery Street, Suite 650
                                            San Francisco, CA  94104
                                            Telephone: (415) 433-3200
                                            Facsimile: (415) 433-6382
                                            Email: kmoody@bermantabacco.com

                                               -and-

                                            Patrick T. Egan
                                            **BERMAN TABACCO**
                                            One Liberty Square
                                            Boston, MA 02109
                                            Telephone: (617) 542-8300
                                            Facsimile: (617) 542-1194
                                            Email: pegan@bermantabacco.com

                                            *Counsel for Lead Plaintiff Oklahoma Police*
                                            *Pension and Retirement System and Interim*
                                            *Lead Counsel for the Putative Class*

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| OKLAHOMA POLICE PENSION AND RETIREMENT SYSTEM, Individually and on Behalf of All Others Similarly Situated, | Case 5:20-cv-10490-JEL-EAS |
| Plaintiff, | |
| v. | |
| STERLING BANCORP, INC.; GARY JUDD; THOMAS LOPP; MICHAEL MONTEMAYOR; SCOTT SELIGMAN; BARRY ALLEN; JON FOX; SETH MELTZER; SANDRA SELIGMAN; PETER SINATRA; BENJAMIN WINEMAN; LYLE WOLBERG; PIPER SANDLER COMPANIES; AND AMERICAN CAPITAL PARTNERS, LLC, | |
| Defendants. | |

## MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF <u>PROPOSED CLASS ACTION SETTLEMENT</u>

# **TABLE OF CONTENTS**

**Page**

I.     PRELIMINARY STATEMENT ...................................................1

II.    FACTUAL BACKGROUND.......................................................3

    A.     Procedural History .......................................................3

    B.     Mediation and Proposed Settlement ....................................6

III.   THE SETTLEMENT MERITS PRELIMINARY APPROVAL...................7

    A.     Standards Governing Approval Of A Class Action Settlement .........7

    B.     The Court Should Preliminarily Approve The Proposed Settlement
          Under Rule 23(e)(2)............................................................10

        1.     The Settlement Agreement Resulted from Arm's Length-
              Negotiations And Is Not The Product Of Collusion.................10

        2.     The Settlement's Terms Will Likely Be Found Adequate .......13

             a.     The Settlement Has No Obvious Deficiencies And Falls
                  Within The Range For Approval .................................14

             b.     The Proposed Settlement Does Not Unjustly Favor Any
                  Settlement Class Members...........................................17

        3.     The Anticipated Request For Attorneys' Fees Is Reasonable ..18

        4.     There Are No Side Agreements Other Than Opt Outs.............19

    C.     The Claims Administrator Should Be Approved .............................20

IV.    CERTIFICATION OF THE SETTLEMENT CLASS IS WARRANTED.20

    A.     The Settlement Class Satisfies the Requirements of Rule 23(a).......21

        1.     Settlement Class Members Are Too Numerous To Be Joined.21

        2.     There Are Common Questions of Law and Fact .....................22

        3.     Lead Plaintiff's Claims Are Typical Of The Settlement Class 24

4.    Lead Plaintiff and Interim Lead Counsel Will Fairly and Adequately Protect The Interests Of The Settlement Class ...... 25

B.    The Settlement Class Satisfies The Requirements Of Rule 23(b)(3) 28

1.    Common Legal And Factual Questions Predominate ............. 28

2.    A Class Action Is Superior To Other Methods Of Adjudication ................................................................................... 29

V.    NOTICE TO THE SETTLEMENT CLASS SHOULD BE APPROVED .. 30

VI.    PROPOSED SCHEDULE OF SETTLEMENT-RELATED EVENTS ...... 33

VII.    CONCLUSION ............................................................................ 34

# TABLE OF AUTHORITIES

**Cases**

*Amchem Prod., Inc. v. Windsor*,
  521 U.S. 591 (1997) ................................................................................ 28, 29, 30

*Arledge v. Domino's Pizza, Inc.*,
  No. 3:16-CV-386-WHR, 2018 WL 5023950 (S.D. Ohio Oct. 17, 2018) ...........11

*Bd. of Trs. of City of Birmingham Emps.' Ret. Sys. v. Comerica Bank*,
  No. 09-CV-13201, 2013 WL 12239522 (E.D. Mich. Dec. 27, 2013) .................19

*Beattie v. CenturyTel, Inc.*,
  511 F.3d 554 (6th Cir. 2007) ................................................................................24

*Castillo v. Envoy Corp.*,
  206 F.R.D. 464 (M.D. Tenn. 2002) ......................................................................30

*Cates v. Cooper Tire & Rubber Co.*,
  253 F.R.D. 422 (N.D. Ohio 2008) ........................................................................25

*Chavarria v. N.Y. Airport Serv., LLC*,
  875 F. Supp. 2d 164 (E.D.N.Y. 2012) ..................................................................14

*Dallas v. Alcatel-Lucent USA, Inc.*,
  No. 09-14596, 2013 WL 2197624 (E.D. Mich. May 20, 2013) .............................7

*Doe v. Deja Vu Servs., Inc.*,
  No. 2:16-CV-10877, 2017 WL 490157 (E.D. Mich. Feb. 7, 2017) ......................7

*Dudenhoeffer v. Fifth Third Bancorp*,
  No. 1:08-CV-538-SSB, 2016 WL 9343955 (S.D. Ohio July 11, 2016) ...............33

*Fidel v. Farley*,
  534 F.3d 508 (6th Cir. 2008) ................................................................................32

*Granada Invs., Inc. v. DWG Corp.*,
  962 F.2d 1203 (6th Cir. 1992) ................................................................................9

*Griffin v. Flagstar Bancorp, Inc.*,
  No. 2:10-CV-10610, 2013 WL 6511860 (E.D. Mich. Dec. 12, 2013) ................17

*In re Canadian Super. Sec. Litig.*,
No. 09 Civ. 10087 SAS, 2011 WL 5830110 (S.D.N.Y. Nov. 16, 2011) .............12

*In re Caraco Pharm. Labs., Ltd. Sec. Litig.*,
No. 2:09-CV-12830-AJT, 2013 WL 3213328 (E.D. Mich. June 26, 2013).........19

*In re Cardizem CD Antitrust Litig.*,
218 F.R.D. 508 (E.D. Mich. 2003) .................................................................8, 18

*In re Delphi Corp. Sec., Derivative & "ERISA" Litig.*,
248 F.R.D. 483 (E.D. Mich. 2008) .................................................... 14, 15, 16, 26

*In re Flint Water Cases*,
No. 5:16-CV-10444-JEL-MKM, 2021 WL 211465 (E.D. Mich. Jan. 21,
2021) ........................................................................................................... 22, 24

*In re Packaged Ice Antitrust Litig.*,
No. 08-MDL-01952, 2011 WL 6209188 (E.D. Mich. Dec. 13, 2011)................18

*In re Quorum Health Corp.*,
No. 19-0505, 2019 WL 3949704 (6th Cir. July 31, 2019) ...................................21

*In re Sulzer Hip Prosthesis & Knee Prosthesis Liab. Litig.*,
No. 1:01-CV-9000, 2001 WL 1842315 (N.D. Ohio Oct. 20, 2001) .....................9

*In re: Auto. Parts Antitrust Litig.*,
No. 12-MD-02311, 2016 WL 8201483 (E.D. Mich. Dec. 28, 2016) .......................31

*Int'l Union, United Auto., Aerospace, & Agric. Implement Workers of Am. v.
Gen. Motors Corp.*,
497 F.3d 615 (6th Cir. 2007)..........................................................................8, 14

