# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

|  |  |
|---|---|
| OKLAHOMA POLICE PENSION AND RETIREMENT SYSTEM, Individually and on Behalf of All Others Similarly Situated, | Case 5:20-cv-10490-JEL-EAS |
|  | Hon. Judith E. Levy |
| Plaintiff, | Hon. Mag. Judge Elizabeth A. Stafford |
| v. | **CLASS ACTION** |
| STERLING BANCORP, INC.; GARY JUDD; THOMAS LOPP; MICHAEL MONTEMAYOR; SCOTT SELIGMAN; BARRY ALLEN; JON FOX; SETH MELTZER; SANDRA SELIGMAN; PETER SINATRA; BENJAMIN WINEMAN; LYLE WOLBERG; PIPER SANDLER COMPANIES; AND AMERICAN CAPITAL PARTNERS, LLC, |  |
| Defendants. |  |

## CLASS REPRESENTATIVE OPPRS' MOTION FOR FINAL APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION

Court-appointed Class Representative Oklahoma Police Pension and Retirement System's ("OPPRS"), through its undersigned counsel, respectfully moves this Court for an order granting final approval of the proposed settlement set forth in the Stipulation of Settlement, dated April 16, 2021 (ECF No. 79-1), on the grounds that it is fair, reasonable, and adequate and merits final approval under Fed. R. Civ. P. 23(e).

This Motion is based on the accompanying Memorandum of Law in Support of Class Representative OPPRS' Motion For Final Approval of Proposed Class Action Settlement and Plan of Allocation; the Declaration of Kristin J. Moody in Support of (1) Class Representative OPPRS' Motion For Final Approval of Proposed Class Action Settlement and Plan of Allocation and (2) Lead Counsel's Motion For An Award of Attorneys' Fees, Litigation Costs and Expenses and Award To Class Representative Pursuant To 15 U.S.C. § 78u-4(A)(4),[1] and the exhibits attached thereto; all pleadings and records filed herein; the argument of counsel; and such oral and documentary evidence as may be presented at the hearing of this motion.

---

[1] To minimize the burden on the Court, Lead Counsel submits a single declaration providing factual support both for this motion for final approval of the Settlement, and for Lead Counsel's application for attorneys' fees and reimbursement of litigation expenses.

A proposed Judgment Approving Class Action Settlement and proposed Order Approving Plan of Allocation of Net Settlement Fund granting the requested relief will be submitted with Class Representative's reply papers after the deadlines for objecting to the Settlement and requesting exclusion from the Settlement Class have passed.

Dated:  August 12, 2021                    Respectfully submitted,


                                           */s/ Kristin J. Moody*

                                           Kristin J. Moody
                                           **BERMAN TABACCO**
                                           44 Montgomery Street, Suite 650
                                           San Francisco, CA  94104
                                           Telephone: (415) 433-3200
                                           Facsimile: (415) 433-6382
                                           Email: kmoody@bermantabacco.com

                                                -and-

                                           Patrick T. Egan
                                           **BERMAN TABACCO**
                                           One Liberty Square
                                           Boston, MA 02109
                                           Telephone: (617) 542-8300
                                           Facsimile: (617) 542-1194
                                           Email: pegan@bermantabacco.com

                                           *Counsel for Lead Plaintiff Oklahoma Police Pension and Retirement System and Interim Lead Counsel for the Putative Class*

Paul F. Novak
Fisher Building
**WEITZ & LUXENBERG**
3011 West Grand Blvd., 24th Floor
Detroit, MI 48202
Telephone: (313) 800-4170
Facsimile: (646) 293-7992
Email: pnovak@weitzlux.com

*Local Counsel for Lead Plaintiff Oklahoma
Police Pension and Retirement System and
Interim Local Counsel for the Putative Class*

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| OKLAHOMA POLICE PENSION AND RETIREMENT SYSTEM, Individually and on Behalf of All Others Similarly Situated,<br><br>             Plaintiff,<br><br>v.<br><br>STERLING BANCORP, INC.; GARY JUDD; THOMAS LOPP; MICHAEL MONTEMAYOR; SCOTT SELIGMAN; BARRY ALLEN; JON FOX; SETH MELTZER; SANDRA SELIGMAN; PETER SINATRA; BENJAMIN WINEMAN; LYLE WOLBERG; PIPER SANDLER COMPANIES; AND AMERICAN CAPITAL PARTNERS, LLC,<br><br>             Defendants. | Case 5:20-cv-10490-JEL-EAS<br><br>Hon. Judith E. Levy<br>Hon. Mag. Judge Elizabeth A. Stafford<br><br>**CLASS ACTION** |

# MEMORANDUM OF LAW IN SUPPORT OF CLASS REPRESENTATIVE OPPRS' MOTION FOR FINAL APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.    PRELIMINARY STATEMENT .................................................................1

II.   FACTUAL AND PROCEDURAL BACKGROUND ..................................4

III.  THE COURT-APPROVED NOTICE COMPORTS WITH DUE
      PROCESS, RULE 23, AND THE PSLRA...............................................7

IV.   THE SETTLEMENT WARRANTS FINAL APPROVAL .......................10

      A.   The Settlement Meets The Legal Standards Governing
           Approval ......................................................................................10

      B.   The Settlement Merits Approval Under Rule 23(e)(2) And The
           Sixth Circuit Factors ..................................................................12

           1.   Class Representative And Lead Counsel Have
                Adequately   Represented The Class .........................................12

           2.   The Settlement Agreement Resulted From Arm's
                Length-  Negotiations And Is Not The Product Of
                Collusion ..................................................................................13

           3.   The Settlement Is Adequate And Equitable.............................15

                a.   The Settlement Falls Within The Range Of
                     Reasonableness For Approval, And The Costs, Risks,
                     And Delay Of Trial And Appeal Warrant Approval ....16

                b.   The Settlement Effectively And Equitably Distributes
                     Relief And Processes Claims .......................................19

           4.   Class Representative OPPRS And Lead Counsel Endorse
                The Settlement .........................................................................21

