## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| OKLAHOMA POLICE PENSION AND RETIREMENT SYSTEM, Individually and on Behalf of All Others Similarly Situated,<br><br>          Plaintiff,<br><br>v.<br><br>STERLING BANCORP, INC.; GARY JUDD; THOMAS LOPP; MICHAEL MONTEMAYOR; SCOTT SELIGMAN; BARRY ALLEN; JON FOX; SETH MELTZER; SANDRA SELIGMAN; PETER SINATRA; BENJAMIN WINEMAN; LYLE WOLBERG; PIPER SANDLER COMPANIES; AND AMERICAN CAPITAL PARTNERS, LLC,<br><br>          Defendants. | Case 5:20-cv-10490-JEL-EAS<br><br>Hon. Judith E. Levy<br>Hon. Mag. Judge Elizabeth A. Stafford<br><br>**CLASS ACTION** |

## LEAD COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES, LITIGATION COSTS AND EXPENSES AND AWARD TO CLASS REPRESENTATIVE PURSUANT TO 15 U.S.C. § 78u-4(A)(4)

Court-appointed Lead Counsel, Berman Tabacco, respectfully moves this

Court, pursuant to Rules 23(h) and 54(d) of the Federal Rules of Civil Procedure,

for entry of an order (i) awarding attorneys' fees of 25% of the $12.5 million

Settlement[1]; and (ii) authorizing reimbursement of $72,076.44 in litigation costs and expenses; and (iii) awarding Class Representative OPPRS compensation in the amount of $2,500 for the time and expenses they incurred in representing the Class in this Action pursuant to 15 U.S.C. § 78u-4(A)(4).

As discussed in the accompanying memorandum, this motion is made on the grounds that the requested award is fair, reasonable, and justified under applicable law. This Motion is based on the accompanying Memorandum of Law in Support of Lead Counsel's Motion For An Award of Attorneys' Fees, Litigation Costs and Expenses and Award To Class Representative Pursuant To 15 U.S.C. § 78u-4(A)(4); the Declaration of Kristin J. Moody in Support of (1) Class Representative OPPRS' Motion For Final Approval of Proposed Class Action Settlement and Plan of Allocation and (2) Lead Counsel's Motion For An Award of Attorneys' Fees, Litigation Costs and Expenses and Award To Class Representative Pursuant To 15 U.S.C. § 78u-4(A)(4),[2] and the exhibits attached thereto; Class Representative OPPRS' Motion For Final Approval of Proposed Class Action Settlement and Plan

---

[1] All capitalized terms not defined herein have the meanings ascribed to them in the Stipulation of Settlement, and the exhibits appended thereto, dated April 16, 2021 (the "Stipulation") (ECF No. 79-1).

[2] To minimize the burden on the Court, Lead Counsel submits a single declaration providing factual support both for this application for attorneys' fees and reimbursement of litigation expenses, and for Class Representative OPPRS' motion for final approval of the Settlement.

of Allocation, filed concurrently herewith; all pleadings and records filed herein; the

argument of counsel; and such oral and documentary evidence as may be presented

at the hearing of this motion.

A proposed Order granting the requested relief will be submitted with Lead

Counsel's reply papers after the deadline for objecting to the motion has passed.

Dated: August 12, 2021                    Respectfully submitted,


/s/ Kristin J. Moody

Kristin J. Moody
**BERMAN TABACCO**
44 Montgomery Street, Suite 650
San Francisco, CA 94104
Telephone: (415) 433-3200
Facsimile: (415) 433-6382
Email: kmoody@bermantabacco.com

-and-

Patrick T. Egan
**BERMAN TABACCO**
One Liberty Square
Boston, MA 02109
Telephone: (617) 542-8300
Facsimile: (617) 542-1194
Email: pegan@bermantabacco.com

*Counsel for Lead Plaintiff Oklahoma Police
Pension and Retirement System and Interim
Lead Counsel for the Putative Class*

Paul F. Novak
Fisher Building
**WEITZ & LUXENBERG**
3011 West Grand Blvd., 24th Floor
Detroit, MI 48202
Telephone: (313) 800-4170
Facsimile: (646) 293-7992
Email: pnovak@weitzlux.com

*Local Counsel for Lead Plaintiff Oklahoma
Police Pension and Retirement System and
Interim Local Counsel for the Putative Class*

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| OKLAHOMA POLICE PENSION AND RETIREMENT SYSTEM, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>STERLING BANCORP, INC.; GARY JUDD; THOMAS LOPP; MICHAEL MONTEMAYOR; SCOTT SELIGMAN; BARRY ALLEN; JON FOX; SETH MELTZER; SANDRA SELIGMAN; PETER SINATRA; BENJAMIN WINEMAN; LYLE WOLBERG; PIPER SANDLER COMPANIES; AND AMERICAN CAPITAL PARTNERS, LLC,<br><br>Defendants. | Case 5:20-cv-10490-JEL-EAS<br><br>Hon. Judith E. Levy<br>Hon. Mag. Judge Elizabeth A. Stafford<br><br>**<u>CLASS ACTION</u>** |

## MEMORANDUM OF LAW IN SUPPORT OF
## LEAD COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES, LITIGATION COSTS AND EXPENSES AND AWARD TO CLASS <u>REPRESENTATIVE PURSUANT TO 15 U.S.C. § 78u-4(A)(4)</u>

**TABLE OF CONTENTS**

**Page**

I.     PRELIMINARY STATEMENT ...................................................................1

II.    FACTUAL AND PROCEDURAL BACKGROUND ..................................5

III.   THE REQUESTED FEE AWARD IS REASONABLE AND
       SHOULD BE APPROVED...........................................................................5

       A.     Lead Counsel Are Entitled To An Award Of Attorneys' Fees
             From The Common Fund........................................................................5

       B.     Authority Supports Using The Percentage-Of-The-Fund Method
             To Analyze Lead Counsel's Request For Attorneys' Fees..................6

       C.     The Fee Request Represents A Reasonable Percentage of the
             Common Fund.........................................................................................7

       D.     The Factors Considered By Courts In The Sixth Circuit Support
             Approval Of The Requested Fee ...........................................................9

             1.     The Value Of The Benefit Rendered To The Settlement
                   Class Supports The Requested Fee.............................................10

             2.     Society's Stake In Rewarding Attorneys Who Enforce The
                   Securities Laws Supports The Requested Fee ...........................13

             3.     The Contingent Nature Of The Representation Supports
                   The Requested Fee ....................................................................14

             4.     The Hourly Value Of Lead Counsel's Services And
                   Lodestar Cross-Check Support The Requested Fee...................15

             5.     The Complexity Of The Litigation Supports Requested Fee.....18

             6.     The Professional Skill And Standing Of Counsel Involved
                   On Both Sides Supports The Requested Fee ..............................20

             7.     The Reaction of Class Members Supports the Fee Request ......21

IV.   LEAD COUNSEL'S LITIGATION EXPENSES ARE REASONABLE
       AND SHOULD BE REIMBURSED .........................................................22

i

V.    CLASS REPRESENTATIVE OPPRS SHOULD BE REIMBURSED
      FOR ITS REASONABLE COSTS AND EXPENSES ................................24

