# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| OKLAHOMA POLICE PENSION AND RETIREMENT SYSTEM, Individually and on Behalf of All Others Similarly Situated,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>STERLING BANCORP, INC.; GARY JUDD; THOMAS LOPP; MICHAEL MONTEMAYOR; SCOTT SELIGMAN; BARRY ALLEN; JON FOX; SETH MELTZER; SANDRA SELIGMAN; PETER SINATRA; BENJAMIN WINEMAN; LYLE WOLBERG; PIPER SANDLER COMPANIES; AND AMERICAN CAPITAL PARTNERS, LLC,<br><br>　　　　　Defendants. | Case 5:20-cv-10490-JEL-EAS<br><br>Hon. Judith E. Levy<br>Hon. Mag. Judge Elizabeth A. Stafford<br><br>**CLASS ACTION** |

**DECLARATION OF KRISTIN J. MOODY IN SUPPORT OF
(1) CLASS REPRESENTATIVE OPPRS' MOTION FOR FINAL
APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT AND PLAN
OF ALLOCATION AND
(2) LEAD COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS'
FEES, LITIGATION COSTS AND EXPENSES AND AWARD TO CLASS
REPRESENTATIVE PURSUANT TO 15 U.S.C. § 78u-4(A)(4)**

I, Kristin J. Moody, declare:

1.      I am a partner in the San Francisco office of Berman Tabacco, the Court-appointed Lead Counsel[1] for Class Representative Oklahoma Police Pension and Retirement System ("Class Representative" or "OPPRS") and the Court-approved Settlement Class in the above-captioned matter.  I submit this declaration in support of (1) Class Representative OPPRS' Motion for Final Approval of Proposed Class Action Settlement and Plan of Allocation and (2) Lead Counsel's Motion For An Award of Attorneys' Fees, Litigation Costs and Expenses and Award To Class Representative Pursuant To 15 U.S.C. § 78u-4(A)(4).

**PRELIMINARY STATEMENT**

2.      Class Representative OPPRS seeks final approval of the proposed class action Settlement with Defendants Sterling Bancorp, Inc. ("Sterling" or the "Company"), Gary Judd, Thomas Lopp, Michael Montemayor, Scott Seligman, Barry Allen, Jon Fox, Seth Meltzer, Sandra Seligman, Peter Sinatra, Benjamin Wineman, and Lyle Wolberg (the "Individual Defendants"), Piper Sandler Companies, and American Capital Partners, LLC (the "Underwriter Defendants") (collectively, "Defendants").  As discussed below, the Settlement before the Court

---

[1] All capitalized terms not defined herein have the meanings ascribed to them in the Stipulation of Settlement, and the exhibits appended thereto, dated April 16, 2021 (the "Stipulation") (ECF No. 79-1).

1

for approval provides for a $12,500,000 payment to the Settlement Class[2] in consideration for resolving all claims alleged in the above-captioned Action. The proposed Settlement was achieved only after intense, arm's-length negotiations between the parties, who had substantial information about the facts and risks of the case, and with the rigorous assistance of noted mediator Hon. Gerald E. Rosen (ret.) of JAMS, Inc. The proposed Settlement represents an immediate and significant recovery for the Settlement Class.

3.     Based upon their experience, their evaluation of the facts and the applicable law, their recognition of the substantial amount provided under the

---

[2] The Settlement Class is defined in the April 28, 2021 Order Preliminarily Approving Settlement and Providing for Notice ("Preliminary Approval Order"), ECF No. 80, PageID.1641, at ¶1, as:

> [A]ll Persons who purchased or otherwise acquired Sterling common stock during the Settlement Class Period, November 17, 2017 through and including March 17, 2020, including shares sold in the initial public offering that commenced on November 17, 2017, and were damaged as a result. Excluded from the Settlement Class are Defendants herein; members of the immediate family of each of the Defendants; any person, firm, trust, corporation, officer, director, or other individual or entity in which any Defendant has a controlling interest or which is related to or affiliated with any of the Defendants, including trusts associated with members of the Founding Family and the selling shareholders; and the legal representatives, agents, affiliates, heirs, successors-in-interest, or assigns of any such excluded party. Also excluded from the Settlement Class are any Persons who otherwise satisfy the above requirements for membership in the Settlement Class, but who exclude themselves by submitting a valid request for exclusion in accordance with the requirements set forth in the Notice.

Settlement and of the risks and expenses of protracted litigation against Defendants, Lead Counsel and Class Representative submit that the proposed Settlement is an excellent result and in the best interests of the Settlement Class.  The Settlement represents more than 20% of the Settlement Class's maximum recoverable damages as estimated by Class Representative's damages consultant.  This is a substantial result compared to estimated damages of 5.3% for securities class actions overall and of 6.9% for cases within the Sixth Circuit.[3]

4.     As detailed below, OPPRS and Lead Counsel secured the Settlement due to their vigorous efforts over the course of the litigation.  Among their efforts, OPPRS and Lead Counsel: (i) conducted a thorough legal and factual investigation into the Settlement Class' claims, including numerous witness interviews with former Sterling employees who provided important information as detailed in the Complaint, detailed reviews of Sterling public filings, annual reports, press releases, and other publicly available information, and review of analysts' reports and articles relating to Sterling; (ii) researched and drafted a detailed 219-page, 479-paragraph

---

[3] *See* Laarni T. Bulan & Laura E. Simmons, *Securities Class Action Settlements – 2020 Review and Analysis*, Cornerstone Research, at 6 (Figure 5) (2021), https://www.cornerstone.com/Publications/Reports/Securities-Class-Action-Settlements-2020-Review-and-Analysis (reporting that in 2020, the median securities class action settlement as a percentage of estimated damages was 5.3% for cases with estimated damages between $25 million and $74 million as well as 5.3% overall).  Moreover, within the Sixth Circuit, from 2011-2020, the median settlement was $12.7 million, representing 6.9% of "Simplified Tiered Damages."  *Id.* at 20.