*IUE-CWA v. Gen. Motors Corp.*,
238 F.R.D. 583 (E.D. Mich. 2006) ........................................................................9

*Jenkins v. Macatawa Bank Corp.*,
No. 1:03-CV-321, 2006 WL 3253305 (W.D. Mich. Nov. 9, 2006) ....................22

*Kasper v. AAC Holdings, Inc.*,
No. 15-CV-00923-JPM-JSF, 2017 WL 3008510 (M.D. Tenn. July 14, 2017)....28

*Mullane v. Cent. Hanover Bank & Tr. Co.*,
339 U.S. 306 (1950) ............................................................................................31

*N.Y. State Teachers' Ret. Sys. v. Gen. Motors Co.*,
  315 F.R.D. 226 (E.D. Mich. 2016), *aff'd sub nom. Marro v. N.Y. State
  Teachers' Ret. Sys.*, No. 16-1821, 2017 WL 6398014 (6th Cir. Nov. 27,
  2017) ...................................................................................................................11

*Palazzolo v. Fiat Chrysler Autos. N.V.*,
  No. 4:16-CV-12803-LVP-SDD, 2019 WL 2957143 (E.D. Mich. June 5,
  2019) ...................................................................................................................19

*Randleman v. Fid. Nat'l Title Ins. Co.*,
  646 F.3d 347 (6th Cir. 2011) ...............................................................................28

*Ross v. Abercrombie & Fitch Co.*,
  257 F.R.D. 435 (S.D. Ohio 2009) ................................................................. 21, 23

*Sheick v. Auto. Component Carrier, LLC*,
  No. 09-14429, 2010 WL 3070130 (E.D. Mich. Aug. 2, 2010) ............................7

*Sprague v. Gen. Motors Corp.*,
  133 F.3d 388 (6th Cir. 1998) ........................................................................ 22, 24

*Swigart v. Fifth Third Bank*,
  288 F.R.D. 177 (S.D. Ohio 2012) ........................................................................26

*Tenn. Ass'n of Health Maint. Orgs., Inc. v. Grier*,
  262 F.3d 559 (6th Cir. 2001) ................................................................................7

*Thomas v. FTS USA, LLC*,
  312 F.R.D. 407 (E.D. Va. 2016) ..........................................................................29

*UAW v. Gen. Motors Corp.*,
  No. 05-CV-73991-DT, 2006 WL 891151 (E.D. Mich. Mar. 31, 2006) ..............11

*Wilkof v. Caraco Pharm. Labs., Ltd.*,
  280 F.R.D. 332 (E.D. Mich. 2012) ........................................................... 22, 25, 26

*Williams v. Vukovich*,
  720 F.2d 909 (6th Cir. 1983) ..............................................................................11

*Zimmerman v. Diplomat Pharmacy, Inc.*,
  No. 2:16-CV-14005-AC-SDD, 2019 WL 3942483 (E.D. Mich. Aug. 20,
  2019 ....................................................................................................................18

**Statutes**

15 U.S.C. §77z-1(a)(3)(B) ...................................................................3

15 U.S.C. §78u-4(a)(3)(B) ..................................................................3

Exchange Act § 10(b) ....................................................................4, 23

Exchange Act § 20(a)....................................................................4, 23

Exchange Act § 20A .....................................................................4, 23

Exchange Act § 21D(a)(3)(B).............................................................3

Securities Act § 11 ........................................................................4, 23

Securities Act § 12(a)(2)...............................................................4, 23

Securities Act § 15 ........................................................................4, 23

Securities Act § 27D(a)(3)(B).............................................................3

**Other Authorities**

L.T. Bulan, L.E. Simmons, *Securities Class Action Settlements, 2019 Review and Analysis*, Cornerstone Research (2020) .......................................15

**Rules**

Fed. R. Civ. P. 23(a)................................................................... 21, 28

Fed. R. Civ. P. 23(a)(1)....................................................................21

Fed. R. Civ. P. 23(a)(2)....................................................................22

Fed. R. Civ. P. 23(a)(3)....................................................................24

Fed. R. Civ. P. 23(a)(4)....................................................................25

Fed. R. Civ. P. 23(b) ........................................................................21

Fed. R. Civ. P. 23(b)(3)................................................... 21, 28, 29, 30

Fed. R. Civ. P. 23(c)(2)(B) ...............................................................31

Fed. R. Civ. P. 23(e)...................................................................... 3, 7, 8, 20

Fed. R. Civ. P. 23(e)(1)................................................................... 21, 30

Fed. R. Civ. P. 23(e)(1)(B).................................................................8, 30

Fed. R. Civ. P. 23(e)(1)(B)(ii).................................................................21

Fed. R. Civ. P. 23(e)(2)................................................................ 8, 9, 10

Fed. R. Civ. P. 23(e)(2)(A).....................................................................10

Fed. R. Civ. P. 23(e)(2)(B).....................................................................10

Fed. R. Civ. P. 23(e)(2)(C).....................................................................13

Fed. R. Civ. P. 23(e)(2)(C)(ii)................................................................17

Fed. R. Civ. P. 23(e)(2)(C)(iii)..............................................................18

Fed. R. Civ. P. 23(e)(2)(C)(iv)..............................................................19

Fed. R. Civ. P. 23(e)(2)(D).....................................................................13

Fed. R. Civ. P. 23(e)(3)...........................................................................8

Fed. R. Civ. P. 23(g)(1)(A).....................................................................27

Fed. R. Civ. P. 23(g)(1)(B......................................................................27

Fed. R. Civ. P. 23(g)(4)...........................................................................25

## STATEMENT OF ISSUES PRESENTED

1.    Whether the proposed Settlement of this action is within the range of fairness, reasonableness, and adequacy so as to warrant: (a) the Court's preliminary approval; (b) the dissemination of Notice[1] of its terms to proposed Settlement Class Members; and (c) setting a hearing date for final approval of the Settlement as well as an application for attorneys' fees and reimbursement of expenses.

2.    Whether the proposed Settlement Class should be certified for settlement purposes only, Lead Plaintiff appointed as class representative, and Interim Lead Counsel appointed as Lead Counsel and Class Counsel for the Settlement Class.

3.    Whether the proposed Notice adequately apprises Settlement Class Members about the terms of the Settlement and their rights with respect to it.

4.    Whether A.B. Data should be approved as claims administrator.

5.    Whether the Court should set a hearing date for Lead Plaintiff's motion for final approval of the Settlement and Plan of Allocation and Interim Lead Counsel's application for an award of attorneys' fees and expenses.

---

[1] All capitalized terms not defined herein have the meanings ascribed to them in the Stipulation of Settlement, dated April 16, 2021 (the "Stipulation"), and attachments thereto, filed herewith.  Unless otherwise indicated, all emphasis has been added and all internal citations and footnotes have been omitted.

## **CONTROLLING OR MOST APPROPRIATE AUTHORITIES**

### **Rules**

Fed. R. Civ. P. 23

### **Cases**

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997)

*Dallas v. Alcatel-Lucent USA, Inc.*, No. 09-14596, 2013 WL 2197624 (E.D. Mich. May 20, 2013)

*Doe v. Deja Vu Servs., Inc.*, No. 2:16-CV-10877, 2017 WL 490157 (E.D. Mich. Feb. 7, 2017)

*In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508 (E.D. Mich. 2003)

*Int'l Union, United Auto., Aerospace, & Agric. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615 (6th Cir. 2007)

*IUE-CWA v. Gen. Motors Corp.*, 238 F.R.D. 583 (E.D. Mich. 2006)

*Wilkof v. Caraco Pharm. Labs., Ltd.*, 280 F.R.D. 332 (E.D. Mich. 2012)

Lead Plaintiff, Oklahoma Police Pension and Retirement System ("OPPRS"), on behalf of itself and the proposed Settlement Class (hereinafter, "Lead Plaintiff" or "Class Representative"), respectfully submits this Memorandum in Support of its Motion for Preliminary Approval of Proposed Class Action Settlement.[2]

## I.   PRELIMINARY STATEMENT

Lead Plaintiff seeks preliminary approval of the proposed Settlement, providing for a $12,500,000 payment to the proposed Settlement Class[3] in consideration for resolving all claims alleged in the above-captioned Action. A copy of the Stipulation is attached as Exhibit 1 to the Declaration of Kristin J.