           5.   The Reaction of the Class Supports Final Approval ...............22

           6.   The Public Interest Supports Final Approval ..........................22

           7.   The Request For Attorneys' Fees Is Reasonable.....................23

        8.    A Standard Side Agreement Has Been Identified ....................23

V.    THE PLAN OF ALLOCATION IS FAIR, REASONABLE, AND ADEQUATE AND SHOULD BE APPROVED ........................................24

VI.    CERTIFICATION OF THE SETTLEMENT CLASS REMAINS APPROPRIATE...........................................................................................25

VII.    CONCLUSION .........................................................................................25

# TABLE OF AUTHORITIES

## Cases

*Arledge v. Domino's Pizza, Inc.*,
 No. 3:16-CV-386-WHR, 2018 WL 5023950 (S.D. Ohio Oct. 17, 2018) ..... 14, 15

*Chavarria v. N.Y. Airport Serv., LLC*,
 875 F. Supp. 2d 164 (E.D.N.Y. 2012) ................................................................16

*Eisen v. Carlisle & Jacquelin*,
 417 U.S. 156 (1974)...........................................................................................7

*Fidel v. Farley*,
 534 F.3d 508 (6th Cir. 2008) ..............................................................................9

*Garner Props. & Mgmt., LLC v. City of Inkster*,
 No. 17-CV-13960, 2020 WL 4726938 (E.D. Mich. Aug. 14, 2020) ........ 9, 11, 23

*Granada Invs., Inc. v. DWG Corp.*,
 962 F.2d 1203 (6th Cir. 1992) ...........................................................................12

*Griffin v. Flagstar Bancorp, Inc.*,
 No. 2:10-CV-10610, 2013 WL 6511860 (E.D. Mich. Dec. 12, 2013).... 20, 24, 25

*In re Auto. Parts Antitrust Litig.*,
 No. 12-MD-02311, 2016 WL 8201483 (E.D. Mich. Dec. 28, 2016)....................7

*In re Auto. Parts Antitrust Litig.*,
 No. 12-md-02311, 2018 WL 7108016 (E.D. Mich. Nov. 6, 2016)......................11

*In re Cardizem CD Antitrust Litig.*,
 218 F.R.D. 508 (E.D. Mich. 2003) ......................................................... 11, 22, 23

*In re Delphi Corp. Sec., Derivative & "ERISA" Litig.*,
 248 F.R.D. 483 (E.D. Mich. 2008) ......................................................... 16, 18, 19

*In re HealthSouth Corp. Sec. Litig.*,
 334 Fed. App'x 248 (11th Cir. 2009) ................................................................24

*Int'l Union, United Auto., Aerospace, & Agric. Implement Workers of Am. v. Gen. Motors Corp.*,
  497 F.3d 615 (6th Cir. 2007) ............................................................. 11, 14, 16, 22

*IUE-CWA v. Gen. Motors Corp.*,
  238 F.R.D. 583 (E.D. Mich. 2006) .......................................................21

*Mullane v. Cent. Hanover Bank & Tr. Co.*,
  339 U.S. 306 (1950)...............................................................................7

*N.Y. State Teachers' Ret. Sys. v. Gen. Motors Co.*,
  315 F.R.D. 226 (E.D. Mich. 2016), *aff'd sub nom. Marro v. N.Y. State Teachers' Ret. Sys.*, No. 16-1821, 2017 WL 6398014 (6th Cir. Nov. 27, 2017) ....................................................................................... passim

*UAW v. Gen. Motors Corp.*,
  No. 05-CV-73991-DT, 2006 WL 891151 (E.D. Mich. Mar. 31, 2006) ...............14

*United States v. Mich.*,
  No. 2:16-cv-12146, 2021 WL 2253270 (E.D. Mich. June 3, 2021)............. 11, 15

*Williams v. Vukovich*,
  720 F.2d 909 (6th Cir. 1983) ...............................................................14

**Statutes**

15 U.S.C. § 77z-1(a)(7)...........................................................................7

15 U.S.C. § 78u-4(a)(7) ..........................................................................7

15 U.S.C. §77z-1(a)(3)(B) .......................................................................4

15 U.S.C. §78u-4(a)(3)(B)........................................................................4

**Rules**

Fed. R. Civ. P. 23 .......................................................... passim

iv

## STATEMENT OF ISSUES PRESENTED

1.      Whether the Court should grant final approval to the proposed Settlement,[1] which involves payment of $12,500,000 in case for the benefit of the Settlement Class, as fair, adequate, and reasonable under Fed. R. Civ. P. 23(e).

2.      Whether the Court should approve the Plan of Allocation as fair, adequate, and reasonable.

---

[1] All capitalized terms not defined herein have the meanings ascribed to them in the Stipulation of Settlement, and the exhibits appended thereto, dated April 16, 2021 (the "Stipulation") (ECF No. 79-1) or in the accompanying Declaration of Kristin J. Moody in Support of (1) Class Representative OPPRS' Motion For Final Approval of Proposed Class Action Settlement and Plan of Allocation and (2) Lead Counsel's Motion For An Award of Attorneys' Fees, Litigation Costs and Expenses and Award To Class Representative Pursuant To 15 U.S.C. § 78u-4(A)(4) ("Moody Decl." or "Moody Declaration"). All citations to "¶__" and "Ex. __" in this memorandum refer, respectively, to the paragraphs in, and exhibits to, the Moody Declaration. Unless otherwise indicated, all emphasis has been added and all internal citations and footnotes have been omitted.

# CONTROLLING OR MOST APPROPRIATE AUTHORITIES

## Rules

Federal Rule of Civil Procedure 23

## Cases

*Int'l Union, United Auto., Aerospace, & Agric. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615 (6th Cir. 2007).

*N.Y. State Teachers' Ret. Sys. v. Gen. Motors Co.*, 315 F.R.D. 226 (E.D. Mich. 2016).

## I.    PRELIMINARY STATEMENT

Class Representative ("OPPRS" or "Class Representative"), on behalf of itself and the Settlement Class, seeks final approval of the proposed class action Settlement with Defendants.[2]  The Settlement before the Court for approval provides for a $12,500,000 payment to the Settlement Class[3] in consideration for resolving all claims alleged in the Action.  The proposed Settlement was achieved only after intense, arm's-length negotiations between well-informed Parties, assisted by mediator Hon. Gerald E. Rosen (ret.).