VI.   CONCLUSION ............................................................................................25

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Bailey v. AK Steel Corp.*,
  No. 1:06-cv-468, 2008 WL 553764 (S.D. Ohio Feb. 28, 2008) ...........................17

*Barnes v. City of Cincinnati*,
  401 F.3d 729 (6th Cir. 2005) ................................................................................16

*Bd. of Trs. of City of Birmingham Emps.' Ret. Sys. v. Comerica Bank*,
  No. 09-CV-13201, 2013 WL 12239522 (E.D. Mich. Dec. 27, 2013).....................9

*Boeing Co. v. Van Gemert*,
  444 U.S. 472 (1980) ................................................................................................6

*Fogarazzo v. Lehman Bros., Inc.*,
  No. 03 Civ. 5194(SAS), 2011 WL 671745 (S.D.N.Y. Feb. 23, 2011) .................18

*In re Adelphia Commc'ns Corp. Sec. & Deriv. Litig.*,
  2006 WL 3378705 (S.D.N.Y. Nov. 16, 2006), *aff'd*, 272 F. App'x 9 (2d Cir.
  2008) ......................................................................................................................21

*In re Auto. Parts Antitrust Litig.*,
  No. 12-md-02311, 2017 WL 3525415 (E.D. Mich. July 10, 2017) ......................17

*In re Caraco Pharm. Labs., Ltd. Sec. Litig.*,
  No. 2:09-CV-12830-AJT-DAS, 2013 WL 3213328 (E.D. Mich. June 26,
  2013) ........................................................................................................................9

*In re Cardinal Health Inc. Sec. Litig.*,
  528 F. Supp. 2d 752 (S.D. Ohio 2007) ......................................................... passim

*In re Cardizem CD Antitrust Litig.*,
  218 F.R.D. 508 (E.D. Mich. 2003) ............................................................... passim

*In re Cendant Corp. Sec. Litig.*,
  404 F.3d 173 (3d Cir. 2005) ....................................................................................7

*In re Delphi Corp. Sec., Derivative & "ERISA" Litig.*,
  248 F.R.D. 483 (E.D. Mich. 2008) ............................................................... passim

*In re DPL Inc., Sec. Litig.*,
  307 F. Supp. 2d 947 (S.D. Ohio 2004) .................................................................10

*In re F & M Distributors, Inc. Sec. Litig*.,
  No. 95-CV-71778-DT, 1999 U.S. Dist. LEXIS 11090 (E.D. Mich. June 29,
  1999) ............................................................................................................21

*In re Nat'l Football League Players' Concussion Inj. Litig.*,
  No. 2:12-MD-02323-AB, 2018 WL 1635648 (E.D. Pa. Apr. 5, 2018), *aff'd in
  relevant part*, 814 F. App'x 678 (3d Cir. 2020).....................................................17

*In re Nationwide Fin. Servs. Litig.*,
  No. 2:08-CV-00249, 2009 WL 8747486 (S.D. Ohio Aug. 19, 2009)....................21

*In re Packaged Ice Antitrust Litig.*,
  No. 08-MDL-01952, 2011 WL 6209188 (E.D. Mich. Dec. 13, 2011) .............8, 16

*In re Polyurethane Foam Antitrust Litig.*,
  No. 1:10 MD 2196, 2015 WL 1639269 (N.D. Ohio Feb. 26, 2015) .....................9

*In re Prandin Direct Purchaser Antitrust Litig.*,
  No. 2:10-cv-12141-AC-DAS, 2015 WL 1396473 (E.D. Mich. Jan. 20, 2015) .......8

*In re ProQuest Co. Sec. Litig.*,
  No. 2:06-cv-10619, 2009 WL 10702449 (E.D. Mich. Mar. 30, 2009) ...................9

*In re Provectus Biopharms, Inc. Sec. Litig*.,
  No. 3:14-cv-00338-PLR-HBG, 2016 WL 7735229 (E.D. Tenn. Dec. 12,
  2016) ............................................................................................................24

*In re Regions Morgan Keegan Sec., Deriv. & ERISA Litig.*,
  No. 2:07-cv-02830-SHM-dkv, 2013 WL 12110279 (W.D. Tenn. Aug. 6,
  2013) ..............................................................................................................9

*In re Rio Hair Naturalizer Prods. Liab. Litig.*,
  No. MDL 1055, 1996 WL 780512 (E.D. Mich. Dec. 20, 1996)............................8

*In re Rite Aid Corp. Sec. Litig.*,
  396 F.3d 294 (3d Cir. 2005), *as amended* (Feb. 25, 2005)...................................17

*In re Se. Milk Antitrust Litig*.,
  No. 2:08-MD-1000, 2013 WL 2155387 (E.D. Tenn. May 17, 2013)......... 7, 17, 22

*In re Skelaxin (Metaxalone) Antitrust Litig.*,
 MDL No. 2343, 2014 WL 2946459 (E.D. Tenn. June 30, 2014) ...........................7

*In re Telectronics Pacing Sys., Inc.*,
 137 F. Supp. 2d 1029 (S.D. Ohio), *decision clarified*, 148 F. Supp. 2d 936
 (S.D. Ohio 2001) ................................................................................13

*In re The Mills Corp. Sec. Litig.*,
 265 F.R.D. 246 (E.D. Va. 2009)..........................................................18

*Ind. State Dis. Council of Laborers & HOD Carriers Pension & Welfare
 Fund v. Omnicare, Inc.*,
 No. 2:06-cv-00026-WOB-CJS, 2019 WL 7483663 (E.D. Ky. June 27, 2019)......9

*N.Y. State Teachers' Ret. Sys. v. Gen. Motors Co.*,
 315 F.R.D. 226 (E.D. Mich. 2016) , *aff'd sub nom. Marro v. N.Y. State
 Teachers' Ret. Sys.*, No. 16-1821, 2017 WL 6398014 (6th Cir. Nov. 27,
 2017) ........................................................................ 6, 11, 17, 23

*New England Health Care Emps. Pension Fund v. Fruit of the Loom, Inc.*,
 234 F.R.D. 627 (W.D. Ky. 2006), *aff'd sub nom. Fidel v. Farley*, 534 F.3d
 508 (6th Cir. 2008) ......................................................... 11, 18, 22, 24

*Palazzolo v. Fiat Chrysler Autos. N.V.*,
 No. 4:16-CV-12803-LVP-SDD, 2019 WL 2957143 (E.D. Mich. June 5,
 2019) ...............................................................................................8

*Ramey v. The Cincinnati Enquirer, Inc.*,
 508 F.2d 1188 (6th Cir. 1974) .................................................. passim

*Rankin v. Rots*,
 No. 02-CV-71045, 2006 WL 1791377 (E.D. Mich. June 27, 2006)......................14

*Rawlings v. Prudential-Bache Props., Inc.*,
 9 F.3d 513 (6th Cir. 1993) ......................................................... 6, 7, 9

*Stanley v. U.S. Steel Co.*,
 No. 04-74654, 2009 WL 4646647 (E.D. Mich. Dec. 8, 2009) .............................15