3

Amended Class Action Complaint for Violations of Federal Securities Laws (the "Complaint" or "Compl.") with six counts against 14 defendants; (iii) opposed Defendants' motions to dismiss, which consisted of nine separate briefs totaling 124 pages and advancing numerous arguments; (iv) had extensive conferral with, and analysis by, damages and accounting consultants; (v) prepared a mediation statement to address the merits of the case and risks to defendants; (vi) analyzed complex banking laws; (vii) engaged in protracted and hard-fought settlement negotiations under the supervision of a highly-regarded mediator, the Honorable Gerald E. Rosen (ret.) of JAMS, Inc; and (viii) prepared papers in support of the approval of the Settlement, which included consultation with the damages consultant regarding a fair and reasonable plan of allocation and notice to the Settlement Class.

5.      Further, in reaching the Settlement, Class Representative and Lead Counsel weighed, among other things, the substantial and certain cash benefit to the Settlement Class against: (i) the difficulties involved in proving materiality, falsity, and damages; (ii) the difficulties in overcoming Defendants' anticipated challenges to class certification, and the delays involved in the inevitable appeals of certification; (iii) the fact that, even if Class Representative prevailed at summary Judgment and trial, any monetary recovery could have been less than the Settlement Amount and the delays that would follow even a favorable judgment including

4

appeals; and (iv) questions over whether Defendants would be in a position to satisfy a judgment at or above the Settlement Amount in the future.

6. On April 28, 2021, this Court preliminarily approved the Settlement, provisionally certified the Settlement Class, and approved the notice program to the Settlement Class. *See* ECF No. 80. To date, while the deadline to submit objections and requests for exclusion from the Settlement Class has not yet passed, no Settlement Class Member has objected to the Settlement or Plan of Allocation, and the Court-authorized Claims Administrator, A.B. Data, Ltd., has not received any requests for exclusion.

**SUMMARY OF PLAINTIFF'S CLAIMS**

7. This case is about the dramatic rise and crushing fall of Sterling's core loan program, the Advantage Loan Program (or "ALP"), which represented more than 70% of the Company's assets. Compl. ¶¶1, 65. The ALP peddled high down payment, lower documentation mortgages to foreign nationals and recent immigrants. Compl. ¶¶84-87. Sterling and the ALP operated in a highly regulated environment and were subject to residential lending regulations and strict Bank Secrecy Act and Anti-Money Laundering laws ("BSA/AML"). Compl. ¶¶68-83. These laws required that Sterling maintain robust, sophisticated, and effective underwriting, internal controls, and due diligence systems—as well as

documentation and procedures to verify borrowers' identity, income, ability to repay, and sources of funds.  *Id.*

8.    In this heightened regulatory environment with a high-risk product experiencing exponential growth, Defendants repeatedly touted, *inter alia*, the ALP and its "disciplined" and "conservative" loan underwriting, risk management, and internal controls—including specific practices, such as "a thorough review of [borrowers'] ability to repay, liquidity analysis and face-to-face customer interaction," a "financial documentation process," and "established processes and procedures intended to identify, measure, monitor, report and analyze the types of risk to which we are subject, including credit, liquidity, operational, [and] regulatory compliance."  Compl. ¶¶4-5.  Defendants also touted the Company's compliance with BSA/AML regulations and responsible growth.  Compl. ¶¶5-6.

9.    However, as alleged by OPPRS and relayed by former employees, underwriting, internal controls, and risk management for the ALP was practically non-existent; the Company was not in compliance with BSA/AML and residential lending laws; there was almost no documentation required to verify ALP borrowers' identity, employment, or sources of cash they used to obtain the mortgages; and the ALP loans were riddled with red flags of money laundering.  Compl. ¶¶7-8. Ultimately, after OPPRS brought suit, Sterling was forced to shut down the ALP due to widespread issues with its loan origination process; numerous employees were

terminated or abruptly resigned; and Sterling and the ALP's lending practices were subject to an internal review and are currently under a criminal U.S. Department of Justice ("DOJ") investigation and formal investigations by the Office of the Comptroller of the Currency ("OCC") and the U.S. Securities and Exchange Commission ("SEC"). Compl. ¶1; Sterling, Quarterly Report for Period Ended Mar. 31, 2021 (Form 10-Q), at 34, 40, 59 (May 14, 2021).

10.    OPPRS alleges in the Complaint that Defendants made false and misleading statements, beginning with the IPO and thereafter, about the ALP being BSA/AML compliant. Compl. ¶143. Further, OPPRS alleges that Defendants made false and misleading statements about the Company's alleged disciplined and conservative underwriting procedures, strong risk management practices, internal controls, asset quality, strong financial results, and growth driven by Sterling's ALP residential mortgage loan growth. Compl. ¶¶136-42. The Complaint also alleges Securities Act of 1933 (the "Securities Act") claims on behalf of those who purchased or otherwise acquired shares in Sterling's November 2017 IPO—strict liability and negligence claims that do not sound in fraud. Compl. ¶¶432-79. The Securities Act claims allege that Sterling's Registration Statement contained untrue statements regarding, *inter alia*, the ALP and the Company's financial results and growth, internal controls, and BSA/AML compliance. Compl. ¶¶438-45. In addition, the Complaint alleges a claim against defendant Seligman pursuant to

7

Section 20A of the Securities Exchange Act of 1934 (the "Exchange Act") based on insider sales of Sterling shares contemporaneously with purchases of Sterling shares by OPPRS.   Compl. ¶¶424-31.   Finally, the Complaint alleges control person liability under both the Securities Act and the Exchange Act.   Compl. ¶¶417-23, 472-79.   OPPRS alleges that when the false and misleading nature of Defendants' statements and omissions was publicly revealed, the price of Sterling common stock dropped significantly, causing Sterling investors substantial financial harm. Compl. ¶¶399-402.