---

[2] All capitalized terms not defined herein have the meanings ascribed to them in the Stipulation. Unless otherwise indicated, all emphasis has been added and all internal citations and footnotes have been omitted.

[3] The proposed Settlement Class is defined in the Stipulation at ¶ 1.39. as:

> [A]ll those who purchased or otherwise acquired Sterling Bancorp, Inc. (SBT) common stock, from November 17, 2017 through and including March 17, 2020, including shares sold in the initial public offering that commenced on November 17, 2017, and were damaged as a result. Excluded from the Settlement Class are Defendants herein; members of the immediate family of each of the Defendants; any person, firm, trust, corporation, officer, director, or other individual or entity in which any Defendant has a controlling interest or which is related to or affiliated with any of the Defendants, including trusts associated with members of the Founding Family and the selling shareholders; and the legal representatives, agents, affiliates, heirs, successors-in-interest, or assigns of any such excluded party. Also excluded from the Settlement Class are any persons and entities that exclude themselves by submitting a request for exclusion that is accepted by the Court.

Moody ("Moody Declaration"), filed herewith.  The proposed settlement is an excellent recovery for the Class, obtained only after hard-fought litigation among sophisticated parties and experienced counsel, and a lengthy, arm's length, mediation overseen by Hon. Gerald E. Rosen (ret.) of JAMS, Inc.

Lead Plaintiff seeks: (a) preliminary approval of the terms of the Settlement, including the Plan of Allocation and Claim Form; (b) certification of a Settlement Class for purposes of implementing the proposed Settlement; (c) appointment of Lead Plaintiff as Class Representative; (d) appointment of Interim Lead Counsel as Lead Counsel and Class Counsel for the proposed Settlement Class; (e) approval of the Notice of the proposed Settlement to be mailed to Settlement Class Members and the notice of the proposed settlement to be published ("Summary Notice"); (f) approval of A.B. Data Ltd. ("A.B. Data") as the Claims Administrator; and (g) entry of the [Proposed] Order Preliminarily Approving Settlement and Providing for Notice ("Preliminary Approval Order"), submitted herewith setting a Final Approval Hearing and directing the giving of Notice.

Lead Plaintiff and its counsel support the Settlement.  Although Lead Plaintiff and Interim Lead Counsel are confident in the merits of this Action, they recognize the substantial risks and delays associated with continuing to litigate this Action through trial and possible appeals.  As provided herein, the proposed Settlement and Plan of Allocation satisfies the standards governing preliminary

approval of a class action settlement under the Federal Rule of Civil Procedure ("Rule") 23(e) and are within the range of fairness, reasonableness, and adequacy so that Notice should be disseminated to the proposed Settlement Class Members; the criteria applicable to certifying a Settlement Class are met; and the proposed Notice adequately apprises Settlement Class Members about the terms of the Settlement and their rights with respect to it.

## II.    FACTUAL BACKGROUND

### A.    Procedural History

On February 26, 2020, after an extensive investigation, Lead Plaintiff filed the initial 31-page, 114-paragraph, class action complaint against Defendants in this Court asserting violations of the federal securities laws. *See* ECF No. 1. On February 26, 2020, pursuant to the Private Securities Litigation Reform Act of 1995, a notice of action was published, which provided a deadline to seek lead plaintiff appointment by April 27, 2020. ECF No. 15-2. On March 19, 2020, the Court reassigned this Action to the Honorable Judge Judith E. Levy ("Judge Levy") for all purposes. *See* ECF No. 3.

By Order dated May 1, 2020, the Court (i) appointed OPPRS as Lead Plaintiff pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §78u-4(a)(3)(B), and Section 27D(a)(3)(B) of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. §77z-1(a)(3)(B); and

3

(ii) appointed Berman Tabacco as Interim Lead Counsel and Weitz & Luxenberg as Interim Liaison Counsel.  *See* ECF No. 18.  That Order provides that "Interim Lead Counsel and Interim Local Counsel will be converted to Lead Counsel and Local Counsel if there is no objection from the Individual Defendants and other Plaintiffs by the time of the scheduling conference in this case."  ECF No. 18 at 3. There have been no such objections lodged.  In the Stipulation and supporting documents, the terms "Interim Lead Counsel" and "Lead Counsel" are both defined to mean Berman Tabacco.

On July 2, 2020, after further extensive investigation, Lead Plaintiff filed its Amended Class Action Complaint for Violations of the Federal Securities Laws (the "Complaint").  *See* ECF No. 36.  The Complaint alleges violations of Section 10(b), 20(a) and 20A of the Exchange Act and Sections 11, 12(a)(2) and 15 of the Securities Act on behalf of all those who purchased or otherwise acquired Sterling Bancorp, Inc. ("Sterling" or the "Company") (SBT) common stock, from November 17, 2017 through and including March 17, 2020, including shares sold in the initial public offering ("IPO") which commenced on November 17, 2017, and were damaged as a result.  The Complaint alleges, *inter alia*, that Defendants misled investors, beginning with the IPO and thereafter, about Sterling's core product, the Advantage Loan Program (or "ALP"), as being Bank Secrecy Act ("BSA")/Anti-Money Laundering ("AML") compliant, as well as about the

Company's alleged disciplined and conservative underwriting procedures, strong risk management practices, internal controls, strong financial results, and growth driven by ALP residential mortgage loan growth.  As alleged in the Complaint, underwriting, internal controls, and risk management for the ALP was practically non-existent; the Company was not in compliance with BSA/AML and residential lending laws, there was almost no documentation required to verify ALP borrowers' identity, employment, or sources of cash they used to obtain the mortgages, and the ALP loans were riddled with red flags of money laundering. Ultimately, Sterling was forced to shut down the ALP due to widespread issues with its loan origination process; numerous employees were terminated or abruptly resigned, including all three Officer Defendants and other top management; and Sterling and the ALP's lending practices were subject to an internal review and are currently under a criminal DOJ investigation and a formal OCC investigation.

On September 22, 2020, Defendants moved to dismiss the Complaint.  ECF Nos. 55-63.  By order dated November 25, 2020, Judge Judith E. Levy referred the pending motions to dismiss to Magistrate Judge Elizabeth A. Stafford.  ECF No. 66.  On December 4, 2020, Lead Plaintiff opposed Defendants' motions to dismiss.  ECF No. 69.

## B.     Mediation and Proposed Settlement

During the briefing on the motions to dismiss, the parties commenced mediation efforts presided over by the Hon. Gerald E. Rosen (Ret.) of JAMS, Inc., a well-respected and highly experienced mediator.  The parties participated in two all-day mediation sessions with Judge Rosen on January 11 and 12, 2021.  The mediation involved extensive discussions and presentations by the Settling Parties and was preceded by the exchange of detailed mediation statements.  At the end of the second day, the parties agreed upon the $12.5 million amount for the Settlement of this action and negotiated key terms of the Settlement.   On January 27, 2021, the parties executed an agreement in principle to settle this Action, which contemplated the preparation and submission of the Stipulation.  On April 16, 2021, the parties executed the Stipulation.