Based upon their experience, their evaluation of the facts and law, their recognition of the substantial Settlement amount and of the risks and expenses of protracted litigation against Defendants, Lead Counsel and Class Representative submit that the proposed Settlement is an excellent result and in the best interests of the Settlement Class.  The Settlement represents more than 20% of the Settlement

---

[2] "Defendants" include Sterling Bancorp, Inc. ("Sterling" or the "Company"), Gary Judd, Thomas Lopp, Michael Montemayor, Scott Seligman, Barry Allen, Jon Fox, Seth Meltzer, Sandra Seligman, Peter Sinatra, Benjamin Wineman, and Lyle Wolberg (the "Individual Defendants"), Piper Sandler Companies, and American Capital Partners, LLC.

[3] The Settlement Class is defined in the Preliminary Approval Order, ECF No. 80, PageID.1641, at ¶1, as: "[A]ll Persons who purchased or otherwise acquired Sterling common stock during the Settlement Class Period, November 17, 2017 through and including March 17, 2020, including shares sold in the initial public offering that commenced on November 17, 2017, and were damaged as a result." *See also* Moody Decl. 2 n.2.

Class's maximum recoverable damages estimated by Class Representative's damages consultant, a substantial result compared to estimated damages of 5.3% for securities class actions overall and of 6.9% for cases within the Sixth Circuit.[4] Moody Decl. ¶3.

As detailed in the accompanying Moody Declaration, OPPRS secured the Settlement due to its vigorous efforts over the course of the litigation, including, *inter alia*: (i) interviews with former Sterling employees; (ii) extensive conferral with, and analysis by, damages and accounting consultants; (iii) detailed reviews of Sterling public filings, annual reports, press releases, and other publicly available information;   (iv) review of analysts' reports and articles relating to Sterling; (v) extensive briefing of the asserted claims in opposing Defendants' nine motions to dismiss;  and (vi) research of the applicable law with respect to the claims asserted in the Complaint and the potential defenses.  Moody Decl. ¶¶4, 15, 60.

Further, in reaching the Settlement, Class Representative and Lead Counsel weighed, among other things, the substantial and certain cash benefit to the Settlement Class against: (i) the difficulties involved in proving materiality, falsity, and damages; (ii) the difficulties in overcoming Defendants' anticipated challenges

---

[4] *See* Laarni T. Bulan & Laura E. Simmons, *Securities Class Action Settlements - 2020 Review and Analysis*, Cornerstone Research, at 6 (Figure 5) (2021), https://www.cornerstone.com/Publications/Reports/Securities-Class-Action-Settlements-2020-Review-and-Analysis ("Cornerstone Rep.").

to class certification, and the delays involved in the inevitable appeals of certification; (iii) the fact that, even if Class Representative prevailed at summary judgment and trial, any monetary recovery could have been less than the Settlement Amount and the delays that would follow even a favorable judgment including appeals; and (iv) questions over whether Defendants would be in a position to satisfy a judgment at or above the Settlement Amount in the future.  Moody Decl. ¶5.

On April 28, 2021, this Court preliminary approved the Settlement, certified the Settlement Class, and approved the notice program to the Settlement Class.  ECF No. 80 ("Preliminary Approval Order").  Moody Decl. ¶6.  To date, while the deadline to submit objections and requests for exclusion from the Settlement Class has not yet passed, no Settlement Class Member has objected to the Settlement or Plan of Allocation, and the Court-authorized Claims Administrator, A.B. Data, Ltd., has not received any requests for exclusion.[5]  Moody Decl. ¶¶6, 57, 63, 67.

Class Representative submits that the Settlement readily meets the standards for final approval under Rule 23 of the Federal Rules of Civil Procedure and is a fair, reasonable, and adequate result for the Settlement Class and respectfully requests that the Court grant final approval of the Settlement and Plan of Allocation.

---

[5] Pursuant to the Preliminary Approval Order, requests for exclusion and objections must be received by August 26, 2021. ECF No. 80, PageID.1646-1648, at ¶¶13-14. Should any requests for exclusion or objections be received after the date of this submission, they will address in the reply papers.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

The accompanying Moody Declaration details the background of this case and the events that led to the Settlement.  A summary of this action is provided below.

On February 26, 2020, after an extensive investigation, OPPRS filed the initial 31-page, 114-paragraph class action complaint in this Court against Sterling, certain of its directors and officers, and certain underwriters of Sterling's initial public offering (the "IPO").  Moody Decl. ¶11.

By Order dated May 1, 2020, the Court (i) appointed OPPRS as Lead Plaintiff pursuant to Section 21(a)(3)(B) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §78u-4(a)(3)(B), and Section 27D(a)(3)(B) of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. §77z-1(a)(3)(B); and (ii) appointed Berman Tabacco as Interim Lead Counsel and Weitz & Luxenberg as Interim Local Counsel. Moody Decl. ¶13.

On July 2, 2020, after further extensive investigation, OPPRS filed its 219-page, 479-paragraph Complaint.   Moody Decl. ¶14.   The Complaint alleges violations of Sections 10(b), 20(a), and 20A of the Exchange Act and Sections 11, 12(a)(2), and 15 of the Securities Act. *See id*.  The Complaint centers on Sterling's core product, the Advantage Loan Program ("ALP"), which represented more than 70% of the Company's revenue and assets by the end of the Class Period. *Id*. ¶7. OPPRS alleges in the Complaint that Defendants made false and misleading

statements, beginning with the IPO and thereafter, about the ALP being Bank Secrecy Act ("BSA")/Anti-Money Laundering ("AML") compliant, the Company's alleged disciplined and conservative underwriting procedures, strong risk management practices, internal controls, strong financial results, and growth driven by ALP.  Moody Decl. ¶¶9-10.  Ultimately, after OPPRS brought suit, Sterling was forced to shut down the ALP due to widespread issues with its loan origination process; numerous employees were terminated or abruptly resigned, including all three Officer Defendants and other top management; and Sterling and the ALP's lending practices were subject to an internal review and are currently under a criminal U.S. Department of Justice ("DOJ") investigation and formal investigations by the Office of the Comptroller of the Currency ("OCC") and the U.S. Securities and Exchange Commission ("SEC").   Moody Decl. ¶¶9, 39.