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
 551 U.S. 308 (2007) ................................................................13

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.,*
  396 F.3d 96 (2d Cir. 2005) ......................................................................7

*Zimmerman v. Diplomat Pharmacy, Inc.*,
  No. 2:16-CV-14005-AC-SDD, 2019 WL 3942483 (E.D. Mich. Aug. 20,
  2019) ........................................................................................................8

**Statutes**

15 U.S.C. § 78u-4(a)(4) ..........................................................................24

15 U.S.C. § 78u-4(a)(6) ............................................................................7

**Rules**

Fed. R. Civ. P. 23....................................................................................1

Fed. R. Civ. P. 54....................................................................................1

**Other Authorities**

William B. Rubenstein, 5 *Newberg on Class Actions* (5th ed. June 2021 Update) .... 9

## STATEMENT OF ISSUES PRESENTED

1.     Whether the Court should approve Lead Counsel's request for an award of attorneys' fees in the amount of 25% of the $12.5 million Settlement[1]; and

2.     Whether the Court should approve Lead Counsel's request for reimbursement of its litigation costs and expenses in the amount of $72,076.44 and reimbursement of Class Representative OPPRS in the amount of $2,500.

---

[1] All capitalized terms not defined herein have the meanings ascribed to them in the Stipulation of Settlement, and the exhibits appended thereto, dated April 16, 2021 (the "Stipulation") (ECF No. 79-1) or in the accompanying Declaration of Kristin J. Moody in Support of (1) Class Representative OPPRS' Motion For Final Approval of Proposed Class Action Settlement and Plan of Allocation and (2) Lead Counsel's Motion For An Award of Attorneys' Fees, Litigation Costs and Expenses and Award To Class Representative Pursuant To 15 U.S.C. § 78u-4(A)(4) ("Moody Decl." or "Moody Declaration").  All citations to "¶__" and "Ex. __" in this memorandum refer, respectively, to the paragraphs in, and exhibits to, the Moody Declaration. Unless otherwise indicated, all emphasis has been added and all internal citations and footnotes have been omitted.

## **CONTROLLING OR MOST APPROPRIATE AUTHORITIES**

### **Rules**

Federal Rule of Civil Procedure 23(h)

### **Cases**

*Rawlings v. Prudential-Bache Props., Inc.*, 9 F.3d 513 (6th Cir. 1993).

*Ramey v. The Cincinnati Enquirer, Inc.*, 508 F.2d 1188 (6th Cir. 1974).

Pursuant to Rules 23(h) and 54(d) of the Federal Rules of Civil Procedure, Court-appointed Lead Counsel, Berman Tabacco, respectfully submits this Memorandum in Support of its Motion For An Award of Attorneys' Fees, Litigation Costs and Expenses and Award To Class Representative Pursuant To 15 U.S.C. § 78u-4(A)(4).  Lead Counsel seeks approval of attorneys' fees in the amount of 25% of the $12.5 million Settlement Fund.  Lead Counsel also seeks reimbursement of $72,076.44 in litigation costs and expenses reasonably and necessarily incurred in prosecuting and resolving this action and reimbursement of $2,500 for the reasonable costs and expenses of Class Representative OPPRS.

## I.      PRELIMINARY STATEMENT

Lead Counsel have successfully negotiated a proposed $12.5 million class action Settlement with Defendants Sterling Bancorp, Inc. ("Sterling" or the "Company"), Gary Judd, Thomas Lopp, Michael Montemayor, Scott Seligman, Barry Allen, Jon Fox, Seth Meltzer, Sandra Seligman, Peter Sinatra, Benjamin Wineman, and Lyle Wolberg (the "Individual Defendants"), Piper Sandler Companies, and American Capital Partners, LLC (the "Underwriter Defendants") (collectively, "Defendants").  As discussed below and in the Moody Declaration, the Settlement provides for a $12.5 million payment in consideration for resolving all claims alleged in the above-captioned Action.  This represents an excellent outcome for the Settlement Class, providing meaningful relief to Settlement Class Members while

avoiding the substantial risks and delays of continued litigation, including many significant remaining hurdles Class Representative OPPRS would have had to overcome to prevail in this complex securities class action.

Notably, the Settlement represents more than 20% of the Settlement Class's *maximum* recoverable damages as estimated by OPPRS' damages consultant—a sizeable percentage when compared to other recent securities class action settlements.[2]  Moody Decl. ¶¶3, 35, 37, 46. This result is also far above the median recovery of 6.9% for settlements within the Sixth Circuit.[3]  *Id.*

Here, the Settlement provides a substantial and certain recovery for the Settlement Class and eliminates the risks of continued litigation—through discovery, class certification, summary judgment, trial, and appeals.  With no guarantee of recovery when the case was initiated, and opposed by highly skilled defense counsel, Lead Counsel devoted the necessary resources—in terms of time and money—to

---

[2] *See* Laarni T. Bulan & Laura E. Simmons, *Securities Class Action Settlements – 2020 Review and Analysis*, Cornerstone Research, at 6 (Figure 5) (2021), https://www.cornerstone.com/Publications/Reports/Securities-Class-Action-Settlements-2020-Review-and-Analysis (in 2020, the median securities class action settlement as a percentage of estimated damages was 5.8% for cases with estimated damages between $25-$74 million and 5.3% overall).

[3] *Id.* at 20 (from 2011-2020, the median settlement in the Sixth Circuit was $12.7 million, representing 6.9% of "Simplified Tiered Damages").  Cornerstone Research defines "simplified tiered damages" as a measure of potential shareholder losses "that allows for consistency across a large volume of cases, thus enabling the identification and analysis of potential trends."  *Id.* at 5.

achieve a strong result for the Settlement Class.  Moreover, Sterling's uncertain future due to the shutdown of its ALP program, widespread management shakeup, and the several pending regulatory and criminal investigations—draining its limited resources—heightened the risk that Lead Counsel's work on behalf of the Class would go wholly or partially uncompensated, regardless of the result.  Moody Decl. ¶¶9, 39.

Plaintiff's Counsel have worked on a contingent basis, without any compensation, to achieve this excellent result.  As detailed in the Moody Declaration, Lead Counsel vigorously pursued this litigation from its outset and were fully prepared to continue litigating had the parties not reached an agreement.  Among their efforts, Lead Counsel: (i) conducted a thorough legal and factual investigation into potential claims, including numerous witness interview with former Sterling employees who provided important information as detailed in the Complaint; (ii) researched and drafted a detailed 219-page, 479-paragraph Complaint with six counts against 14 defendants; (iii) opposed Defendants' motions to dismiss, which consisted of nine separate briefs totaling 124 pages and advancing numerous arguments; (iv) worked with accounting and damages consultants; (v) prepared a mediation statement to address the merits of the case and risks to defendants; (vi) analyzed complex banking laws; (vii) engaged in protracted and hard-fought settlement negotiations under the supervision of a highly regarded mediator, the Honorable Gerald E. Rosen (ret.) of JAMS, Inc; and (viii) prepared papers in support

of approval of the Settlement, which included working with the damages consultant to prepare a plan of allocation and notice to the Settlement Class.  Moody Decl. ¶4. Plaintiff's Counsel will continue to invest time and resources into implementing the Settlement.