**PROCEDURAL HISTORY**

11.    On February 26, 2020, after an extensive investigation, OPPRS filed the initial 31-page, 114-paragraph Class Action Complaint for Violations of the Federal Securities Laws in this Court against Sterling, certain of its directors and officers, and certain underwriters of Sterling's initial public offering (the "IPO"). ECF No. 1.   In its initial complaint, OPPRS asserted violations of the federal securities laws by Sterling, the holding company of Sterling Bank and Trust, based on Sterling's misrepresentations about, *inter alia*, the Company's loan underwriting, risk management and internal controls, including repeatedly touting its strict underwriting, asset quality and the loans made through ALP, its core loan program

12.    On March 19, 2020, the Court reassigned this Action to the Honorable Judge Judith E. Levy for all purposes.   ECF No. 3.

8

13.     On May 1, 2020, pursuant to the lead plaintiff provisions of the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), this Court appointed Oklahoma Police Pension and Retirement System as Lead Plaintiff and approved Lead Plaintiff's choice of Berman Tabacco as Interim Lead Counsel and Weitz & Luxenberg as Interim Local Counsel in this action.   ECF No. 18.   In the Court's April 28, 2021 Preliminary Approval Order, for purposes of settlement, Berman Tabacco was appointed by the Court as Lead Counsel and Class Counsel, and OPPRS was appointed by the Court as Class Representative for purposes of settlement.   *See* ECF No. 80.

14.     On July 2, 2020, after further extensive investigation by Lead Counsel, OPPRS filed its 219-page, 479-paragraph Complaint alleging six counts against Defendants, which is the operative complaint in this Action.   ECF No. 36.   The Complaint alleges violations of Sections 10(b), 20(a) and 20A of the Exchange Act and Sections 11, 12(a)(2) and 15 of the Securities Act on behalf of all those who purchased or otherwise acquired Sterling (SBT) common stock, from November 17, 2017 through and including March 17, 2020, including shares sold in the IPO which commenced on November 17, 2017, and were damaged as a result.

15.     Both before and after filing the Complaint, OPPRS, through Lead Counsel, undertook a thorough investigation, including, *inter alia*: (i) consultation with  accounting and damages consultants; (ii) detailed reviews of Sterling's public

filings, annual reports, press releases and other public statements; (iii) review of analysts' reports and articles in the financial press relating to Sterling; (iv) research of the applicable law with respect to the claims asserted in the Complaint and the potential defenses thereto; (v) legal research and briefing in opposition to Defendants' motions to dismiss; and (vi) interviews with numerous former employees of the Company. Indeed, the Complaint contains important information from seven former employees interviewed as part of Lead Counsel's expansive investigation. Compl. ¶¶326-47. In addition, the investigation underlying the Complaint required analysis of complex federal banking laws to reveal Sterling's multifaceted compliance failures.

16. On September 22, 2020, all named Defendants moved to dismiss the Complaint, filing nine separate briefs constituting 124 pages. *See* ECF Nos. 55-63. Defendants argued that the Court should dismiss the Complaint because, *inter alia*, the Complaint failed to satisfy the particularity requirements of the securities laws, the Complaint failed to sufficiently plead facts showing any material misstatement or omission because the challenged statements were non-actionable corporate puffery and were not false and misleading when made, OPPRS failed to show a duty to disclose any allegedly omitted information, and OPPRS' scienter allegations failed because, *inter alia*, Defendants made statements involving only soft information without the intent to defraud and, rather than inferring scienter, the more

10

compelling inference to be drawn from the Complaint was that Sterling disclosed the relevant risks before they materialized. ECF Nos. 55-63. In addition, defendant Seligman argued that OPPRS' claim under section 20A of the Exchange Act, concerning sales of Sterling shares by certain of his trusts contemporaneously with purchases by OPPRS, was deficient. ECF No. 56. Further, Defendants argued that the claims brought under Sections 11 and 12 of the Securities Act were deficient because they sounded in fraud and OPPRS failed to meet the higher pleading standard for such claims, because the claims inadequately pleaded untrue statements and omissions, and because the Underwriter Defendants were not statutory sellers. ECF Nos. 57-63. Finally, the Control Person Defendants argued that control of Sterling was inadequately alleged under both Section 20(a) of the Exchange Act and Section 15 of the Securities Act. ECF Nos. 55-56, 58-60, 62-63.

17.     On November 25, 2020, Judge Judith E. Levy referred the pending motions to dismiss to Magistrate Judge Elizabeth A. Stafford. ECF No. 66.

18.     On December 4, 2020, OPPRS filed a 124-page omnibus opposition to Defendants' motions to dismiss. ECF No. 69. Opposing Defendants' motions to dismiss was a particularly significant undertaking, given both the large number of motions and the extensive and complex arguments in those motions.

## SETTLEMENT NEGOTIATIONS

19.     During the briefing on the motions to dismiss, the parties conferred and agreed to engage in mediation talks under the close supervision of an experienced, noted mediator, Hon. Gerald E. Rosen (Ret.) of JAMS, Inc.  Judge Rosen, former Chief Judge, U.S. District Court for the Eastern District of Michigan, served for 27 years on the federal bench prior to becoming a mediator.  *See Gerald E. Rosen*, JAMS ADR, https://www.jamsadr.com/rosen/.  Among the settlements he facilitated was the incredibly complex Detroit bankruptcy, for which he served as Chief Judicial Mediator.  *Id.*  As a mediator, his "practice has focused on mediation, arbitration, and neutral evaluation of complex business/commercial disputes, Multi-District Litigation (MDL) and class action matters, False Claims Act litigation, as well as anti-trust and consumer cases." *Id.*

20.     Prior to the mediation sessions, the parties exchanged detailed mediation statements, including their positions on liability and damages.  In addition, the parties held multiple discussions (both jointly and independently) with Judge Rosen.