In brief, the Settlement provides for the release of Defendants' Releasees from all Plaintiffs' Released Claims in exchange for $12.5 million in cash to be paid into an interest-bearing escrow account on or before fifteen (15) business days after entry of the Preliminary Approval Order and for the release of Plaintiffs' Releasees from all Defendants' Released Claims.  *See* Stipulation at ¶1.42.  If the Settlement is approved, the Net Settlement Fund will be distributed in accordance with the Plan of Allocation to all Settlement Class Members eligible to receive a payment.

## III.   THE SETTLEMENT MERITS PRELIMINARY APPROVAL

### A.   Standards Governing Approval Of A Class Action Settlement

Rule 23(e) requires judicial approval for a compromise of claims brought on a class basis.  The approval process involves a three-step process: "(1) the court must preliminarily approve the proposed settlement, *i.e.*, the court should determine whether the compromise embodied in the decree is illegal or tainted with collusion; (2) members of the class must be given notice of the proposed settlement; and (3) a [final approval] hearing must be held to determine whether the decree is fair to those affected, adequate and reasonable." *Tenn. Ass'n of Health Maint. Orgs., Inc. v. Grier*, 262 F.3d 559, 565-66 (6th Cir. 2001); *Doe v. Deja Vu Servs., Inc.*, No. 2:16-CV-10877, 2017 WL 490157, at *1 (E.D. Mich. Feb. 7, 2017).  With respect to the first step, the settlement should be preliminarily approved if it "(1) 'does not disclose grounds to doubt its fairness or other obvious deficiencies, such as unduly preferential treatment to class representatives or of segments of the class, or excessive compensation for attorneys,' and (2) 'appears to fall within the range of possible approval.'" *Dallas v. Alcatel-Lucent USA, Inc.*, No. 09-14596, 2013 WL 2197624, at *8 (E.D. Mich. May 20, 2013) (citation omitted); *see also Sheick v. Auto. Component Carrier, LLC*, No. 09-14429, 2010 WL 3070130, at *11 (E.D. Mich. Aug. 2, 2010).

On December 1, 2018, Rule 23(e) was amended to specify, among other things, that the focus of a court's preliminary approval evaluation is whether "giving notice [to the class] is justified by the parties' showing that the court *will likely be able to*: (i) approve the proposal under Rule 23(e)(2);[4] and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B).[5]

In reviewing a settlement, courts should consider "the federal policy favoring settlement of class actions." *Int'l Union*, 497 F.3d at 632; *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 530 (E.D. Mich. 2003) ("[T]here is a strong public interest in encouraging settlement of complex litigation and class action

---

[4] The factors identified by amended Rule 23(e)(2), which the Court will more thoroughly evaluate at the final approval stage, are: "(A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class- member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2).

[5] At the final approval stage, the Court may also consider the Sixth Circuit approval factors—many of which overlap with the Rule 23(e)(2) factors: (i) plaintiff's likelihood of ultimate success on the merits balanced against the amount and form of relief offered in the settlement; (ii) complexity, expense, and likely duration of the litigation; (iii) stage of the proceedings and the amount of discovery completed; (iv) judgment of experienced trial counsel; (v) nature of the negotiations and the risk of collusion; (vi) objections raised by the class members; and (vii) public interest. *See Int'l Union, United Auto., Aerospace, & Agric. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007).

suits because they are 'notoriously difficult and unpredictable' and settlement conserves judicial resources." (quoting *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205 (6th Cir. 1992).  In light of this policy:

> [T]he role of the district court is "limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned."

*IUE-CWA v. Gen. Motors Corp.*, 238 F.R.D. 583, 594 (E.D. Mich. 2006).  "A preliminary fairness assessment 'is not to be turned into a trial or rehearsal for trial on the merits,' for 'it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements.'"  *In re Sulzer Hip Prosthesis & Knee Prosthesis Liab. Litig.*, No. 1:01-CV-9000, 2001 WL 1842315, at *10 (N.D. Ohio Oct. 20, 2001).

By this motion, Lead Plaintiff requests the Court take the first step in the settlement approval process by granting preliminary approval of the Settlement. As summarized below, this Settlement satisfies the Rule 23(e)(2) factors for approval.

**B.    The Court Should Preliminarily Approve The Proposed Settlement Under Rule 23(e)(2)**

**1.    The Settlement Agreement Resulted from Arm's Length-Negotiations And Is Not The Product Of Collusion**

Preliminary approval of the Settlement is warranted based on the procedural factors under Rule 23(e)(2): Rule 23(e)(2)(A) ("the class representatives and class counsel have adequately represented the class"), and Rule 23(e)(2)(B) ("the proposal was negotiated at arm's length").    The first two factors under Rule 23(e)(2) "look[] to the conduct of the litigation and of the negotiations leading up to the proposed settlement."  Fed R. Civ. P. 23(e)(2) advisory committee's note to 2018 amendment.

This Settlement meets the criteria for a procedurally fair resolution under Rule 23(e)(2).  *First*, Interim Lead Counsel is highly experienced in class action litigation, and specifically has decades of experience in litigating securities fraud class actions.  The Settling Parties have been actively litigating this Action since its commencement in the beginning of 2020, during which time Interim Lead Counsel have engaged in: (i) extensive factual investigation, including interviews with several former Sterling employees; (ii) extensive review of Sterling's SEC filings, analyst reports and news articles on the Company and other public documents; (iii) extensive research and evaluation of Lead Plaintiff's claims; (iv) legal research and briefing in opposition to Defendants' motions to dismiss;

and (v) consultation with damages and accounting consultants.  As a result, by the time the Settling Parties reached an agreement to settle the Action, Lead Plaintiff and Interim Lead Counsel "had sufficient information to evaluate the strengths and weaknesses of the case and the merits of the Settlement."  *N.Y. State Teachers' Ret. Sys. v. Gen. Motors Co.*, 315 F.R.D. 226, 237 (E.D. Mich. 2016), *aff'd sub nom. Marro v. N.Y. State Teachers' Ret. Sys.*, No. 16-1821, 2017 WL 6398014 (6th Cir. Nov. 27, 2017).

 *Second*, there is no evidence of collusion here.  *Gen. Motors*, 315 F.R.D. at 236 ("[C]ourts presume the absence of fraud or collusion in class action settlements unless there is evidence to the contrary.") (alteration in original).  Indeed, when a settlement is negotiated at arm's-length by experienced counsel, there is a presumption that it is fair and reasonable.  *See Williams v. Vukovich*, 720 F.2d 909, 922-23 (6th Cir. 1983) ("The court should defer to the judgment of experienced counsel who has competently evaluated the strength of his proofs."); *UAW v. Gen. Motors Corp.*, No. 05-CV-73991-DT, 2006 WL 891151, at *18 (E.D. Mich. Mar. 31, 2006) ("The endorsement of the parties' counsel is entitled to significant weight, and supports the fairness of the class settlement.").