On September 22, 2020, all named Defendants moved to dismiss the Complaint, filing nine separate briefs constituting 124 pages.  Moody Decl. ¶16.  In response, Lead Plaintiff filed a 124-page omnibus opposition addressing all arguments.  Moody Decl. ¶18.

During the briefing on the motions to dismiss, the parties commenced mediation efforts presided over by the Hon. Gerald E. Rosen (Ret.) of JAMS, Inc., a well-respected and highly experienced mediator.  Moody Decl. ¶19.  The parties, including two representatives from OPPRS, participated in two all-day mediation

sessions with Judge Rosen on January 11 and 12, 2021. *Id.* ¶21. The mediation involved extensive discussions and presentations by the Settling Parties and was preceded by the exchange of detailed mediation statements setting forth analyses of factual and legal issues, including the positions of the Settling Parties on liability and damages. *Id.* ¶20. As a result of the mediation, the parties reached an agreement on the material terms of the Settlement, including the settlement consideration of $12.5 million. *Id.* ¶21. On January 26, 2021, the parties executed an agreement in principle on the substantive terms of the Settlement. *Id.* ¶22. The parties then negotiated a stipulation of settlement, which they executed on April 16, 2021. *Id.*

On April 28, 2021, this Court issued its Preliminary Approval Order, finding that the proposed Settlement met the requirements of Rule 23(e), ECF No. 80, namely that "giving notice [to the class] [was] justified by the parties' showing that the court *will likely be able to*: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal," Fed. R. Civ. P. 23(1)(B). In that Preliminary Approval Order, the Court, *inter alia*, certified the Settlement Class; appointed Berman Tabacco as Lead and Class Counsel; approved A.B. Data Ltd. as claims administrator (the "Claims Administrator"); and authorized a notice program to the Settlement Class. The Claims Administrator has carried out all of the steps set forth in the Preliminary Approval Order, including providing Notice to potential Settlement Class Members. *See* Declaration of Adam D. Walter

of A.B. Data ("A.B. Data Decl.") (attached as Ex. 4 to the Moody Decl.), filed herewith, ¶¶2-12 & Exs. A-C; Moody Decl. ¶23.   Pursuant to the Preliminary Approval Order, OPPRS now files this Motion for Final Approval of Proposed Class Action Settlement and Plan of Allocation.

## III.   THE COURT-APPROVED NOTICE COMPORTS WITH DUE PROCESS, RULE 23, AND THE PSLRA

Before the Court may grant final approval of a settlement, Fed. R. Civ. P. 23(c)(2) requires that the Court determine that the settlement provides the class with the "best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort," Fed. R. Civ. P. 23(c)(2)(B); *accord Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974).   The notice requirements of the Private Securities Litigation Reform Act of 1995 ("PSLRA") must also be met.   15 U.S.C. § 78u-4(a)(7); 15 U.S.C. § 77z-1(a)(7).   Additionally, due process requires that notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950); *see also In re Auto. Parts Antitrust Litig.*, No. 12-MD-02311, 2016 WL 8201483, at *3 (E.D. Mich. Dec. 28, 2016) ("[t]he combination of reasonable notice, the opportunity to be heard, and the opportunity to withdraw from the class satisfy due process requirements").   Upon preliminary approval, OPPRS, Lead Counsel, and the

7

Claims Administrator implemented the notice plan in compliance with the PSLRA, due process, and Rule 23.  A.B. Data Decl. ¶¶2-12 & Exs. A-C; Moody Decl. ¶¶23-30.

Pursuant to the Court's Preliminary Approval Order, the Notice and Claim Form were sent via U.S. Mail on May 12, 2021 to all registered holders of Sterling common stock during the Settlement Class Period, as identified by Sterling's transfer agent, and to a list of the largest and most common banks, brokers, and other nominees maintained by the Claims Administrator.  *See* A.B. Data Decl. ¶¶2-9; Moody Decl. ¶¶24-26.  In addition to mailing the Notice, on May 12, 2021, the Summary Notice was published in *Investor's Business Daily* and in a press release issued on May 12, 2021, both of which included contact information for the Claims Administrator and Lead Counsel, as well as the address of the settlement website. *See* A.B. Data Decl. ¶10; Moody Decl. ¶27.

The Notice apprises Class Members, *inter alia*, of the nature and pendency of the Action, the definition of the Settlement Class, the class claims and issues, the claims that will be released, and that Lead Counsel intended to apply for an award of attorneys' fees not to exceed 25% of the Settlement Amount and for reimbursement of litigation expenses in an amount not to exceed $90,000.00. Moody Decl. ¶28. The settlement website, which went live on May 12, 2021, contains the Notice, Claim Form, Stipulation, and relevant case filings.  A.B. Data Decl. ¶12; Moody Decl. ¶¶29-30.  This motion, Lead Counsel's Motion For An

Award of Attorneys' Fees, Litigation Costs and Expenses and Award To Class Representative Pursuant To 15 U.S.C. § 78u-4(A)(4) ("Fee Motion"), and supporting papers will be posted on the website when filed. *Id.*

The Notice and Claim Form have been mailed to 9,580 potential Settlement Class Members. A.B. Data Decl. ¶9; Moody Decl. ¶26; *see Fidel v. Farley*, 534 F.3d 508 (6th Cir. 2008) (similar notice program approved). As of the date of this filing, no Settlement Class Member has objected. A.B. Data Decl. ¶15; Moody Decl. ¶¶6, 57, 63, 67.[6]

As such, under the circumstances of this case, the "best notice practicable" was disseminated, satisfying Rule 23, due process, and the PSLRA. *See N.Y. State Teachers' Ret. Sys. v. Gen. Motors Co.*, 315 F.R.D. 226, 242 (E.D. Mich. 2016) (approving similar notice program and finding "method, form, and content of" notice satisfactory), *aff'd sub nom. Marro v. N.Y. State Teachers' Ret. Sys.*, No. 16-1821, 2017 WL 6398014 (6th Cir. Nov. 27, 2017); *see also Garner Props. & Mgmt., LLC v. City of Inkster*, No. 17-CV-13960, 2020 WL 4726938, at *7 (E.D. Mich. Aug. 14, 2020) (finding notice satisfied Rule 23 and due process).