For the reasons discussed herein, the requested 25% fee is eminently fair and reasonable, particularly in light of the significant risks undertaken by Lead Counsel and the favorable recovery obtained for the Settlement Class.  The 25% fee represents a lodestar multiplier of 1.05 based on the 4,334.85 hours expended by Counsel, which is well within the range typically approved by courts.  *See In re Cardinal Health Inc. Sec. Litig.*, 528 F. Supp. 2d 752, 767 (S.D. Ohio 2007) (observing that "[m]ost courts agree that the typical lodestar multiplier in a large . . . class action[] ranges from 1.3 to 4.5").  In addition, Lead Counsel also respectfully submit that the expenses for which they seek reimbursement, including expenses for research, mediation, and consultants, were reasonable and necessary for the successful prosecution of the Action.  The proposed Settlement represents an immediate and significant recovery for the Settlement Class.  After a vigorous notice plan approved by the Court, to date, no Settlement Class Member has objected to the requests for attorneys' fees or litigation expenses of Counsel and Class Representative.[4]   Moody Decl. ¶67.

---

[4] The Notice's deadline to provide objections is August 26, 2021.  Moody Decl. ¶67. Should any objections to the fee or expense requests be received after the date of this submission, Lead Counsel will address them on reply.

Accordingly, Lead Counsel requests that the Court approve the request for attorneys' fees and reimbursement of litigation expenses of Counsel and OPPRS.

## II.      FACTUAL AND PROCEDURAL BACKGROUND

The Moody Declaration, which accompanies this memorandum, details the factual and procedural background of this case and the events that led to the instant Settlement, as does the Memorandum of Law in Support of Class Representative OPPRS' Motion for Final Approval of Proposed Class Action Settlement and Plan of Allocation (the "Final Approval Brief"). The Court is respectfully referred to the Moody Declaration for a detailed description of, *inter alia*: the history of the Litigation (Moody Decl. ¶¶11-18); the efforts involved in the drafting and defending of the complaints (*id.* ¶¶4, 11, 14-15); the nature of the claims asserted (*id.* ¶¶7-10); the negotiations leading to the Settlement (*id.* ¶¶19-22); the risks and uncertainties of continued litigation (*id.* ¶¶31-39); and a description of the services Lead Counsel provided for the benefit of the Class (*id.* ¶¶4, 60).

## III.     THE REQUESTED FEE AWARD IS REASONABLE AND SHOULD BE APPROVED

### A.      Lead Counsel Are Entitled To An Award Of Attorneys' Fees From The Common Fund

"[A] lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorneys' fee from the fund as a whole." *N.Y. State Teachers' Ret. Sys. v. Gen. Motors Co.*, 315 F.R.D. 226, 243 (E.D. Mich.

2016) (quoting *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980)), *aff'd sub nom.*

*Marro v. N.Y. State Teachers' Ret. Sys.*, No. 16-1821, 2017 WL 6398014 (6th Cir.

Nov. 27, 2017).  In awarding attorneys' fees from a common fund, "a court must make

sure that counsel is fairly compensated for the amount of work done as well as for the

results achieved."  *Rawlings v. Prudential-Bache Props., Inc.*, 9 F.3d 513, 516 (6th

Cir. 1993).  In Sixth Circuit common fund cases, the standard for an attorneys' fee

award is that it be "reasonable under the circumstances."  *Id.*; *see also In re Delphi*

*Corp. Sec., Derivative & "ERISA" Litig.*, 248 F.R.D. 483, 502 (E.D. Mich. 2008).

### B.  Authority Supports Using The Percentage-Of-The-Fund Method To Analyze Lead Counsel's Request For Attorneys' Fees

Where, as here, a court awards fees from a common fund, courts generally favor

using the percentage-of-the-fund method to confirm the reasonability of a fee request.

*See Rawlings*, 9 F.3d at 515-16 (recognizing "the recent trend towards adoption of a

percentage of the fund method"); *Cardinal Health*, 528 F. Supp. 2d at 762 ("As a

threshold matter, the Court notes that the percentage approach is the current prevailing

method in securities class actions."); *In re Cardizem CD Antitrust Litig.*, 218 F.R.D.

508, 532 (E.D. Mich. 2003) (noting a "preference for the percentage-of-the-fund

method").

The percentage method is preferred in common fund cases as it aligns the

interests of class counsel and class members, eliminates time-consuming disputes

about the reasonableness of rates and hours using the lodestar method, and conserves

judicial resources. *See Rawlings*, 9 F.3d at 515. It also "more accurately reflects the result achieved" and "has the virtue of reducing the incentive for plaintiffs' attorneys to over-litigate or 'churn' cases." *In re Skelaxin (Metaxalone) Antitrust Litig.*, MDL No. 2343, 2014 WL 2946459, at *1 (E.D. Tenn. June 30, 2014). In other words, the percentage-of-the-fund method "'provides a powerful incentive for the efficient prosecution and early resolution of litigation.'" *See In re Se. Milk Antitrust Litig.*, No. 2:08-MD-1000, 2013 WL 2155387, at *2 (E.D. Tenn. May 17, 2013) (quoting *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.,* 396 F.3d 96, 121 (2d Cir. 2005)).

Finally, the percentage-of-the-fund method is particularly appropriate in Private Securities Litigation Reform Act of 1995 ("PSLRA") cases. *See* 15 U.S.C. § 78u-4(a)(6) ("Total attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a reasonable percentage of the amount of any damages and prejudgment interest actually paid to the class."); *see also In re Cendant Corp. Sec. Litig.*, 404 F.3d 173, 188 n.7 (3d Cir. 2005) ("PSLRA has made percentage-of-recovery the standard for determining whether attorneys' fees are reasonable").

### C.    The Fee Request Represents A Reasonable Percentage of the Common Fund

Lead Counsel's fee request of 25% of the Settlement Fund falls well within—and is lower than—the range of fees awarded in the Sixth Circuit on a percentage basis in complex common fund cases. *See Se. Milk*, 2013 WL 2155387, at *3 ("[33%] is

certainly within the range of fees often awarded in common fund cases, both nationwide and in the Sixth Circuit."); *In re Packaged Ice Antitrust Litig.*, No. 08-MDL-01952, 2011 WL 6209188, at *19 (E.D. Mich. Dec. 13, 2011) ("Importantly, the requested award of close to 30% appears to be a fairly well-accepted ratio in cases of this type and generally in complex class actions."); *In re Rio Hair Naturalizer Prods. Liab. Litig.*, No. MDL 1055, 1996 WL 780512, at *16 (E.D. Mich. Dec. 20, 1996) (recognizing acceptable range of fees to be 20% to 50% of the common fund).