21.     On January 11 and 12, 2021, the parties, including two representatives from OPPRS, engaged in intensive, arm's-length settlement negotiations.  At the close of the second day, the parties reached an agreement in principle as to certain terms of the Settlement, including the settlement consideration of $12,500,000.

22.     On January 26, 2021, the parties executed an agreement in principle on the substantive terms of the Settlement.  The parties then negotiated a stipulation of settlement, which they executed on April 16, 2021.  The Stipulation was thereafter submitted to the Court in connection with the Class Representative's unopposed motion for preliminary approval.  ECF No. 79-1.

## COMPLIANCE WITH PRELIMINARY APPROVAL ORDER

23.     On April 28, 2021, the Court issued its Preliminary Approval Order and ordered notice to the Settlement Class.  ECF No. 80.  For purposes of settlement, the Court appointed Berman Tabacco as Lead Counsel and Class Counsel, OPPRS as Class Representative, and A.B. Data, Ltd. as the Claims Administrator.  *Id.*  Class Representative OPPRS retained A.B. Data, an experienced claims administrator, after a competitive bidding process.  As discussed herein and in the accompanying declaration of A.B. Data, the Claims Administrator has carried out all of the steps set forth in the Preliminary Approval Order, including providing notice to potential Settlement Class Members.  *See* Declaration of Adam D. Walter Regarding: (A) Mailing of The Notice and Claim Form; (B) Publication of The Summary Notice; and (C) Report on Requests For Exclusion and Objection ("A.B. Data Decl.") (attached hereto as Exhibit 4), at ¶¶2-12 & Exs. A-C.

24.     Following the Court's preliminary approval of the Settlement, the Class Representative, Lead Counsel, and the Claims Administrator implemented the notice

13

plan.  Pursuant to the Court's Preliminary Approval Order, the Notice of Pendency of Class Action and Proposed Settlement, Final Approval Hearing, and Motion for Attorneys' Fees and Reimbursement of Litigation Expenses (the "Notice") and the Proof of Claim and Release Form ("Claim Form") (the Notice and Claim Form are referred to collectively herein as the "Notice Packet") were sent via U.S. Mail on May 12, 2021 to all registered holders of Sterling common stock during the Settlement Class Period, as identified by Sterling's transfer agent, and to a list of the largest and most common banks, brokers, and other nominees maintained by the Claims Administrator.  *See* A.B. Data Decl. ¶¶2-4.  In addition, A.B. Data also submitted the Notice to the Depository Trust Company ("DTC") to post on their Legal Notice System, which offers DTC member banks and brokers access to a comprehensive library of notices concerning DTC-eligible securities.  *Id.* at ¶5.

25.    The Preliminary Approval Order and Notice required that nominees who purchased or otherwise acquired Sterling common stock during the Settlement Class Period, within ten (10) days of receipt of the Notice, either: (i) send a copy of this Notice and the Claim Form by First-Class Mail to all such Persons; or (ii) provide a list of the names and addresses of such Persons to the Claims Administrator.  *See* A.B. Data Decl. ¶6 & Ex. A (Notice) at 11 (Question 23).

26.    A.B. Data has received an additional 2,492 names and addresses of potential Settlement Class Members from individuals or brokerage firms, banks,

institutions and other nominees and has also received requests from brokers and other nominee holders for 2,572 Notice Packets, which the brokers and nominees are required to mail to their customers.  A.B. Data Decl. ¶7.  A.B. Data has received 529 Notice Packets returned by the United States Postal Service as undeliverable.  Of these, 5 had forwarding addresses and were promptly re-mailed to the updated address and the remaining 524 were processed through TransUnion to obtain an updated address.   Of these, 339 new addresses were obtained and A.B. Data promptly re-mailed to these potential Settlement Class Members.  *Id.* at ¶8.  A total of 9,580 Notice Packets have been mailed to potential Settlement Class Members and their nominees.  *Id.* at ¶9.

27.    In addition to mailing the Notice, on May 12, 2021, the Summary Notice was published in *Investor's Business Daily* (a publication focused on the stock market, business, and finance) and in a press release issued through *PR Newswire* on May 12, 2021.  *See* A.B. Data Decl. ¶10 & Exs. B-C.  Both of these included contact information for the Claims Administrator and Lead Counsel, as well      as      the      address      of      the      settlement      website, www.SterlingBancorpSecuritiesLitigation.com.

28.    The Notice apprises Class Members of the nature and pendency of the Action, the definition of the Settlement Class to be certified, the class claims and issues, and the claims that will be released.  In addition, the Notice provided

Settlement Class Members with the following information: (i) the Settlement consideration; (ii) the parties' reasons for proposing the Settlement; (iii) the estimated average recovery per affected common share; (iv) the attorneys' fees and expenses sought; (v) the contact information of Lead Counsel's representatives who are available to answer questions; (vi) the right of Settlement Class Members to participate in the Settlement, object to any aspect of the Settlement, the Plan of Allocation, and/or the fee and expense application, or exclude themselves from the Settlement; (vii) the dates and deadlines for certain Settlement-related events; (viii) the rationale behind the Plan of Allocation and the impact of the Plan of Allocation on Class Representative OPPRS; (ix) how to submit Claim Forms, object, or opt out of the Settlement and timing to do so; and (x) that the Claims Administrator will maintain a toll-free number to answer questions as well as a website where, among other things, key pleadings in this case may be viewed.  The Notice specifically informed recipients that Lead Counsel intended to apply for an award of attorneys' fees not to exceed twenty-five percent (25%) of the Settlement Amount and for reimbursement of litigation expenses in an amount not to exceed $90,000.00.