 Courts may also consider whether the settlement was reached with the assistance of an experienced, noted mediator.  *See Arledge v. Domino's Pizza, Inc.*, No. 3:16-CV-386-WHR, 2018 WL 5023950, at *2 (S.D. Ohio Oct. 17, 2018).  *See*

*also In re Canadian Super. Sec. Litig.*, No. 09 Civ. 10087 SAS, 2011 WL 5830110, at *2 (S.D.N.Y. Nov. 16, 2011) ("a strong presumption of fairness attaches because the settlement was reached by experienced counsel after arm's length negotiations"). The proposed Settlement here is the product of extensive, arm's-length negotiations, supervised by an experienced mediator, Hon. Gerald E. Rosen (Ret.) of JAMS, Inc. *See* Moody Decl. ¶8. The negotiations were informed by the knowledge Interim Lead Counsel gained by their investigation of the facts and legal issues, including consultation with Lead Plaintiff's damages consultant. *See id*. at ¶5. Based on their familiarity with the factual and legal issues, and armed with a thorough understanding of the strength and weaknesses of the claims at issue, the parties were able to negotiate a fair settlement, taking into account the costs and risks of continued litigation. The negotiations were at all times hard-fought and have produced a result that the settling parties believe to be in their respective interests.

Interim Lead Counsel, who have a great deal of experience in the prosecution and resolution of complex class actions and securities litigation, have carefully evaluated the merits of their case and the proposed Settlement. Interim Lead Counsel believe that they had a strong case and that there was sufficient evidence to proceed to the jury on their claims. They recognize, however, that Defendants would strenuously challenge the allegations and proof regarding each

element of the causes of action, including falsity, scienter and loss causation, and that certification of the class would be hotly contested.  Interim Lead Counsel recognize that these challenges could pose significant risks regarding their ability to prevail and the scope of damages if the case were to proceed to trial.  Based on their extensive experience, Interim Lead Counsel understand the risks of litigation and the fact that, even where a plaintiff's case appears strong, there is no guarantee against a defense verdict.  As such, Interim Lead Counsel believes the Settlement is fair, reasonable, and adequate, and in the best interest of the Settlement Class. *See* Moody Decl. ¶¶10-12.

### 2.     The Settlement's Terms Will Likely Be Found Adequate

Rules 23(e)(2)(C) and (D) direct the Court to evaluate whether "the relief provided for the class is adequate" and "the proposal treats class members equitably relative to each other."  Here, the Settlement represents a highly favorable result for the Settlement Class, and Interim Lead Counsel, having consulted with a damages consultant and proposed Class Administrator (A.B. Data), respectfully submits that the proposed Plan of Allocation is the most fair, reasonable, and adequate method of equitably allocating the Net Settlement Fund to the Settlement Class.

a. **The Settlement Has No Obvious Deficiencies And Falls Within The Range For Approval**

A court cannot "judge the fairness" of a proposed settlement without "weighing the plaintiff's likelihood of success on the merits against the amount and form of the relief offered in the settlement." *Int'l Union*, 497 F.3d at 631. In weighing these considerations, courts recognize that "[t]he determination of a reasonable settlement 'is not susceptible of a mathematical equation yielding a particularized sum,' but turns on whether the settlement falls within 'a range of reasonableness.'" *Chavarria v. N.Y. Airport Serv., LLC*, 875 F. Supp. 2d 164, 174 (E.D.N.Y. 2012).

"Courts have consistently held that the expense and possible duration of litigation are major factors to be considered in evaluating the reasonableness of a settlement." *In re Delphi Corp. Sec., Derivative & "ERISA" Litig.*, 248 F.R.D. 483, 497 (E.D. Mich. 2008) ("[T]he proposed Settlements secure . . . an immediate benefit, after approximately two years of litigation, undiminished by further expenses and without the delay, risk and uncertainty of continued litigation"). Continued litigation of this Action—through fact discovery, expert discovery, class certification briefing, dispositive motion practice, pre-trial preparation, and post-trial appeals—would have undoubtedly been a long and expensive endeavor. *See Gen. Motors*, 315 F.R.D. at 236 (approving settlement where further litigation would have been "extensive" and "protracted"). This complex case involves a

14

range of disputed issues including issues of falsity, damages, loss causation, scienter and class certification. *See id.* ("The issues asserted in this PSLRA class action raise many complex issues, . . . Litigating this action would have required substantial additional time and expense."). While Lead Plaintiff believes that the Class has meritorious claims, Defendants have denied, and continue to deny, each and all of the claims and contentions asserted by Lead Plaintiff. *See* Moody Decl. ¶9. Defendants would also likely argue that even if Lead Plaintiff could establish liability, Settlement Class Members will have trouble showing what part of the stock-price decline is attributable to the alleged fraud rather than other company-specific bad news. *Id.*

Further, the $12.5 million recovery under the proposed Settlement constitutes over 20% of the most likely recoverable damages, assuming Lead Plaintiff prevailed on all claims against the Defendants. *See* Moody Decl. ¶11. For any stage of the litigation, this recovery is an exceptional result. *See e.g.*, *Delphi Corp.,* 248 F.R.D. at 497 (citing "[s]everal noteworthy class action authorities" indicating "that the average securities fraud class action settles for between 3% and 15% of the damages suffered by the class"), L.T. Bulan, L.E. Simmons, *Securities Class Action Settlements, 2019 Review and Analysis*, Cornerstone                Research                (2020),                at                6, https://www.cornerstone.com/Publications/Reports/Securities-Class-Action-

Settlements-2019-Review-and-Analysis (stating that the median securities class action settlement in Rule 10b-5 cases in 2019 resulted in a recovery of 4.8% of estimated damages).

Furthermore, the $12.5 million in cash is a substantial benefit, as compared to the risk that a smaller recovery, or no recovery, would be achieved after a trial and appeals, possibly years in the future. *See Gen. Motors.*, 315 F.R.D. at 236 ("As the Settlement provides an immediate, significant, and certain recovery for Class members, this factor favors the Court's approval of the Settlement."). If there were no Settlement and Lead Plaintiff failed to establish any essential legal or factual element of his claims, neither Lead Plaintiff nor any members of the proposed Class of Sterling investors would recover anything. Also, if the Defendants were successful in proving any of their defenses, the proposed class likely would recover substantially less than the amount provided in the Settlement, or nothing at all. *See, e.g.*, *Delphi Corp.*, 248 F.R.D. at 497-98. Further, even if Lead Plaintiff was successful at trial, a question exists of whether Defendants would be in a position to satisfy a judgment at or above $12.5 million at that time. In light of these considerations, the $12.5 million recovery provided by the Settlement constitutes an excellent result for injured Sterling investors.

**b.** **The Proposed Settlement Does Not Unjustly Favor Any Settlement Class Members**

The Court must ultimately assess the Settlement's effectiveness in distributing relief to the Settlement Class. Fed. R. Civ. P. 23(e)(2)(C)(ii). "Approval of a plan of allocation of a settlement fund in a class action is governed by the same standards of review applicable to approval of the settlement as a whole; the distribution plan must be fair, reasonable and adequate." *Griffin v. Flagstar Bancorp, Inc.*, No. 2:10-CV-10610, 2013 WL 6511860, at *7 (E.D. Mich. Dec. 12, 2013). This factor also weighs in favor of preliminary approval of the Settlement.

As more fully described in the Notice, the Plan of Allocation assumes that the price of Sterling common stock was artificially inflated throughout the Settlement Class Period. The computation of the estimated alleged artificial inflation in the price of Sterling Common Stock during the Settlement Class Period is based on certain misrepresentations alleged by Lead Plaintiff and the price change in the stock, net of market- and industry-wide factors, in reaction to the public announcements that allegedly corrected the misrepresentations alleged by Lead Plaintiff.