On August 10, 2021, this Court issued an order postponing the final approval hearing to September 23, 2021. That day, Lead Counsel and the claims administrator

---

[6] The objection deadline is August 26, 2021. Should any objections be filed, OPPRS will respond in its reply brief. *See supra* note 5.

promptly updated the settlement website and notice form on the website to reflect the new final approval Zoom hearing date and time.  Moody Decl. ¶30; A.B. Data Decl. ¶13.

## IV.   THE SETTLEMENT WARRANTS FINAL APPROVAL

### A.   The Settlement Meets The Legal Standards Governing Approval

Rule 23(e) requires judicial approval for a compromise of claims brought on a class basis.  A court must hold a hearing and find that the proposed settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2).  Following the amendment of Rule 23(e) in 2018, the factors for approval are:

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

Prior to the amendment of Rule 23(e), courts in the Sixth Circuit had developed a set of class action settlement approval factors, many of which overlap with the Rule 23(e)(2) factors: (i) plaintiff's likelihood of ultimate success on the merits balanced against the amount and form of relief offered in the settlement; (ii) complexity, expense, and likely duration of the litigation; (iii) stage of the

proceedings and the amount of discovery completed; (iv) judgment of experienced trial counsel; (v) nature of the negotiations and the risk of collusion; (vi) objections raised by the class members; and (vii) public interest. *See United States v. Mich.*, No. 2:16-cv-12146, 2021 WL 2253270, at *3 (E.D. Mich. June 3, 2021); *In re Auto. Parts Antitrust Litig.*, No. 12-md-02311, 2018 WL 7108016, at *4 (E.D. Mich. Nov. 6, 2016); *see also Int'l Union, United Auto., Aerospace, & Agric. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007). Following the amendment of Rule 23(e), district courts in this Circuit have continued to consider these factors, keeping in mind that "[n]o single factor is determinative, and the Court should consider the factors relevant to the circumstances of each individual case." *Garner Properties*, 2020 WL 4726938, at *8; *see also* Fed. R. Civ. P. 23(e)(2) advisory committee notes to 2018 amendments (Rule 23(e) factors aren't intended to "displace" previous factors, but "rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal").

In reviewing a settlement, courts should consider "the federal policy favoring settlement of class actions." *Int'l Union*, 497 F.3d at 632; *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 530 (E.D. Mich. 2003) ("[T]here is a strong public interest in encouraging settlement of complex litigation and class action suits because they are 'notoriously difficult and unpredictable' and settlement conserves

judicial resources." (quoting *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205 (6th Cir. 1992)).

### B. The Settlement Merits Approval Under Rule 23(e)(2) And The Sixth Circuit Factors

#### 1. Class Representative And Lead Counsel Have Adequately Represented The Class

The first Rule 23(e)(2) factor, that "the class representatives and class counsel have adequately represented the class," is satisfied. Class Representative and Lead Counsel have adequately represented the Settlement Class during the litigation of the Action and the Settlement. *See* Moody Decl. ¶¶4, 11-22, 60.

First, Class Representative's claims are typical of the claims of the Settlement Class, and it has no antagonistic interests. Class Representative's interest in obtaining a favorable recovery was aligned with all other Settlement Class Members, and OPPRS understood its role as a fiduciary for the class. *See* Declaration of Ginger Sigler ("Sigler Decl.") (submitted herewith as Moody Decl. Ex. 2), at ¶¶5, 7.

Second, Lead Counsel is highly experienced in class action litigation, with decades of experience litigating securities class actions. *See* Moody Decl. ¶¶32, 60 & Ex. 3. Lead Counsel has participated in dozens of mediations and worked on the resolution of numerous settlements. *Id.* ¶60. By the time settlement discussions began, Lead Counsel had a thorough understanding of the strengths and weaknesses of the claims and defenses, both factually and legally. *Id*. ¶¶4, 11-18, 20, 31-32, 35-

36.  Likewise, Defendants are represented by many well-respected attorneys with substantial experience in securities litigation. *Id*. ¶61.

The Settling Parties have been actively litigating this Action since its commencement, during which time Lead Counsel have engaged in: (i) extensive factual investigation, including interviews with numerous former Sterling employees; (ii) extensive review of Sterling's SEC filings, analyst reports, news articles on the Company, and other public documents; (iii) extensive research and evaluation of the Class Representative's claims; (iv) legal research and briefing in opposition to Defendants' nine motions to dismiss; (v) consultation with damages and accounting consultants; (vi) analysis of relevant banking laws; and (vii) preparation for and participation in a contentious, multi-day mediation. *See* Moody Decl. ¶¶4, 15.  As a result, by the time the Settling Parties reached an agreement to settle the Action, the Class Representative and Lead Counsel "had sufficient information to evaluate the strengths and weaknesses of the case and the merits of the Settlement." *Gen. Motors Co.*, 315 F.R.D. at 237.

## 2. The Settlement Agreement Resulted From Arm's Length-Negotiations And Is Not The Product Of Collusion

The Rule 23(e)(2)(B) factor concerning arm's-length negotiations is satisfied here, as are the Sixth Circuit factors concerning the nature of the negotiations, the risk of collusion, and the judgment of experienced trial counsel, which overlap with

13

this factor and the previous Rule 23(e)(2) factor. *See Int'l Union*, 497 F.3d at 631.