Lead Counsel's fee request falls within the "range of reasonable attorneys' fees generally awarded in this Circuit" and in the Eastern District of Michigan in particular. *Cardizem*, 218 F.R.D. at 532 (30% is within the range of fees generally awarded in the Sixth Circuit); *see also Packaged Ice*, 2011 WL 6209188, at *19 (awarding "close to 30%"); *Zimmerman v. Diplomat Pharmacy, Inc.*, No. 2:16-CV-14005-AC-SDD, 2019 WL 3942483, at *1 (E.D. Mich. Aug. 20, 2019) (awarding 30% fee in $14.1 million settlement); *Palazzolo v. Fiat Chrysler Autos. N.V.*, No. 4:16-CV-12803-LVP-SDD, 2019 WL 2957143, at *1-2 (E.D. Mich. June 5, 2019) (awarding 30% of $14,750,000 settlement in securities class action, finding the award to be "fair and reasonable and consistent with awards in similar cases"); *In re Prandin Direct Purchaser Antitrust Litig.*, No. 2:10-cv-12141-AC-DAS, 2015 WL 1396473, at *4 (E.D. Mich. Jan. 20, 2015) (awarding one-third of $19 million settlement fund); *In re Caraco Pharm. Labs., Ltd. Sec. Litig.*, No. 2:09-CV-12830-AJT-DAS, 2013 WL

3213328, at *4 (E.D. Mich. June 26, 2013) (awarding 33% of settlement); *Bd. of Trs. of City of Birmingham Emps.' Ret. Sys. v. Comerica Bank*, No. 09-CV-13201, 2013 WL 12239522, at *6 (E.D. Mich. Dec. 27, 2013) (awarding 30% of $11 million settlement); *In re ProQuest Co. Sec. Litig.*, No. 2:06-cv-10619, 2009 WL 10702449, at *4 (E.D. Mich. Mar. 30, 2009) (awarding 30% of $20 million settlement in securities class action).[5]

### D. The Factors Considered By Courts In The Sixth Circuit Support Approval Of The Requested Fee

In the Sixth Circuit, courts consider whether a requested fee is reasonable under the circumstances. *See Rawlings*, 9 F. 3d at 517.  In reviewing the reasonableness of a fee request, the Sixth Circuit grants district courts "considerable latitude of discretion on the subject" of reasonable fees but has identified the following six factors that a court may consider:

1) the value of the benefit rendered to the corporation or its stockholders,

---

[5] Other district courts within the Sixth Circuit likewise routinely award greater percentages of common fund settlements than the 25% requested by Lead Counsel here.  *See Ind. State Dis. Council of Laborers & HOD Carriers Pension & Welfare Fund v. Omnicare, Inc.*, No. 2:06-cv-00026-WOB-CJS, 2019 WL 7483663, at *1 (E.D. Ky. June 27, 2019) (awarding one-third of $20 million settlement); *In re Polyurethane Foam Antitrust Litig.*, No. 1:10 MD 2196, 2015 WL 1639269, at *7 (N.D. Ohio Feb. 26, 2015) (30% of $147.8 million); *In re Regions Morgan Keegan Sec., Deriv. & ERISA Litig.*, No. 2:07-cv-02830-SHM-dkv, 2013 WL 12110279, at *7-8 (W.D. Tenn. Aug. 6, 2013) (awarding 30% of $62 million settlement fund); *see also* William B. Rubenstein, 5 *Newberg on Class Actions* (5th ed. June 2021 Update) ("Empirical studies show that . . . fee awards in class actions average around one-third of the recovery.").

2) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others, 3) whether the services were undertaken on a contingent fee basis, 4) the value of the services on an hourly basis [the lodestar cross-check], 5) the complexity of the litigation, and 6) the professional skill and standing of counsel involved on both sides.

*Ramey v. The Cincinnati Enquirer, Inc.*, 508 F.2d 1188, 1194-97 (6th Cir. 1974).

### 1. The Value Of The Benefit Rendered To The Settlement Class Supports The Requested Fee

The first *Ramey* factor requires courts to evaluate the benefit of the recovery for the class. "District courts in this Circuit widely regard [this] factor as the most important." *Cardinal Health*, 528 F. Supp. 2d at 764; *see also In re DPL Inc., Sec. Litig.*, 307 F. Supp. 2d 947, 951 (S.D. Ohio 2004) ("Herein, the award of attorneys' fees must be driven by the results obtained by Plaintiffs' counsel."). Lead Counsel submit that the $12.5 million Settlement here is an excellent result for the Settlement Class, both quantitatively and when considering the risk of obtaining a smaller recovery (or no recovery) had the Action proceeded through further litigation and trial.

Most significantly, the Settlement exceeds the average recovery in securities class actions of this size. In terms of damages, as determined by Lead Plaintiff's damages consultant, the Settlement represents a recovery of more than 20% of the Settlement Class's *maximum* most likely recoverable damages—assuming OPPRS prevailed on all claims against the Defendants. Moody Decl. ¶¶3, 35, 37, 46. This is a substantial result when compared to the median securities class action settlement as

a percentage of damages.  *See supra* note 3; Moody Decl. ¶3 & n.3.  Courts regularly approve settlements in PSLRA cases recovering a comparable or smaller percentage of maximum damages.  *See, e.g.*, *Gen. Motors Co.*, 315 F.R.D. at 237-38 (compiling cases approving settlements representing as little as 3.8% of total damages and approving settlement "represent[ing] approximately 11% to 25% of [maximum possible damages]" and finding it "a very favorable recovery compared to the approved settlements in other securities fraud actions").

The Settlement is also significant considering the risks of further litigation. "Securities litigation class actions are inherently complex," and "the complexity of these cases cannot be overstated." *New England Health Care Emps. Pension Fund v. Fruit of the Loom, Inc.*, 234 F.R.D. 627, 634 (W.D. Ky. 2006), *aff'd sub nom. Fidel v. Farley*, 534 F.3d 508 (6th Cir. 2008).  In addition to the inherent complexity, there were specific procedural and substantive hurdles here that Lead Plaintiff would have to overcome to prevail.  At the time the Settling Parties reached an agreement to settle the Action, the Defendants' motions to dismiss remained pending, and discovery, class certification, summary judgment, trial, and possible appeals all lay ahead. Moody Decl. ¶59.

Given this posture, if the Action moved forward, Class Representative OPPRS would face significant risks.  As discussed in the Moody Declaration, Defendants have raised numerous defenses, including that, *inter alia*, (i) the Complaint failed to satisfy

the particularity requirements of the securities laws, (ii) the Complaint failed to sufficiently plead facts showing any material misstatement or omission because the challenged statements were non-actionable corporate puffery and were not false and misleading when made, (iii) OPPRS failed to show a duty to disclose any allegedly omitted information, and (iv) OPPRS' scienter allegations failed because, *inter alia*, Defendants made statements involving only soft information without the intent to defraud and, rather than inferring scienter, the more compelling inference to be drawn from the Complaint was that Sterling disclosed the relevant risks before they materialized. Moody Decl. ¶16. Defendant Seligman also argued that OPPRS' claim under Section 20A of the Exchange Act, concerning sales of Sterling shares by certain of his trusts contemporaneously with purchases by OPPRS, was deficient. *Id*. Further, Defendants argued that the claims brought under Sections 11 and 12 of the Securities Act were deficient because they sounded in fraud and OPPRS failed to meet the higher pleading standard for such claims, because the claims inadequately pleaded untrue statements and omissions, and because the Underwriter Defendants were not statutory sellers. *Id*. Finally, the Control Person Defendants argued that control of Sterling and culpable participation was inadequately alleged under both Section 20(a) of the Exchange Act and Section 15 of the Securities Act and thus control person liability was insufficiently pleaded. *Id*. Defendants would further challenge the

damages alleged by OPPRS, arguing that actual damages were significantly less or nonexistent. *Id.* ¶32.