29.     The settlement website,[4] went live on May 12, 2021.  A.B. Data Decl.

¶12.  The website contains the Notice, Claim Form, and Stipulation, as well as copies

of relevant Court documents including the Complaint; OPPRS' motion for

preliminary approval and supporting declaration; and the Court's Preliminary

Approval Order.  *Id*.  The Class Representative's Motion for Final Approval of

Proposed Class Action Settlement and Plan of Allocation and supporting papers and

Lead Counsel's Motion For An Award of Attorneys' Fees, Litigation Costs and

Expenses and Award To Class Representative Pursuant To 15 U.S.C. § 78u-4(A)(4)

and supporting papers will also be posted on the website when filed.  *Id.*

30.     On August 10, 2021, this Court issued an order postponing the final

approval hearing to September 23, 2021.  ECF No. 91.  That day, Lead Counsel and

the claims administrator promptly updated the settlement website and notice form

on the website to reflect the new final approval Zoom hearing date and time.  A.B.

Data Decl. ¶13.

**RISK FACTORS**

31.     In connection with the motions to dismiss and the mediation, the parties

exchanged extensive analyses of the legal and factual issues, including issues

relating to, *inter alia*, falsity, scienter, and damages.  For example, Defendants claim

---

[4] *See* www.SterlingBancorpSecuritiesLitigation.com.

that none of the challenged statements were false and misleading when made and that certain allegations are either corporate mismanagement or puffery, which are not actionable.  Defendants also claim that OPPRS' scienter allegations fail, including the allegations based on stock sales.  Defendants would also likely argue that even if OPPRS could establish liability, Settlement Class Members will have trouble showing what part of the stock-price decline is attributable to the alleged fraud rather than other Company-specific bad news.

32.    Lead Counsel, who have a decades of experience in the prosecution and resolution of complex class actions and securities litigation, have carefully evaluated the merits of the case and the proposed Settlement.  Lead Counsel believe that the case was strong and that there was sufficient evidence to proceed to the jury on the claims.  They recognize, however, that Defendants would strenuously challenge the allegations and proof regarding each element of the causes of action, including falsity, scienter, and loss causation, and that certification of the class would be firmly contested.  Defendants would further challenge the damages alleged by OPPRS, arguing that actual damages were significantly less or nonexistent.  Lead Counsel recognize that these challenges could pose significant risks regarding the ability to prevail and the scope of damages if the case were to proceed to trial.  Moreover, the Company faced serious headwinds that could impact its overall resources and its ability to reach a settlement in the future.  Based on their extensive experience, Lead

Counsel understand the risks of litigation and the fact that, even where a plaintiff's case appears strong, there is no guarantee against a defense verdict. As such, Lead Counsel believes the Settlement is fair, reasonable, and adequate, and in the best interest of the Settlement Class.

33.     Continued litigation of this complex Action—through fact discovery, expert discovery, class certification briefing, dispositive motion practice, pre-trial preparation, trial, a jury verdict, post-trial motion practice, and post-trial appeals— would have undoubtedly been a long and expensive endeavor. This complex action involves many defendants and a range of disputed issues including issues of falsity, damages, loss causation, scienter, and class certification. While Class Representative and Lead Counsel believe that the Class has meritorious claims, Defendants have denied, and continue to deny, each and all of the claims and contentions asserted.

34.     Barring a settlement, there is no question that this case could be litigated for years, taking a considerable amount of court time and costing hundreds of thousands of additional dollars, with the possibility that the end result would be no better for the Settlement Class, and possibly worse, than the Settlement.

35.     In preparation for mediation, Lead Counsel conferred with a damages consultant to evaluate loss causation and damages issues. To estimate price inflation during the Settlement Class Period, Class Representative's damages consultant

19

performed an event study of the alleged corrective events, and Company-specific returns on each date were estimated using a regression analysis, which measures the relationship between Sterling stock returns and (i) changes in market-wide factors that would be expected to impact all stocks; and (ii) changes in industry-wide factors that would be expected to impact stock in Sterling's sector. Then, the Company-specific returns (*i.e.*, net of market and industry effects) observed on each alleged corrective event date formed the basis of the estimate of price inflation present during the Settlement Class Period. Then, to estimate aggregate class-wide damages under Section 10(b), the timing and quantity of investor transactions in Sterling common stock during the Settlement Class Period were estimated using the proportional "80/20 Multi-Trader Model," which posits two active traders with different holdings and propensities to trade. The so-called "80/20" split between the two sets of traders specifies a large set of "slow" traders (*i.e.*, they hold 80% of the shares available, but trade 20% of the volume) and a small set of "fast" traders (*i.e.,* they hold 20% of shares available, but trade 80% of the volume). Applying the theory of per-share damages to the daily trading behavior predicted by the 80/20 Multi-Trader Model aggregate damages under Section 10(b) are estimated to be $61.4 million, based on 15.2 million damaged shares. The $12.5 million recovery under the proposed Settlement constitutes 20.3% of the maximum likely recoverable Section 10(b) damages.

36.    In addition, Lead Counsel's damages consultant also performed an analysis of damages under Section 11 of the Securities Act.  This analysis assumed that all shares purchased during the Settlement Class Period were traceable to the IPO registration statement, excluded any shares repurchased by the Company, and provided an offset for any negative causation defenses.  Then, applying the statutory formula for damages to the daily trading behavior predicted by the 80/20 Multi-Trader Model aggregate damages under Section 11 are estimated to be $50.9 million, based on 14.9 million damaged shares.  The $12.5 million recovery under the proposed Settlement constitutes approximately 24.6% of maximum likely recoverable Section 11 damage.

37.    Moreover, as there is no double recovery for both Section 11 and Section 10(b) damages, the maximum likely recoverable damages are $61.4 million if Class Representative prevailed on **all claims** against the Defendants.  Thus, the $12.5 million recovery under the proposed Settlement constitutes 20.3% of the maximum likely recoverable if the Class Representative prevailed on **all claims**.