The Plan of Allocation sets forth Recognized Loss estimates based on Lead Plaintiff's determination, made in consultation with its damages consultant, that corrective disclosures removed artificial inflation from the price of Sterling Common Stock on December 9, 2019, March 9, 2020, and March 18, 2020 (the

"Corrective Disclosure Dates"). Thus, in order for a Settlement Class Member to have a Recognized Loss under the Plan of Allocation, Sterling Common Stock must have been purchased or acquired during the Settlement Class Period and held through at least one of these Corrective Disclosure Dates.  *See* Moody Decl. ¶14.

### 3.    The Anticipated Request For Attorneys' Fees Is Reasonable

Rule 23(e)(2)(C)(iii) requires that the Court, as part of its overall analysis of the adequacy of the Settlement, consider "the terms of any proposed award of attorney's fees, including [the] timing of payment."   Fed. R. Civ. P. 23(e)(2)(C)(iii).  Under the terms of the Settlement Agreement and as described in the proposed Notice to be provided to Settlement Class Members, Class Counsel will apply for an award of attorneys' fees not to exceed 25% of the Settlement Fund.  *See* Moody Decl.  ¶13.  If awarded, Interim Lead Counsel's fee request will fall within the "range of reasonable attorneys' fees generally awarded in this Circuit."  *Cardizem*, 218 F.R.D. at 532 (30% is within the range of fees generally awarded in the Sixth Circuit); *see also In re Packaged Ice Antitrust Litig.*, No. 08-MDL-01952, 2011 WL 6209188, at *19 (E.D. Mich. Dec. 13, 2011) ("Importantly, the requested award of close to 30% appears to be a fairly well-accepted ratio in cases of this type and generally in complex class actions."); *Zimmerman v. Diplomat Pharmacy, Inc.*, No. 2:16-CV-14005-AC-SDD, 2019 WL 3942483, at *1 (E.D. Mich. Aug. 20, 2019 (awarding 30% fee in $14.1

million settlement); *Palazzolo v. Fiat Chrysler Autos. N.V.*, No. 4:16-CV-12803-LVP-SDD, 2019 WL 2957143, at *1-2 (E.D. Mich. June 5, 2019) (awarding 30% of $14,750,000 settlement in securities class action, finding the award to be "fair and reasonable and consistent with awards in similar cases"); *In re Caraco Pharm. Labs., Ltd. Sec. Litig.*, No. 2:09-CV-12830-AJT, 2013 WL 3213328, at *4 (E.D. Mich. June 26, 2013) (awarding 33%); *Bd. of Trs. of City of Birmingham Emps.' Ret. Sys. v. Comerica Bank*, No. 09-CV-13201, 2013 WL 12239522, at *6 (E.D. Mich. Dec. 27, 2013) (awarding 30%).

In light of the above considerations, the proposed Settlement is, as a whole, reasonable and within the range of possible approval. The Court should therefore grant preliminary approval of the Settlement and direct that Notice of it be given to the Settlement Class.

### 4. There Are No Side Agreements Other Than Opt Outs

Rule 23(e)(2)(C)(iv) requires that the parties identify any side agreements. The Parties have entered into a standard supplemental agreement that provides that if Class Members opt out of the Settlement such that the number of shares of Sterling common stock represented by such opt outs equals or exceeds a certain amount, Defendants shall have the option to terminate the Settlement. Stipulation at ¶12.2. Agreements of this sort are typical in class settlements and, if requested, Lead Plaintiff can submit additional information regarding this agreement *in camera.*

There are no other side agreements between the Parties.

### C.     The Claims Administrator Should Be Approved

Lead Plaintiff requests that the Court approve the appointment of A.B. Data as Claims Administrator.  A.B. Data has extensive relevant experience and is a nationally recognized notice and claims administration firm.   A.B. Data's staff consists of experienced certified public accountants, information technology specialists, and various other professionals with substantial experience in notice and claims administration.  The Claims Administrator will mail the Notice to all Class Members whose names and addresses appear in Sterling's transfer records and to other Class Members whose names and addresses are provided by nominees.

### IV.   CERTIFICATION OF THE SETTLEMENT CLASS IS WARRANTED

For purposes of settlement, Lead Plaintiff seeks certification of the Settlement Class, consisting of all persons who purchased or otherwise acquired Sterling common stock, from November 17, 2017 through and including March 17, 2020, inclusive (the Settlement Class Period).[6]

Rule 23(e) requires that the Parties demonstrate that this Court "will likely be able to … certify the class for purposes of judgment on the proposal."  Fed. R.

---

[6] *See* exclusions from Settlement Class at note 2, *supra*.

Civ. P. 23(e)(1)(B)(ii).  The standard for class certification for settlement purposes is less stringent than for litigation purposes.  *See* to Fed R. Civ. P. 23(e)(1) advisory committee's notes to the 2018 amendment.

Certification of a settlement class requires that the proposed class satisfy the requirements of Rule 23.  First, a plaintiff must establish "the Rule 23(a) requirements—numerosity, commonality, typicality, and adequacy of representation—and then, under Rule 23(b)(3), that common questions of law or fact predominate over individual questions and a class action is the superior method for adjudicating the class claims."  *In re Quorum Health Corp.*, No. 19-0505, 2019 WL 3949704, at *1 (6th Cir. July 31, 2019) (citing Fed. R. Civ. P. 23(a) and (b)).  Here, Lead Plaintiff asserts that the requirements of Rules 23(a) and 23(b) are met, and Defendants do not oppose certification (for settlement purposes only) of the Settlement Class under Rule 23(a) and Rule 23(b)(3).

### A.  The Settlement Class Satisfies the Requirements of Rule 23(a)

#### 1.  Settlement Class Members Are Too Numerous To Be Joined

Rule 23(a)(1) requires that a class be so numerous that joinder of all class members is "impracticable."  Although "[t]here is no bright line numerical test" for determining numerosity, *Ross v. Abercrombie & Fitch Co.*, 257 F.R.D. 435, 442 (S.D. Ohio 2009), "[c]ourts have generally held that numerosity is presumed for a class with more than forty members."  *Jenkins v. Macatawa Bank Corp.*, No. 1:03-

CV-321, 2006 WL 3253305, at *3 (W.D. Mich. Nov. 9, 2006). Therefore, "[n]umerosity is generally assumed to have been met in class action suits involving nationally traded securities." *Wilkof v. Caraco Pharm. Labs., Ltd.*, 280 F.R.D. 332, 338 (E.D. Mich. 2012).

In this case, during the Settlement Class Period, millions of Sterling shares were traded on NASDAQ. Therefore, the Court may reasonably conclude that there are likely thousands of Settlement Class Members across the country and the threshold for a presumption of impracticality of joinder is thus easily met. *See Wilkof*, 280 F.R.D. at 338. (finding "joinder impracticable" where common stock is "traded nationally and possible members of the class are located throughout the country").

### 2.    There Are Common Questions of Law and Fact

In order for a class to be certified, there must be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "Though the rule 'speaks of "questions" in the plural, [the Sixth Circuit has] said that there need only be *one* question common to the class.'" *In re Flint Water Cases*, No. 5:16-CV-10444-JEL-MKM, 2021 WL 211465, at *13 (E.D. Mich. Jan. 21, 2021) (Levy, J.) (alterations in original) (quoting *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 397 (6th Cir. 1998)). Accordingly, the "mere fact that questions peculiar to individual

class members could remain does not necessarily defeat a finding of commonality." *Ross*, 257 F.R.D. at 442.