First, there is no evidence of collusion. *Gen. Motors*, 315 F.R.D. at 236 ("[C]ourts presume the absence of fraud or collusion in class action settlements unless there is evidence to the contrary.") (alteration in original). When negotiated at arm's-length by experienced counsel, as here, the settlement is presumed fair and reasonable. *See Williams v. Vukovich*, 720 F.2d 909, 922-23 (6th Cir. 1983) ("The court should defer to the judgment of experienced counsel who has competently evaluated the strength of his proofs."); *UAW v. Gen. Motors Corp.*, No. 05-CV-73991-DT, 2006 WL 891151, at *18 (E.D. Mich. Mar. 31, 2006) ("The endorsement of the parties' counsel is entitled to significant weight, and supports the fairness of the class settlement.").

Courts also consider whether the settlement was reached with the assistance of an experienced, noted mediator. *See Arledge v. Domino's Pizza, Inc.*, No. 3:16-CV-386-WHR, 2018 WL 5023950, at *2 (S.D. Ohio Oct. 17, 2018). The Settlement is the product of extensive, arm's-length negotiations, supervised by an exceptionally experienced mediator, Hon. Gerald E. Rosen (Ret.) of JAMS, Inc. *See* Moody Decl. ¶¶2, 19-22. Judge Rosen has long experience as a federal judge and as a highly regarded mediator. Judge Rosen conducted an active, hands-on mediation, holding multiple pre-mediation calls (jointly and individually with the parties); oversaw the two-day mediation; and participated in numerous discussions as the parties

negotiated the settlement. Thus, the Settlement warrants approval as the "participation of an independent mediator in settlement negotiations virtually insures that the negotiations were conducted at arm's length and without collusion." *Arledge*, 2018 WL 5023950, at *2.

### 3. The Settlement Is Adequate And Equitable

Rules 23(e)(2)(C) and (D) direct the Court to evaluate whether "(C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(C) & (D). Three of the factors used by courts in the Sixth Circuit similarly assess "(1) the plaintiffs' likelihood of ultimate success on the merits balanced against the amount and form of relief offered in the settlement; (2) the complexity, expense and likely duration of the litigation; [and] (3) the stage of the proceedings and the amount of discovery completed." *United States v. Mich.*, 2021 WL 2253270, at *3.

The Settlement represents a highly favorable result for the Settlement Class in light of the risks of continued litigation. Lead Counsel, having consulted with a damages consultant and the Claims Administrator, respectfully submits that the

proposed Plan of Allocation is the most fair, reasonable, and adequate method of equitably allocating the Net Settlement Fund to the Settlement Class.

        **a.**    **The Settlement Falls Within The Range Of Reasonableness For Approval, And The Costs, Risks, And Delay Of Trial And Appeal Warrant Approval**

A court cannot "judge the fairness" of a settlement without "weighing the plaintiff's likelihood of success on the merits against the amount and form of the relief offered in the settlement." *Int'l Union*, 497 F.3d at 631. In weighing these considerations, courts recognize that "[t]he determination of a reasonable settlement 'is not susceptible of a mathematical equation yielding a particularized sum,' but turns on whether the settlement falls within 'a range of reasonableness.'" *Chavarria v. N.Y. Airport Serv., LLC*, 875 F. Supp. 2d 164, 174 (E.D.N.Y. 2012).

"Courts have consistently held that the expense and possible duration of litigation are major factors to be considered in evaluating the reasonableness of a settlement." *In re Delphi Corp. Sec., Derivative & "ERISA" Litig.*, 248 F.R.D. 483, 497-98 (E.D. Mich. 2008) ("[T]he proposed Settlements secure . . . an immediate benefit, after approximately two years of litigation, undiminished by further expenses and without the delay, risk and uncertainty of continued litigation"). This complex action involves a range of disputed issues including falsity, damages, loss causation, scienter, and class certification. Moody Decl. ¶¶5, 31-34. *See Gen. Motors*, 315 F.R.D. at 236 ("The issues asserted in this PSLRA class action raise

16

many complex issues, . . . Litigating this action would have required substantial additional time and expense."). Defendants would likely argue that even if OPPRS establishes liability, it cannot show what part of the stock-price decline is attributable to the alleged fraud rather than other company-specific bad news. *Id*.

Moreover, the complexity, expense, and duration of continued litigation through class certification, merits and expert discovery, summary judgment, trial, subsequent post-trial motion practice, and a jury verdict would be significant. Barring a settlement, this case could be litigated for years, taking a considerable amount of court time and costing hundreds of thousands of dollars, without a better result for the Settlement Class, and possibly worse. Moody Decl. ¶34. *See Gen. Motors*, 315 F.R.D. at 236 (approving settlement where further litigation would have been "extensive" and "protracted").

While Class Representative believes the case is strong, it recognizes significant risks to the Settlement Class, including arguments Defendants presented in their multiple motions to dismiss and others they likely would have raised against class certification and on the merits. To prove its claims, Class Representative would need to rely extensively on expert witnesses on issues including loss causation and damages. *See* Moody Decl. ¶¶32, 62. If the trier of fact finds Defendants' experts more credible, it could negatively affect Class Representative's claims and potentially reduce the compensable pool of damages to near zero. *Id.* Class

Representative believes it has strong counterarguments on these points, but the Court at class certification, summary judgment, or trial could have found such arguments persuasive, which could reduce or eliminate recoverable damages. *Id*. ¶32-34, 38.

Further, the $12.5 million recovery under the proposed Settlement constitutes over 20% of the maximum most likely recoverable damages, assuming OPPRS prevailed on all claims against the Defendants. *See* Moody Decl. ¶¶3, 35, 46. For any stage of the litigation, this recovery is an exceptional result. *See e.g.*, *Delphi Corp.,* 248 F.R.D. at 497 (citing "[s]everal noteworthy class action authorities" indicating "that the average securities fraud class action settles for between 3% and 15% of the damages suffered by the class").[7]

Furthermore, the $12.5 million in cash is a substantial benefit, as compared to the risk that a smaller recovery, or no recovery, would be achieved after a trial and appeals, possibly years in the future. *See* Moody Decl. ¶38. *See Gen. Motors.*, 315 F.R.D. at 236 ("As the Settlement provides an immediate, significant, and certain recovery for Class members, this factor favors the Court's approval of the Settlement."). If there were no Settlement and the Class Representative failed to establish any essential legal or factual element of his claims, neither the Class

---

[7] Cornerstone Rep. at 6 (Figure 5), 14 (Figure 13) (median 2020 10b-5 securities class action settlement recovered 5.3% of estimated damages for cases with estimated damages between $25-$74 million; median settlement amount in cases that settle after motion to dismiss filed but before it is decided is $5.8 million).