Thus, the Settlement Amount—$12.5 million—is an excellent result for Sterling investors that will provide a guaranteed recovery, while avoiding the many complexities and risks of further litigation.

### 2. Society's Stake In Rewarding Attorneys Who Enforce The Securities Laws Supports The Requested Fee

The second *Ramey* factor requires courts to consider "society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others." *Cardizem*, 218 F.R.D. at 533; *In re Telectronics Pacing Sys., Inc.*, 137 F. Supp. 2d 1029, 1043 (S.D. Ohio) ("Attorneys who take on class action matters serve a benefit to society and the judicial process by enabling such small claimants to pool their claims and resources."), *decision clarified*, 148 F. Supp. 2d 936 (S.D. Ohio 2001). As the Supreme Court has acknowledged, private enforcement of the federal securities laws is an important supplement to the work of the U.S. Securities and Exchange Commission and the U.S. Department of Justice. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007). Moreover, class actions are the only feasible way to privately enforce securities laws because "absent class actions, most individual claimants would lack the resources to litigate a case of this magnitude, and individual recoveries are often too small to justify the burden and expense of litigation." *Cardinal Health*, 528 F. Supp. 752 at 765-66.

13

Given the risk, complexity, and expense of litigating a securities class action such as this one, adequate compensation is necessary to "encourage and support other prosecutions, and thereby forward the cause of securities law enforcement and compliance." *Cardinal Health*, 528 F. Supp. 766; *see also Rankin v. Rot*s, No. 02-CV-71045, 2006 WL 1791377, at *2 (E.D. Mich. June 27, 2006) ("Adequately compensatory fee awards in successful class actions promote private enforcement of and compliance with important areas of federal law."). Indeed, without adequate compensation, it would be difficult to retain the caliber of lawyers willing and able to prosecute complex, risky, and extremely expensive securities class actions such as this one to a favorable conclusion.

Here, the Settlement in this case will provide meaningful relief to hundreds of investors, thereby promoting the public interest. Accordingly, this factor plainly weighs in favor of the requested award. *See Cardizem*, 218 F.R.D. at 534 ("Society's stake in rewarding attorneys who can produce such benefits in complex litigation such as in the case at bar counsels in favor of a generous fee[.]").

### 3. The Contingent Nature Of The Representation Supports The Requested Fee

"Whether counsel's services were undertaken on a[] contingent fee basis is another factor for the Court to consider in evaluating a fee request." *Delphi*, 248 F.R.D. at 503-04. Indeed, "[s]everal courts consider the risk of non-recovery the most important factor in the fee determination." *Cardinal Health*, 528 F. Supp. 2d at

14

766.   Here, Lead Counsel prosecuted the action entirely on a contingent basis, knowing that it could require a significant amount of time, the expenditure of thousands of attorney hours, and significant expense, yet ultimately result in a loss and no recovery.  *See* Moody Decl. ¶¶38, 59-60.  In fact, Counsel incurred $72,076.44 in costs and expenses litigating for the benefit of the Settlement Class, received no compensation during the entire time this action has been pending, and were never guaranteed recovery of these costs or the payment of any fee.  *Id*.  Moreover, further uncompensated work in connection with the Settlement and claims administration will still be required.

As a result of the risks and efforts undertaken by Lead Counsel, a $12.5 million recovery was obtained.  This factor thus supports a finding that the 25% fee request is reasonable.  *See Stanley v. U.S. Steel Co*., No. 04-74654, 2009 WL 4646647, at *3 (E.D. Mich. Dec. 8, 2009) ("A contingency fee arrangement often justifies an increase in the award of attorneys' fees.").

### 4.   The Hourly Value Of Lead Counsel's Services And Lodestar Cross-Check Support The Requested Fee

The fourth *Ramey* factor concerning the value of the services provided by counsel compares the fee request (as a percentage of the settlement fund) to counsel's lodestar[6]—often referred to as a "lodestar crosscheck."   When utilizing the

---

[6] Lodestar is determined by multiplying "the number of hours reasonably expended

percentage-of-the-fund method to award attorneys' fees, *see supra*, courts will look at the hours expended by counsel, either as a factor in the fee analysis, or as an independent "cross-check" to prevent counsel from receiving a windfall. *See Cardinal Health*, 528 F. Supp. 2d at 767; *Packaged Ice*, 2011 WL 6209188, at *18. Here, a lodestar cross-check fully supports Lead Counsel's 25% fee request. As detailed herein and in the Moody Declaration, Lead Counsel exerted substantial efforts in advancing this litigation in the face of aggressive and highly skilled defense attorneys. Moody Decl. ¶¶4, 11-22, 60. There are 14 defendants here who are represented by 11 separate law firms. *Id*. ¶61. In total, Counsel spent 4,334.85 hours of attorney and other professional support time prosecuting the Action for the benefit of the Settlement Class through July 31, 2021. *Id*. ¶50. Based on these hours, Counsel's lodestar is $2,989,705. *Id*.[7] Accordingly, the 25% fee request, which equates to $3,125,000, represents a multiplier of 1.05 of the total lodestar. *Id*. ¶46.

This multiplier is well within and below the range of multipliers commonly awarded in comparable litigation. Fee awards in class actions with substantial contingency risks generally represent positive multipliers of counsel's lodestar, often ranging up to four times the lodestar or even higher. *See Cardinal Health*,

---

on the case by a reasonable hourly rate." *Barnes v. City of Cincinnati*, 401 F.3d 729, 745 (6th Cir. 2005).

[7] The time and lodestar spent preparing the fee and expense application were excluded from the above values. Moody Decl. ¶47.