38.    Furthermore, the $12.5 million in cash is a substantial benefit, as compared to the risk that a smaller recovery, or no recovery, would be achieved after a trial and appeals, possibly years in the future.  If there were no Settlement and the Class Representative failed to establish any essential legal or factual element of his claims, neither the Class Representative nor any members of the proposed

Settlement Class of Sterling investors would recover anything.  Also, if the Defendants were successful in proving any of their defenses, the proposed Settlement Class likely would recover substantially less than the amount provided in the Settlement, or nothing at all.

39.    Further, even in the event of success at trial, a question exists as to collectability of any verdict, as it is unclear whether Defendants would be in a position to satisfy a judgment at or above $12.5 million at that time.  Indeed, the Company faces serious issues impacting its future sustainability and overall resources and, thus, its potential ability to pay a settlement or verdict in the future. The Company has terminated the ALP—which had been the driver of most of its revenue—and is embroiled in several regulatory and criminal investigations, including by the DOJ, SEC, and OCC, which are also draining its limited resources.

**PLAN OF ALLOCATION**

40.    Lead Counsel have conferred extensively with their damages consultant regarding the claims asserted in the Complaint, in preparation for mediation, and to prepare the proposed plan of allocation of the Net Settlement Fund (the "Plan of Allocation"), which is described in the Notice.

41.    The Plan of Allocation assumes that the price of Sterling Common Stock was artificially inflated throughout the Settlement Class Period.  The computation of the estimated alleged artificial inflation in the price of Sterling

common stock during the Settlement Class Period is based on certain misrepresentations alleged by OPPRS and the price change in the stock, net of market- and industry-wide factors, in reaction to the public announcements that allegedly corrected the misrepresentations alleged by OPPRS.   The Plan of Allocation sets forth Recognized Loss estimates based on OPPRS' determination, from conferring with its damages consultant, that corrective disclosures removed artificial inflation from the price of Sterling Common Stock on December 9, 2019, March 9, 2020, and March 18, 2020 (the "Corrective Disclosure Dates"). Thus, in order for a Settlement Class Member to have a Recognized Loss under the Plan of Allocation, Sterling Common Stock must have been purchased or acquired during the Settlement Class Period and held through at least one of these Corrective Disclosure Dates.

42.    Under the Plan of Allocation, persons and entities who purchased Sterling stock during the Settlement Class Period are potentially eligible to share in the distribution of the Net Settlement Fund, if they submit valid Claim Forms.  The Plan of Allocation describes the method of calculating each Claimant's Recognized Loss for each Sterling share purchased during the Settlement Class Period, as well as their *pro rata* share of the Net Settlement Fund.  Specifically, the Net Settlement Fund is to be allocated in proportion to the Recognized Loss calculated by the Claims Administrator for each Authorized Claimant.   Each  Authorized  Claimant  shall

receive his, her, or its *pro rata* share of the Net Settlement Fund.  The *pro rata* share shall be the Authorized Claimant's Recognized Loss, divided by the total Recognized Losses of all Authorized Claimants, and multiplied by the total amount in the Net Settlement Fund.

43.    The per-share Recognized Loss formulas used in the Plan of Allocation are based on the per-share compensable loss figures that OPPRS' damages consultant calculated for litigation purposes and as the estimated maximum amounts of damages Settlement Class Members could likely recover at trial.

44.    Thus, Lead Counsel believe that the Plan of Allocation provides a fair and reasonable method to equitably calculate and distribute the Net Settlement Fund among Authorized Claimants and respectfully submits that the Plan should be approved by the Court.

**APPLICATION FOR FEES/EXPENSES**

45.    Lead Counsel seeks an attorney fee award of 25% of the settlement amount, $3,125,000, and reimbursement of  $72,076.44 in expenses.

46.    The 25% fee exceeds the average percentage fee awarded in securities class actions of this size, with the Settlement representing a recovery of more than 20% of the Settlement Class's *maximum* most likely recoverable damages— assuming OPPRS prevailed on all claims against the Defendants.  The lodestar multiplier of 1.05, based on the 4,334.85 hours expended by Lead Counsel and Local

Counsel, is well within the range and on the very low end of typical multipliers for a complex common fund case.

47.     Set forth below is a schedule reflecting the amount of time Berman Tabacco attorneys and professional staff worked on the Action from the inception of the case through July 31, 2021, and the corresponding lodestar value of that work, for which it seeks an award of attorneys' fees. The schedule was prepared based upon daily time records maintained by Berman Tabacco attorneys and professional support staff in the ordinary course of business, and the lodestar calculations are based on the firm's current hourly rates as presented in similar lodestar calculations in other complex litigation.   The time and lodestar spent preparing the fee and expense application were excluded from these values.

| TIMEKEEPER | STATUS | HOURLY RATE | TOTAL HOURS | TOTAL LODESTAR |
|---|---|---|---|---|
| Becker, Kathy | Paralegal | $410 | 220.50 | $90,405.00 |
| Didrickson, Karen | Of Counsel | $475 | 109.50 | $52,012.50 |
| Egan, Patrick | Partner | $925 | 397.60 | $367,780.00 |
| Elias, Victor | Associate | $550 | 120.40 | $66,220.00 |
| Hammarskjold, Carl | Partner | $640 | 297.25 | $190,240.00 |
| Houghton, James | Investigator | $595 | 245.00 | $145,775.00 |
| Keating Ronald | Investigator | $595 | 184.00 | $109,480.00 |
| Miles, Jeffrey | Associate | $550 | 327.20 | $179,960.00 |
| Moody, Kristin | Partner | $925 | 1,143.00 | $1,057,275.00 |
| O'Berry, Anne | Of Counsel | $790 | 259.30 | $204,847.00 |
| Rocha, Jeffrey | Associate | $475 | 54.70 | $25,982.50 |
| Ryan, Bing | Associate | $450 | 12.20 | $5,490.00 |
| Saif, Justin | Of Counsel | $740 | 129.50 | $95,830.00 |
| Segura, Beto | Paralegal | $380 | 174.30 | $66,234.00 |
| Silver, Lindsey | Associate | $555 | 518.90 | $287,989.50 |
| Soboleva, Yelena | Paralegal | $280 | 114.40 | $32,032.00 |
| **TOTALS** | | | 4,307.75 | $2,977,552.50 |