This case presents numerous common questions of law and fact, including: (a) whether Defendant Sterling and the Officer Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder; (b) whether the Officer Defendants and Defendant Scott Seligman violated Section 20(a) of the Exchange Act; (c) whether Defendant Scott Seligman violated Section 20A of the Exchange Act; (d) whether statements disseminated by Defendant Sterling, the Officer Defendants, and Defendant Scott Seligman to the investing public during the Settlement Class Period omitted and/or misrepresented material facts about, *inter alia*, Sterling's compliance with the BSA/AML regulations, as well as about the Company's underwriting procedures, risk management practices, internal controls, financial results and growth; (e) whether Defendant Sterling, the Officer Defendants, and Defendant Scott Seligman acted willfully, knowingly or with deliberate recklessness in omitting and/or misrepresenting such material facts; (f) whether Defendants Sterling, Judd, Lopp, the Director Defendants and the Underwriter Defendants violated Section 11 of the Securities Act; (g) whether Defendant Sterling and the Underwriter Defendants violated Section 12(a)(2) of the Securities Act; (h) whether Defendant Scott Seligman, the Officer Defendants, and the Director Defendants violated Section 15 of the Securities Act; (i) whether

Sterling's November 2017 IPO Registration Statement contained untrue and/or misleading statements of material fact, omitted material facts which were necessary to make those statements not misleading, and omitted to state material facts required to be stated in it; (j) whether Defendants acted negligently or are strictly liable for omitting and/or mispresenting such material facts; (k) whether Defendants' non-disclosures and/or misrepresentations and the omissions of the material adverse facts constituted a fraud on the market by artificially inflating the market price of Sterling common stock during the Settlement Class Period; and (l) whether Settlement Class Members have sustained damages and, if so, the proper measure of such damages.

### 3.    Lead Plaintiff's Claims Are Typical Of The Settlement Class

Rule 23(a)(3) requires that "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). A claim is "typical" if "it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory." *Flint Water Cases*, 2021 WL 211465, at *13 (quoting *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 561 (6th Cir. 2007)); *see also Sprague*, 133 F.3d at 399 ("The premise of the typicality requirement is simply stated: as goes the claim of the named plaintiff, so go the claims of the class."). The typicality test is "not onerous," and "factual distinctions between named and unnamed class

members do not preclude typicality." *Cates v. Cooper Tire & Rubber Co.*, 253 F.R.D. 422, 429 (N.D. Ohio 2008).

Here, the claims of both the Lead Plaintiff and Settlement Class Members arise from the same set of circumstances—*i.e.*, Defendants' alleged false and misleading statements and omissions regarding Sterling's compliance with the BSA/AML regulations, as well as the Company's underwriting procedures, risk management practices, internal controls, financial results, and growth. Lead Plaintiff's claims are therefore predicated on the same or similar legal theories as those of the other Settlement Class Members. Further, the proof that Lead Plaintiff would present to establish his claims would also prove the claims of the rest of the Settlement Class. *See Wilkof*, 280 F.R.D. at 339 (finding typicality where "[a]ll class members will have the same central argument: That they relied on the false representation of Defendant to their detriment"). The typicality prong has therefore been met.

### 4. Lead Plaintiff and Interim Lead Counsel Will Fairly and Adequately Protect The Interests Of The Settlement Class

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Rule 23(g)(4) requires that "class counsel [will] fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(4). The test for adequacy is two-pronged: "[(i)] representative plaintiffs must 'have common interests with

unnamed members of the class,' and [(ii)] 'it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel.'" *Wilkof*, 280 F.R.D. at 342 (citation omitted).  In evaluating whether adequacy is satisfied, Courts assess "the experience and ability of counsel for plaintiffs and whether there is any antagonism between the interests of the plaintiffs and other members of the class they seek to represent."  *Swigart v. Fifth Third Bank*, 288 F.R.D. 177, 186 (S.D. Ohio 2012) (citation omitted).

Lead Plaintiff purchased Sterling common stock in the IPO and on the open market during the Settlement Class Period and allegedly suffered significant losses as a result of the same course of conduct that allegedly injured other Settlement Class Members.  If Lead Plaintiff was to prove its claims at trial, it would also prove the Settlement Class's claims, satisfying the adequacy requirement. *Delphi Corp.*, 248 F.R.D. at 494 (finding adequacy of representation satisfied where "the injuries to the Lead Plaintiffs and Class Members . . . are unquestionably attributable to the same acts or omissions of the Defendants and liability for this conduct rests on the same legal theories").  In addition, Lead Plaintiff has demonstrated its commitment to vigorously prosecuting this case to achieve the best possible recovery on behalf of the Settlement Class.  *See id.* ("[T]he record reflects that [Lead Plaintiffs] have pursued this litigation and the settlement negotiations vigorously, sharing the common goal of maximizing recovery.

26

Thus, there is no conflict, intra-class or otherwise, …")  Moreover, there is no evidence that Lead Plaintiff has interests antagonistic to the interests of other Settlement Class Members.

As for the adequacy of class counsel, a court must consider the following: "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class."  Fed. R. Civ. P. 23(g)(1)(A).  A court "may [also] consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class."  Fed. R. Civ. P. 23(g)(1)(B).

Here, Interim Lead Counsel are highly experienced in litigating securities class actions and will fairly and adequately prosecute the claims of the Settlement Class.  Interim Lead Counsel have further demonstrated their adequacy by the substantial work undertaken in prosecuting this action, including: extensively investigating and drafting the Complaint, including numerous interviews with former employees and the review and analysis of public documents; researching and drafting  an opposition to Defendants' motions to dismiss, which motions totaled 125 pages of briefing covering myriad defenses and legal issues, and numerous exhibits; hiring and working with consultants in various areas to prove

the Settlement Class's allegations; and successfully reaching a favorable Settlement.

In view of these facts, Lead Plaintiff should be appointed "Class Representative," and Interim Lead Counsel should be appointed "Lead Counsel" and "Class Counsel."

**B.    The Settlement Class Satisfies The Requirements Of Rule 23(b)(3)**

Rule 23(b)(3) authorizes certification where, in addition to the requirements established by Rule 23(a), common questions of law or fact predominate over any individual questions, and a class action is superior to other means of adjudication. *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 607 (1997). This case easily meets the requirements of Rule 23(b)(3).

**1.    Common Legal And Factual Questions Predominate**

First, "[t]o meet the predominance requirement, a plaintiff must establish that issues subject to generalized proof and applicable to the class as a whole predominate over those issues that are subject to only individualized proof." *Randleman v. Fid. Nat'l Title Ins. Co.*, 646 F.3d 347, 352-53 (6th Cir. 2011). Here, Lead Plaintiff can prove the core elements of the Settlement Class's securities claims—falsity, materiality, scienter, and loss causation—on a class-wide basis.[7]

---

[7] *See Kasper v. AAC Holdings, Inc.*, No. 15-CV-00923-JPM-JSF, 2017 WL 3008510, at *11 (M.D. Tenn. July 14, 2017) ("[A]ll elements of the Rule 10b-5 claim are based on evidence that is common to the class.")

Indeed, the Supreme Court has noted that predominance is "readily met" in securities fraud cases. *Amchem*, 521 U.S. at 625. There are no individualized questions at issue with respect to Defendants' alleged misrepresentations. Thus, predominance is satisfied.

### 2.    A Class Action Is Superior To Other Methods Of Adjudication

Likewise, the class action is the superior method to adjudicate this matter. The Rule 23(b)(3) superiority test requires that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). "In adding . . . 'superiority' to the qualification-for-certification list, the Advisory Committee sought to cover cases 'in which a class action would achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.'" *Amchem*, 521 U.S. at 615 (second ellipsis in original) (citation omitted).