Representative nor any members of the proposed Class of Sterling investors would recover anything. *See* Moody Decl. ¶38. Also, if the Defendants were successful in proving any of their defenses, the proposed class likely would recover substantially less than the amount provided in the Settlement, or nothing at all. *See id. See, e.g.*, *Delphi Corp.*, 248 F.R.D. at 497-98. Further, even in the event of success at trial, a question exists as to whether Defendants could satisfy a $12.5 million or more judgment at that time. *See* Moody Decl. ¶39. Indeed, Sterling has shut down the ALP, its core revenue producer. Moreover, the Company is embroiled in regulatory and criminal investigations and actions, including by the DOJ, SEC, and OCC, which are also draining its limited resources. *Id*. Thus, collectability, even if successful at trial, is a serious risk. In light of these considerations, the $12.5 million recovery provided by the Settlement constitutes an excellent result for injured Sterling investors, and the costs, risks, and delay of trial and appeal militate in favor of approval of the Settlement. *See* Fed. R. Civ. P. 23(e)(2)(c)(i).

### b. The Settlement Effectively And Equitably Distributes Relief And Processes Claims

The Court must assess the Settlement's effectiveness in "distributing relief to the" Settlement Class, "including the method of processing class-member claims." Fed. R. Civ. P. 23(e)(2)(C)(ii). The Settlement must also "treat[] class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). Additionally, "approval of a plan of allocation of a settlement fund in a class action is governed

by the same standards of review applicable to approval of the settlement as a whole; the distribution plan must be fair, reasonable and adequate." *Griffin v. Flagstar Bancorp, Inc.*, No. 2:10-CV-10610, 2013 WL 6511860, at *7 (E.D. Mich. Dec. 12, 2013). These considerations also weigh in favor of approval of the Settlement.

The Notice describes the process for Settlement Class Members to submit a Claim, the Plan of Allocation that the Claims Administrator will use, and how the proceeds of the Settlement will be distributed pursuant to the Plan of Allocation. Moody Decl. ¶28. As more fully described in the Notice and Moody Declaration, the Plan of Allocation assumes that the price of Sterling common stock was artificially inflated throughout the Settlement Class Period. *Id.* ¶41. The computation of the estimated alleged artificial inflation in the price of Sterling Common Stock during the Settlement Class Period is based on certain misrepresentations alleged by OPPRS and the price change in the stock, net of market- and industry-wide factors, in reaction to the public announcements that allegedly corrected the misrepresentations alleged by the Class Representative. *Id.*

Moreover, as discussed in Section V, *infra*, the Net Settlement Fund will be distributed among Settlement Class Members in accordance with the Plan of Allocation, which provides a fair and equitable method of allocation. There is no preferential treatment for any member of the Settlement Class. The proposed Plan of Allocation ensures that Settlement Class Members' recoveries are based upon the

20

relative losses they sustained, and eligible Settlement Class Members will receive a *pro rata* distribution from the Net Settlement Fund calculated in the same manner. Accordingly, the Plan applies equitably to all Settlement Class Members, including Class Representative OPPRS, which will receive a recovery based on the same formula under the Plan of Allocation (other than any Court-approved reimbursement related to its representation of the Settlement Class as permitted by the PSLRA).

### 4. Class Representative OPPRS And Lead Counsel Endorse The Settlement

In assessing the fairness of a proposed settlement, courts consider Lead Counsel's endorsement of the Settlement, which "is entitled to significant deference." *General Motors*, 315 F.R.D. at 238; *see also IUE-CWA v. Gen. Motors Corp.*, 238 F.R.D. 583, 597 (E.D. Mich. 2006) ("The judgment of the parties' counsel that the settlement is in the best interest of the settling parties 'is entitled to significant weight, and supports the fairness of the class settlement.'").

Lead Counsel, who have significant experience in the prosecution and resolution of complex securities class actions, have carefully evaluated the merits of the case and the proposed Settlement and believe the Settlement is fair, reasonable, and adequate, and in the best interest of the Settlement Class. *See* Moody Decl. ¶¶3, 44. Lead Counsel believe that the case was strong and that there was sufficient evidence to proceed to the jury on the claims. *See id.* ¶32. They recognize, however, that Defendants would strenuously challenge the allegations and proof regarding

21

each element of the causes of action, including falsity, scienter, and loss causation, and firmly contest class certification. *See id*. Lead Counsel recognize these significant risks to prevailing at trial and the serious headwinds impacting the Company and its potential ability to pay a settlement or verdict in the future. *See id*. Lead Counsel understand that there is no guarantee against a defense verdict. *See id*. Likewise, Class Representative OPPRS endorses the Settlement. *See* Sigler Decl. ¶7; Moody Decl. ¶66.

### 5.    The Reaction of the Class Supports Final Approval

The Sixth Circuit also considers objections raised by class members. *See Int'l Union*, 497 F.3d at 631. To date, no objections have been received. Moody Decl. ¶67. "A certain number of opt-outs and objections are to be expected in a class action. If only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement." *Cardizem*, 218 F.R.D. at 527.

### 6.    The Public Interest Supports Final Approval

The Sixth Circuit settlement approval factors also consider the public interest in the settlement. *See Int'l Union*, 497 F.3d at 631. Here, the public interest supports final approval of the Settlement. "[T]here is a strong public interest in encouraging settlement of complex litigation and class action suits because they are 'notoriously difficult and unpredictable' and settlement conserves judicial resources." *Cardizem*, 218 F.R.D. at 530. In addition, here, "allowing settlement in this matter will promote

the fair and expeditious resolution of the matter." *Garner Properties*, 2020 WL 4726938, at *10.  Further, as in the *General Motors* action, "[s]ettlement of this private securities action serves the public interest by providing an efficient, yet substantial, recovery to a large class of shareholders." 315 F.R.D. at 241-42.