528 F. Supp. 2d at 767 (approving multiplier of approximately 5.9, and observing that "[m]ost courts agree that the typical lodestar multiplier" on a large class action "ranges from 1.3 to 4.5"); *Bailey v. AK Steel Corp.*, No. 1:06-cv-468, 2008 WL 553764, at \*2-3 (S.D. Ohio Feb. 28, 2008) (awarding multiplier of 3.04, noting that "[c]ourts typically . . . increas[e] the lodestar amount by a multiple of several times itself" and identifying a "normal range of between two and five"). *See also In re Nat'l Football League Players' Concussion Inj. Litig.*, No. 2:12-MD-02323-AB, 2018 WL 1635648, at \*9 (E.D. Pa. Apr. 5, 2018) (awarding multiplier of 2.96 excluding settlement implementation), *aff'd in relevant part*, 814 F. App'x 678 (3d Cir. 2020); *Gen. Motors Co.*, 315 F.R.D. at 243-44 (noting court agreement for typical multipliers ranging from 1.3 to 4.5 and awarding multiplier of 1.9). A multiplier of 1.05 is at the low end of multipliers typically awarded.[8]

---

[8] The Moody Declaration sets forth the hourly rates utilized by Counsel in calculating their lodestar. Moody Decl. ¶47; Declaration of Paul F. Novak ("Novak Decl.") (attached as Moody Decl. Ex. 1), at ¶5. These rates are within the range of reasonable hourly rates for attorneys working on sophisticated class action litigation in this District. *See, e.g.*, *In re Auto. Parts Antitrust Litig.*, No. 12-md-02311, 2017 WL 3525415, at \*4 (E.D. Mich. July 10, 2017). Additionally, as is customary in seeking a percentage-of-the-fund award and submitting data for a lodestar cross-check, Lead Counsel have included schedules identifying the lodestar by individual, position, billing rate, and hours billed. *See Se. Milk*, 2013 WL 2155387, at \*2 n.3; *see also In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 306 (3d Cir. 2005), *as amended* (Feb. 25, 2005) (the cross-check "need entail neither mathematical precision nor bean-counting").

### 5.    The Complexity Of The Litigation Supports Requested Fee

The fifth *Ramey* factor—the complexity of the litigation—is a significant factor

to be considered in determining the reasonableness of an attorneys' fee award.  *See*

*Delphi*, 248 F.R.D. at 504.  As numerous courts have recognized, "[s]ecurities

litigation class actions are inherently complex."  *New England Health*, 234 F.R.D. at

634; *Fogarazzo v. Lehman Bros., Inc.*, No. 03 Civ. 5194(SAS), 2011 WL 671745, at

*3 (S.D.N.Y. Feb. 23, 2011) ("[C]ourts have recognized that, in general, securities

[class] actions are highly complex.").  Indeed, "[t]he very nature of a securities fraud

case demands a difficult level of proof to establish liability.  Elements such as scienter,

reliance, and materiality of misrepresentation are notoriously difficult to establish."

*In re The Mills Corp. Sec. Litig.*, 265 F.R.D. 246, 263 (E.D. Va. 2009).

As detailed in the Moody Declaration, Lead Counsel and Class Representative

OPPRS faced significant risks to proving Defendants' liability, loss causation, and

damages.  Throughout the Action, Defendants vigorously contested OPPRS' claims—

*i.e.*, that they acted with the requisite scienter and that the statements at issue were

misleading or material to investors.  OPPRS' theory of liability, and the defenses

proffered in response by Defendants, have and would continue to require sophisticated

analysis of complex data and banking rules before the case could proceed to trial.

Indeed, the complexity, expense, and duration of continued litigation through class

certification, merits and expert discovery, summary judgment, trial, subsequent post-

trial motion practice, and a jury verdict would be significant.  Barring a settlement, there is no question that this case could be litigated for years, taking a considerable amount of court time and costing hundreds of thousands of additional dollars, with the possibility that the end result would be no better for the Settlement Class, and possibly worse, than the Settlement.  Moody Decl. ¶¶5, 31-39, 60-62.

While Class Representative believes the case is strong, it recognizes that there are significant risks to the Settlement Class.  Defendants presented several arguments in their multiple motion to dismiss and likely would have raised numerous arguments against class certification and defenses on the merits.  Additionally, to prove its claims, Class Representative would need to rely extensively on expert witnesses on issues ranging from banking and money laundering to loss causation and damages. *See* Moody Decl. ¶62.  If the trier of fact finds Defendants' experts more credible, this could negatively affect Class Representative's claims and potentially reduce the total compensable pool of damages to near zero.  *Id.*

While Class Representative believes that it has strong counterarguments on these points, the fact remains that the Court—at class certification, summary judgment, or trial—could have found such arguments persuasive, which could significantly reduce or eliminate recoverable damages.  The Settlement, therefore, provides sizeable and tangible relief to the Settlement Class now, without subjecting Settlement Class Members to the risks, duration, and expense of continued litigation.

Further, the complexity of the litigation supports the requested fee.

The foregoing complexities—coupled with the difficult nature of litigation under the PSLRA generally—made it far from certain that any recovery, let alone one valued at over 20% of the Settlement Class's estimated *maximum* most likely recoverable damages if OPPRS prevailed on all claims—would ultimately be obtained.

### 6. The Professional Skill And Standing Of Counsel Involved On Both Sides Supports The Requested Fee

Finally, courts in this Circuit evaluate the professional skill and standing of counsel in determining the reasonableness of a fee request. *See Cardizem*, 218 F.R.D. at 533. Here, the skill and standing of counsel for all parties was of the highest caliber. Lead Counsel have national standing and extensive experience in litigating securities and other complex class actions and has recouped billions of dollars for investors in securities class actions since the enactment of the PSLRA. *See* Moody Decl. Ex. 3. Local Counsel have significant experience with complex litigation in this district. *See* Novak Decl. Ex. A. Lead Counsel prosecuted the case vigorously, provided high quality legal services, and achieved a great result for the Settlement Class. Moreover, the effort and skill of Lead Counsel in investigating the claims, drafting the Complaint, opposing Defendants' motions to dismiss, and presenting a strong case throughout settlement discussions was essential to achieving a meaningful resolution of the Action. Moody Decl. ¶¶4, 11-22, 60. *See In re F & M Distributors, Inc. Sec. Litig.*,

20

No. 95-CV-71778-DT, 1999 U.S. Dist. LEXIS 11090, at *19 (E.D. Mich. June 29, 1999) ("The skill and competence of the attorneys for the plaintiffs was evident, especially when viewed on the basis of the results that they obtained in this case[.]").

The quality of opposing counsel is also important in evaluating the services rendered by Lead Counsel.  *See Delphi*, 248 F.R.D. at 504.  Defendants were represented by very skilled attorneys from 11 separate well-respected law firms.  Moody Decl. ¶61.  *See In re Adelphia Commc'ns Corp. Sec. & Deriv. Litig.*, 2006 WL 3378705, at *3 (S.D.N.Y. Nov. 16, 2006) ("The fact that the settlements were obtained from defendants represented by formidable opposing counsel from some of the best defense firms in the country also evidences the high quality of lead counsels' work."), *aff'd*, 272 F. App'x 9 (2d Cir. 2008).  In the face of this formidable opposition, Lead Counsel was able to each a settlement with Defendants at both a point in the litigation and on terms that were highly favorable to the Settlement Class.

Accordingly, the *Ramey* factors favor approval of the fee sought here.

### 7.     The Reaction of Class Members Supports the Fee Request

Furthermore, "the Class's reaction to the requested fee award is also important evidence of the fairness and reasonableness of the fee request." *Delphi*, 248 F.R.D. at 504; *In re Nationwide Fin. Servs. Litig.*, No. 2:08-CV-00249, 2009 WL 8747486, at *14 (S.D. Ohio Aug. 19, 2009) ("The reaction of the Class [only one objection out of nearly 125,000 individual notices sent] also supports the requested fee and expense

award.").   To date, there have been no objections to Lead Counsel's fee request. Moody Decl. ¶57.   Moreover, OPPRS, the institutional investor Lead Plaintiff and Class Representative, supports the fee request, and the requested fee is consistent with the fee agreement into which Lead Counsel and OPPRS entered at the outset of the litigation.   *See* Declaration of Ginger Sigler ("Sigler Decl.") (attached as Moody Decl. Ex. 2), at ¶8.   As such, this further supports the fee request.