25

48.     The hourly rates for attorneys and professional support staff in my firm have been accepted by courts in other complex class actions.  *See, e.g.*, *In re Alphabet Inc. Shareholder Deriv. Litig.*, No. 19CV341522 (Cal. Super. Ct. Santa Clara Cty. Feb. 5, 2021); *In re GSE Bonds Antitrust Litig.*, No. 19-CV-1704 (JSR), 2020 WL 3250593, at *4-5 (S.D.N.Y. June 16, 2020); *In re Lithium Ion Batteries Antitrust Litig.*, No. 13-MD-02420-YGR, 2018 WL 3064391, at *1 (N.D. Cal. May 16, 2018); *In re BP p.l.c. Sec. Litig.*, No. 4:10-md-02185, ECF No. 1512 (S.D. Tex. Feb. 13, 2017); *In re Zynga Inc. Sec. Litig.*, No. 12-cv-04007-JSC, ECF No. 234 (N.D. Cal. Mar. 18, 2016); *In re Fannie Mae 2008 Sec. Litig.*, No. 1:08-cv-07831-PAC, ECF No. 552 (S.D.N.Y. Mar. 3, 2015); *Rieckborn v. Velti PLC*, No. 13-CV-03889-WHO, 2015 WL 468329, at *22 (N.D. Cal. Feb. 3, 2015).

49.     As discussed in detail in the accompanying Declaration of Paul F. Novak ("Novak Decl." or "Novak Declaration"), attached hereto as Exhibit 1, Local Counsel's time on this case is 27.1 hours with a lodestar value of $12,152.50 based on hourly rates accepted by courts in complex actions.  Novak Decl. ¶5.

50.     Thus, the total time expended by Counsel in prosecuting this case is 4,334.85 hours with a lodestar value of $2,989,705.

51.     Berman Tabacco's lodestar figures do not include charges for expense items.  Expense items are billed separately, and such charges are not duplicated in the firm's current billing rates.  Further, expense items do not contain any general

overhead costs and do not contain a surcharge over the amount paid to the corresponding vendor(s).

52.   As detailed and categorized in the below schedule, Berman Tabacco has incurred a total of $70,653.89 in expenses from inception through July 31, 2021 for which it seeks to be reimbursed from the Settlement Fund.

| DESCRIPTION | | TOTAL |
|---|---|---|
| Experts | $ | 30,170.75 |
| Filing Fees | $ | 335.00 |
| Lexis/Dow Jones/Westlaw/Research | $ | 10,845.97 |
| Photocopying | $ | 4,263.84 |
| Notice Publication | $ | 2,316.66 |
| Mediation | $ | 21,980.27 |
| Postage/Express/Delivery | $ | 341.18 |
| Telephone/FAX | $ | 33.00 |
| Travel, Meals, Lodging | $ | 151.52 |
| Witness/Service Fees | $ | 215.70 |
| **TOTAL** | **$** | **70,653.89** |

53.   The above schedule was prepared based upon expense records reflected in the books and records of Berman Tabacco.  These books and records are prepared from expense vouchers, check records, receipts and other source materials.

54.   The types of expenses for which Lead Counsel seek reimbursement were necessarily incurred in this Action and are of the type routinely charged to classes in contingent litigation, including expenses associated with, *inter alia*, research, accounting and damages consultants, and mediation.  The largest portion of Lead Counsel's expenses, $30,170.75, went to pay for the services of several

consultants, including an accounting consultant who advised on the allegations in Complaint and a damages/loss causation consultant who assisted OPPRS and Lead Counsel in connection with the investigation of the claims, the mediation, and preparing the Plan of Allocation.   Another large component of Lead Counsel's expenses was $10,845.97 in online research costs for legal research related to, *inter alia*, analyzing and bringing the claims and opposing the motions to dismiss.   Lead Counsel also incurred $21,980.27 in connection with the mediation, covering the two days of formal mediation, as well as pre- and post-mediation discussions with Judge Rosen.   Other expenses for which Lead Counsel seek reimbursement include, *inter alia*, court filing fees of $335.00, document-reproduction costs of $4,263.84, notice costs of $2,316.66, and postage and delivery expenses of $341.18.

55.   As discussed in detail in the Novak Declaration, Local Counsel incurred $1,422.55 in expenses on this case.   Novak Decl. ¶9.

56.   Thus, the total expenses incurred by Counsel in prosecuting this case is $72,076.44.

57.   To date, there have been no objections to Counsel's fee or expense request.

58.   With respect to the standing of my firm, attached hereto as Exhibit 3 is a brief biography of my firm and the attorneys in my firm that were involved in this Action.

59.     The $12.5 million Settlement is an excellent result for the Settlement Class, both quantitatively and when considering the risk of obtaining a smaller recovery (or no recovery) had the Action proceeded through further litigation and to trial.  At the time the Settling Parties reached an agreement to settle the Action, the Defendants' motions to dismiss remained pending, and discovery, class certification, summary judgment, trial, and possible appeals all lay ahead.  The Settlement will provide finality and meaningful relief to hundreds of investors.