The class action mechanism is the obviously superior method of adjudication for this case. There is no indication that any Settlement Class Member wishes to pursue one or more individual actions. To the extent any Settlement Class Member wishes to pursue their own individual action, they can do so by opting out of the Settlement. *See Thomas v. FTS USA, LLC*, 312 F.R.D. 407, 426 (E.D. Va. 2016). In fact, "because the potential class members 'seek a

29

determination on essentially the same issues, . . . a class action would enhance judicial economy and efficiency.'" *Castillo v. Envoy Corp.*, 206 F.R.D. 464, 474 (M.D. Tenn. 2002) (alteration in original) (citation omitted).  Moreover, because it is at the settlement stage, the Court need not determine whether the case, if tried, would present management problems.  *See Amchem*, 521 U.S. at 593.

Finally, resolving this Action as a class action will not be unmanageable because common questions of law and fact predominate this matter.  *See Amchem*, 521 U.S. at 620 (noting that, in settlement context, a district court need not weigh concerns about "intractable management problems" since the matter is, in fact, being settled).  Thus, superiority is satisfied, and the Court should preliminarily certify the Settlement Class for settlement purposes.

## V.    NOTICE TO THE SETTLEMENT CLASS SHOULD BE APPROVED

Lead Plaintiff also requests that the Court approve the form and content of the proposed Notice (attached as Exhibit A-1 to the proposed Preliminary Approval Order).

Under Rule 23(e)(1), the Court "must direct notice in a reasonable manner to all class members who would be bound by the propos[ed settlement]."  Fed. R. Civ. P. 23(e)(1)(B).  Where, as here, notice is to be provided to a settlement class certified under Rule 23(b)(3), the Court is required to "direct to class members the best notice that is practicable under the circumstances, including individual notice

to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Notice must also be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950); *see also In re: Auto. Parts Antitrust Litig.*, No. 12-MD-02311, 2016 WL 8201483, at *3 (E.D. Mich. Dec. 28, 2016) ("[t]he combination of reasonable notice, the opportunity to be heard, and the opportunity to withdraw from the class satisfy due process requirements"). Here, the proposed form and manner of Notice satisfy these requirements and otherwise conforms to the standards of Rule 23(c)(2)(B).

The Notice apprises Class Members of the nature of the Action, the definition of the Settlement Class to be certified, the class claims and issues, and the claims that will be released. Additionally, the Notice: (a) describes the Settlement, Settlement amount and potential recovery both on an aggregate basis and an average per share basis; (b) explains that the parties disagreed regarding whether any damages were recoverable even if Lead Plaintiff prevailed on its claims and includes a brief description of why the parties are proposing the Settlement; (c) includes a brief description of the maximum amount of fees and expenses that Lead Counsel will seek; (d) describes the Plan of Allocation; (e) advises of the binding effect of a Judgment on Settlement Class Members;

(f) advises that a Settlement Class Member may enter an appearance through counsel if desired; (g) states that the Court will exclude from the Settlement Class any Settlement Class Member who requests exclusion (and sets forth the procedures and deadline for doing so); (h) describes how to object to the proposed Settlement and/or requested attorneys' fees, (i) describes how to make a Claim; (j) provides the names, addresses and telephone numbers of the Claims Administrator (including the settlement website) and representatives of Lead Counsel who will be available to answer questions from Settlement Class Members; (k) states the date, time and location of the Final Approval Hearing and that the date may change without further notice to the Settlement Class and advises Settlement Class Members to check the Settlement website or the Court's PACER site to confirm that the date has not been changed; and (l) includes the deadlines for submitting Claim Forms and any objections to the Settlement, the Plan of Allocation or to Lead Counsel's requested attorney's fees and expenses.  These disclosures are thorough and should be approved.

Also, Summary Notice in the form attached as Exhibit A-3 to the proposed Preliminary Approval Order, will be published once in *Investor's Business Daily*. Notice by mail and publication satisfy the requirements of due process and Rule 23.  *See Fidel v. Farley*, 534 F.3d 508 (6th Cir. 2008) (similar notice program

approved); *Dudenhoeffer v. Fifth Third Bancorp*, No. 1:08-CV-538-SSB, 2016 WL 9343955, at *2 (S.D. Ohio July 11, 2016) (same).

## VI.   PROPOSED SCHEDULE OF SETTLEMENT-RELATED EVENTS

Lead Plaintiff respectfully proposes the below schedule for Settlement-related events.  As set forth in the Preliminary Approval Order, the timing of events is determined by the date the Preliminary Approval Order is entered and the date the Final Approval Hearing is scheduled—which Lead Plaintiff requests be at least 100 calendar days after entry of the Preliminary Approval Order, or at the Court's earliest convenience thereafter.

| EVENT | PROPOSED TIMING |
|---|---|
| Deadline for mailing Notice and Claim Form (Preliminary Approval Order, ¶7(a)) | 14 calendar days after date of entry of the Preliminary Approval Order ("Notice Date") |
| Deadline for publishing the Summary Notice (Preliminary Approval Order, ¶7(b)) | No later than the Notice Date |
| Deadline for filing papers supporting final approval of Settlement, Plan of Allocation, and application for fees and expenses (Preliminary Approval Order, ¶18) | 35 calendar days prior to Final Approval Hearing |
| Deadline for submitting Claim Forms (Preliminary Approval Order, ¶11) | No later than 90 calendar days after Notice Date |
| Deadline for post-marking exclusion requests or objections (Preliminary Approval Order, ¶¶13, 14) | No later than 21 calendar days prior to Final Approval Hearing |
| Deadline for filing reply papers (Preliminary Approval Order, ¶18) | 7 calendar days prior to Final Approval Hearing |

| Final Approval Hearing (Preliminary Approval Order, ¶5) | No earlier than 100 calendar days after date of entry of Preliminary Approval Order, or at the Court's earliest convenience thereafter |
|---|---|

## VII.   CONCLUSION

For all the foregoing reasons, Lead Plaintiff respectfully requests that the

Court grant the Motion and enter the proposed Preliminary Approval Order.

Dated: April 16, 2021                Respectfully submitted,


                                     */s/ Kristin J. Moody*

                                     Kristin J. Moody
                                     **BERMAN TABACCO**
                                     44 Montgomery Street, Suite 650
                                     San Francisco, CA  94104
                                     Telephone: (415) 433-3200
                                     Facsimile: (415) 433-6382
                                     Email:kmoody@bermantabacco.com

                                        -and-

                                     Patrick T. Egan
                                     **BERMAN TABACCO**
                                     One Liberty Square
                                     Boston, MA 02109
                                     Telephone: (617) 542-8300
                                     Facsimile: (617) 542-1194
                                     Email: pegan@bermantabacco.com

                                     *Counsel for Lead Plaintiff Oklahoma Police*
                                     *Pension and Retirement System and Interim*
                                     *Lead Counsel for the Putative Class*

**<u>CERTIFICATE OF SERVICE</u>**

I, Kristin J. Moody, of Berman Tabacco, hereby certify that on April 16, 2021,

I electronically transmitted the foregoing via the Court's CM/ECF System, which

will notify all counsel of record authorized to receive such filings.


*/s/ Kristin J. Moody*

Kristin J. Moody
**BERMAN TABACCO**
44 Montgomery Street, Suite 650
San Francisco, CA  94104
Telephone: (415) 433-3200
Facsimile: (415) 433-6382
Email:kmoody@bermantabacco.com

-and-

Patrick T. Egan
**BERMAN TABACCO**
One Liberty Square
Boston, MA 02109
Telephone: (617) 542-8300
Facsimile: (617) 542-1194
Email: pegan@bermantabacco.com

*Counsel for Lead Plaintiff Oklahoma Police*
*Pension and Retirement System and Interim*
*Lead Counsel for the Putative Class*