### 7.    The Request For Attorneys' Fees Is Reasonable

Rule 23(e)(2)(C)(iii) requires that the Court also consider "the terms of any proposed award of attorney's fees, including [the] timing of payment."  Under the terms of the Settlement Agreement and as described in the Notice, Class Counsel are applying for an award of attorneys' fees of 25% of the Settlement Fund.  *See* Moody Decl.  ¶¶26, 45, 68.  As detailed in the accompanying Fee Motion, Lead Counsel's fee request falls within the "range of reasonable attorneys' fees generally awarded in this Circuit."  *Cardizem*, 218 F.R.D. at 532 (30% is within the range of fees generally awarded in the Sixth Circuit).

### 8.    A Standard Side Agreement Has Been Identified

Rule 23(e)(2)(C)(iv) requires that the parties identify any side agreements. The Parties have entered into a standard supplemental agreement that provides that if Class Members exclude themselves from the Settlement such that the number of shares of Sterling common stock represented by such exclusions equals or exceeds a certain amount, Defendants shall have the option to terminate the Settlement. Stipulation, ECF No. 79-1, at ¶12.2.  Agreements of this sort are typical in class

settlements and, if requested, OPPRS can submit additional information regarding this agreement *in camera*.  *See In re HealthSouth Corp. Sec. Litig.*, 334 Fed. App'x 248, 250-55 & n.4, n.11 (11th Cir. 2009).  There are no other side agreements.

## V.   THE PLAN OF ALLOCATION IS FAIR, REASONABLE, AND ADEQUATE AND SHOULD BE APPROVED

OPPRS seeks approval of the Plan of Allocation as fair, reasonable, and adequate.  "Approval of a plan of allocation of a settlement fund in a class action is governed by the same standards of review applicable to approval of the settlement as a whole; the distribution plan must be fair, reasonable and adequate."  *Griffin*, 2013 WL 6511860, at *7.  The Plan of Allocation was developed in consultation with the damages consultant.  Moody Decl. ¶¶40-43.  *See Gen. Motors*, 315 F.R.D. at 240-42 (approving Plan of Allocation "developed based on … expert's careful damages analysis").  The Plan of Allocation provides for the distribution of the Net Settlement Fund among Authorized Claimants who submit timely and valid claims on a *pro rata* basis based on their Recognized Loss.  Moody Decl. ¶42.  The Recognized Loss is calculated based on the amount of artificial inflation of Sterling stock at the time, and in order for a Settlement Class Member to have a Recognized Loss under the Plan of Allocation, Sterling Common Stock must have been purchased or acquired during the Settlement Class Period and held through at least one of the Corrective Disclosure Dates, December 9, 2019, March 9, 2020, and March 18, 2020.  *Id*. ¶41.  The Plan of Allocation ensures that the Net Settlement

Fund will be fairly and equitably distributed to those who have losses consistent with the statutory damage framework of the federal securities laws.  *Id*. ¶¶43-44.

The Plan of Allocation was fully disclosed in the Notice mailed to potential Settlement Class Members and nominees.  Moody Decl. ¶¶24, 28.  To date, there have been no objections to the Plan of Allocation.  *Id*. ¶6.  For the foregoing reasons, the Plan of Allocation is fair, reasonable, and adequate and should be approved.  *See Gen. Motors*, 315 F.R.D. at 242; *Griffin*, 2013 WL 6511860, at *7.

## VI.   CERTIFICATION OF THE SETTLEMENT CLASS REMAINS APPROPRIATE

In its Preliminary Approval Order, the Court approved certification of the Settlement Class for settlement purposes.  ECF No. 80, PageID.1641, at ¶1.  The Court found that the proposed class met the requirements of Rules 23(a) and 23(b)(3) for purposes of settlement.  *Id.*, PageID.1642, at ¶4.  Since that time, nothing has occurred to affect the correctness of the Court's certification of the Settlement Class. *Id.*, PageID.1641, at ¶1.  *See Gen. Motors*, 315 F.R.D. at 235.  Accordingly, and for all the reasons stated in the unopposed motion for preliminary approval (ECF No. 78), certification of the Settlement Class remains appropriate.

## VII.  CONCLUSION

For the foregoing reasons, Class Representative OPPRS respectfully requests that the Court grant final approval of the Settlement and Plan of Allocation.

Dated: August 12, 2021                    Respectfully submitted,


                                          */s/ Kristin J. Moody*

                                          Kristin J. Moody
                                          **BERMAN TABACCO**
                                          44 Montgomery Street, Suite 650
                                          San Francisco, CA  94104
                                          Telephone: (415) 433-3200
                                          Facsimile: (415) 433-6382
                                          Email:kmoody@bermantabacco.com

                                                 -and-

                                          Patrick T. Egan
                                          **BERMAN TABACCO**
                                          One Liberty Square
                                          Boston, MA 02109
                                          Telephone: (617) 542-8300
                                          Facsimile: (617) 542-1194
                                          Email: pegan@bermantabacco.com

                                          *Counsel for Class Representative Oklahoma*
                                          *Police Pension and Retirement System and*
                                          *Lead Counsel for the Settlement Class*

                                          Paul F. Novak
                                          Fisher Building
                                          **WEITZ & LUXENBERG**
                                          3011 West Grand Blvd., 24th Floor
                                          Detroit, MI 48202
                                          Telephone: (313) 800-4170
                                          Facsimile: (646) 293-7992
                                          Email: pnovak@weitzlux.com

                                          *Local Counsel for Lead Plaintiff Oklahoma*
                                          *Police Pension and Retirement System and*
                                          *Interim Local Counsel for the Putative Class*

26

## <u>CERTIFICATE OF SERVICE</u>

I, Kristin J. Moody, of Berman Tabacco, hereby certify that on August 12, 2021, I electronically transmitted the foregoing via the Court's CM/ECF System, which will notify all counsel of record authorized to receive such filings.

*/s/ Kristin J. Moody*

Kristin J. Moody
**BERMAN TABACCO**
44 Montgomery Street, Suite 650
San Francisco, CA  94104
Telephone: (415) 433-3200
Facsimile: (415) 433-6382
Email: kmoody@bermantabacco.com