## IV.   LEAD COUNSEL'S LITIGATION EXPENSES ARE REASONABLE AND SHOULD BE REIMBURSED

Lead Counsel also request reimbursement of the expenses Counsel incurred in prosecuting and resolving the Action in the total amount of $72,076.44.   "Under the common fund doctrine, class counsel is entitled to reimbursement of all reasonable out-of-pocket litigation expenses and costs in the prosecution of claims and settlement, including expenses incurred in connection with document production, consulting with experts and consultants, travel and other litigation-related expenses." *New England Health*, 234 F.R.D. at 634-35; *see also Se. Milk*, 2013 WL 2155387, at *8 ("[e]xpense awards are customary" in common fund cases).

The expenses for which Lead Counsel seek reimbursement are detailed in the Moody Declaration, which sets forth the specific categories of expenses and amounts incurred.   Moody Decl. ¶52; Novak Decl. ¶9.   The types of expenses for which Lead Counsel seek reimbursement were necessarily incurred in this Action and are of the type routinely charged to classes in contingent litigation as well as to hourly clients,

including expenses associated with, among other things, research, accounting and damages consultants, and mediation. *See, e.g.*, *Gen. Motors*, 315 F.R.D. at 244-45 (approving comparable expense categories and finding them "the type routinely billed by attorneys to paying clients in similar cases"); *Delphi*, 248 F.R.D. at 505 (same).

The largest portion of Lead Counsel's expenses, $30,170.75, went to pay for the services of consultants, including an accounting consultant who advised on the allegations in Complaint and a damages consultant who assisted OPPRS and Lead Counsel in connection with the investigation of the claims, the mediation and preparing the Plan of Allocation. Moody Decl. ¶52. Another large component of Lead Counsel's expenses was $10,845.97 in online research costs for legal research related to, inter alia, analyzing and bringing the claims and opposing the nine motions to dismiss. *Id.* Lead Counsel also incurred $21,980.27 in connection with the two-day formal mediation, as well as pre- and post-mediation discussions with Judge Rosen. *Id.* The other expenses for which Lead Counsel seek reimbursement include, among others, court fees, document-reproduction costs, PSLRA notice costs, and delivery expenses. *Id.*; *see also* Novak Decl. ¶9.

As set forth above, to date, there have been no objections to the maximum expense amount set forth in the Notice. Moody Decl. ¶57. Moreover, OPPRS, the institutional investor Lead Plaintiff and Class Representative, supports the expenses incurred by counsel are fair, reasonable, and necessary to the successful prosecution

and resolution of this Action.  Sigler Decl. ¶8.  Accordingly, reimbursement of the requested expenses is reasonable and appropriate.

## V.   CLASS REPRESENTATIVE OPPRS SHOULD BE REIMBURSED FOR ITS REASONABLE COSTS AND EXPENSES

Pursuant to the PSLRA, 15 U.S.C. § 78u-4(a)(4), an "award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class" may be made to "any representative party serving on behalf of a class." As this section of the PSLRA provides, Lead Counsel seek reimbursement for Class Representative OPPRS for its reasonable costs and expenses.  Lead Counsel seeks $2,500 in reimbursement for OPPRS for its representation of the class in this matter.

Courts routinely approve similar reimbursement to class representatives for their reasonable costs and expenses.  *See, e.g.*, *New England Health*, 234 F.R.D. at 635 (awarding one $5,000 and three $7,500 reimbursements and noting that Courts regularly "award such costs and expenses both to reimburse the named plaintiffs for expenses incurred through their involvement with the action and lost wages, as well as to provide an incentive for such plaintiffs to remain involved in the litigation and to incur such expenses in the first place"); *see also In re Provectus Biopharms, Inc. Sec. Litig.*, No. 3:14-cv-00338-PLR-HBG, 2016 WL 7735229, at *3 (E.D. Tenn. Dec. 12, 2016) (awarding $10,000 to lead plaintiff for "his reasonable costs and expenses (including lost wages) directly related to his representation of the Class").

As detailed in its declaration, the leadership role played by Class Representative

24

OPPRS necessitated its dedication of time and resources to setting case strategy, reviewing pleadings and briefs, communicating with Lead Counsel concerning ongoing case activities and developments, preparing for and participating in the mediation with Judge Rosen, and reviewing and approving the Settlement. Sigler Decl. ¶¶3-6. Thus, the steady guidance and oversight of Class Representative OPPRS made this substantial Settlement possible.

The Notice advised that reimbursement may be sought for the reasonable costs and expenses of OPPRS. To date, no objections have been received. Moody Decl. ¶57. For the foregoing reasons, the modest and reasonable reimbursement award of $2,500 sought for Class Representative OPPRS for its important and active role in this Action comports with the PSLRA and should be granted.

## VI. CONCLUSION

For the foregoing reasons, Lead Counsel respectfully requests that the Court approve attorneys' fees in the amount of 25% of the Settlement Fund, reimbursement of Counsel's $72,076.44 in expenses, and reimbursement of Class Representative OPPRS' $2,500 in costs and expenses.

///

///

///

Dated: August 12, 2021               Respectfully submitted,


*/s/ Kristin J. Moody*

Kristin J. Moody
**BERMAN TABACCO**
44 Montgomery Street, Suite 650
San Francisco, CA  94104
Telephone: (415) 433-3200
Facsimile: (415) 433-6382
Email:kmoody@bermantabacco.com

-and-

Patrick T. Egan
**BERMAN TABACCO**
One Liberty Square
Boston, MA 02109
Telephone: (617) 542-8300
Facsimile: (617) 542-1194
Email: pegan@bermantabacco.com

*Counsel for Class Representative Oklahoma Police Pension and Retirement System and Lead Counsel for the Settlement Class*

Paul F. Novak
Fisher Building
**WEITZ & LUXENBERG**
3011 West Grand Blvd., 24th Floor
Detroit, MI 48202
Telephone: (313) 800-4170
Facsimile: (646) 293-7992
Email: pnovak@weitzlux.com

*Local Counsel for Lead Plaintiff Oklahoma Police Pension and Retirement System and Interim Local Counsel for the Putative Class*

## <u>CERTIFICATE OF SERVICE</u>

I, Kristin J. Moody, of Berman Tabacco, hereby certify that on August 12, 2021, I electronically transmitted the foregoing via the Court's CM/ECF System, which will notify all counsel of record authorized to receive such filings.

*/s/ Kristin J. Moody*

Kristin J. Moody
**BERMAN TABACCO**
44 Montgomery Street, Suite 650
San Francisco, CA  94104
Telephone: (415) 433-3200
Facsimile: (415) 433-6382
Email:kmoody@bermantabacco.com