60.     Moreover, Lead Counsel undertook significant risk in prosecuting the action entirely on a contingent basis, receiving no compensation during the time the action has been pending, and were never guaranteed the payment of any fee.  Lead Counsel have national standing and extensive experience in litigating securities and other complex class actions and has recouped billions of dollars for investors in securities class actions since the enactment of the PSLRA, and Local Counsel have significant experience with complex litigation in this district.  *See* Exs. 1 & 3, attached hereto.  Lead Counsel has also participated in dozens of mediations and worked on the resolution of numerous settlements.  Lead Counsel prosecuted this case vigorously, provided high quality legal services, and achieved a great result for the Settlement Class.  Moreover, the effort and skill of Lead Counsel in investigating the claims, drafting the Complaint, opposing Defendants' motions to dismiss, and

presenting a strong case throughout the Parties' settlement discussions was essential to achieving a meaningful resolution of the Action.

61.    In advancing this litigation, Lead Counsel's substantial efforts were met by aggressive and highly skilled defense attorneys who vigorously contested OPPRS' claims, with the 14 defendants here represented by 11 separate law firms. Barring a settlement, there is no question that this case could be litigated for years, taking a considerable amount of court time and costing hundreds of thousands of additional dollars, with the possibility that the end result would be no better for the Settlement Class, and possibly worse, than the Settlement.

62.    Further, OPPRS would need to rely extensively on expert witnesses on issues including, *inter alia*, loss causation and damages.  If the trier of fact finds Defendants' experts more credible, this could negatively affect Class Representative's claims and potentially reduce the total compensable pool of damages to near zero.

## REIMBURSEMENT TO CLASS REPRESENTATIVE IS FAIR AND REASONABLE

63.    The PSLRA specifically provides that an "award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class" may be made to "any representative party serving on behalf of a class." 15 U.S.C. § 78u-4(a)(4).  Accordingly, Class Representative seeks reimbursement of its reasonable costs incurred directly for its work representing the Settlement

Class in the amount of $2,500.  The amount of time and effort devoted to this Action by Class Representative is detailed in the accompanying Declaration of Ginger Sigler ("Sigler Decl."), attached hereto as Exhibit 2.  To date, no  Settlement Class Member has objected to the request for reimbursement of OPPRS costs and expenses of $2,500.

64.    As discussed in the Sigler Declaration, OPPRS has been fully committed to pursuing this action from the outset, devoting its time to reviewing pleadings and motions, participating in strategic decisions, consulting with counsel, and sending two representatives to attend the multi-day mediation.  Sigler Decl. ¶¶3-6.

65.    As a public pension fund administrator and an institutional investor with $3.2 billion in combined assets, OPPRS is precisely the type of class representative the PSLRA was designed to encourage.  *See* Sigler Decl. ¶¶1, 5; 15 U.S.C. § 78u-4(a)(3)(B) (providing rebuttable presumption that plaintiff with largest financial interest is most adequate plaintiff that shall be appointed lead plaintiff). According to the House Conference Report on the PSLRA, "[t]he Conference Committee believes that increasing the role of institutional investors in class actions will ultimately benefit shareholders and assist courts by improving the quality of representation in securities class actions."  H.R. Conf. Rep. 104-369, 34 (1995) *reprinted in* 1995 U.S.C.C.A.N. 730, 733.

66.     Based on its involvement throughout the course of this Action, OPPRS supports final approval of the settlement and Lead Counsel's fee and expense request.  Sigler Decl. ¶¶7-9.  OPPRS believes that the proposed Settlement is fair, reasonable, and adequate and in the best interest of the Settlement Class.  *Id*. ¶7. OPPRS further believes that Lead Counsel's request for an award of attorney's fees in the amount of 25% is fair, reasonable, and consistent with the fee agreement between Lead Counsel and OPPRS, which was entered into at the outset of the litigation. *Id*. ¶8.  In addition, OPPRS believes that the expenses incurred by counsel are fair, reasonable, and necessary to the successful prosecution and resolution of this Action.  *Id*. ¶9.

**REACTION OF CLASS**

67.     The deadline for objections or requests for exclusions is August 26, 2021.  ECF No. 80, PageID.1646-1648, at ¶¶13-14.  While the deadline to submit objections and requests for exclusion from the Settlement Class has not yet passed, no Settlement Class Member has objected to the Settlement or Plan of Allocation, and the Court-authorized Claims Administrator, A.B. Data, Ltd., has not received any requests for exclusion to date.  A.B. Data Decl. ¶15.  Moreover, to date, no Settlement Class Member has objected to the attorneys' fees or litigation expenses. *Id*.  Should any requests for exclusion or objections be received after the date of this submission, OPPRS and Lead Counsel will address them in their replies.

**CONCLUSION**

68.    In view of the significant recovery to the Settlement Class and the substantial risk of litigation, Lead Counsel respectfully submits that the Settlement is fair, reasonable, and adequate, and all of the requirements of Rule 23(e)(2) are abundantly satisfied.   Moreover, the Plan of Allocation is fair, reasonable, and adequate.   In addition, based on the result obtained in the face of substantial risks, the quality and amount of the work performed by Lead Counsel, the contingent nature of the fee, and the standing and experience of Lead Counsel, Lead Counsel respectfully request that a fee in the amount of 25% of the Settlement Fund be awarded, that Counsel's expenses in the amount of $72,076.44 be approved in full, and that OPPRS be reimbursed $2,500 for costs and expenses incurred in connection with the its representation of the Settlement Class.

69.    I have been informed by counsel for Defendant Sterling that Defendants do not oppose the relief requested in the Motion for Final Approval and take no position on the Motion for Attorneys' Fees and Litigation Expenses.

I declare under penalty of perjury pursuant to the laws of the United States of America that the foregoing is true and correct.

Executed at San Francisco, California, on August 12, 2021.

*/s/ Kristin J. Moody*
Kristin J. Moody